MAJOR ALLEN FARLEY
*Assistant Sheriff*

MURRAY TANNER
*Executive Assistant*

# MIKE HALE
## SHERIFF OF JEFFERSON COUNTY
LAW ENFORCEMENT BUREAU • 2200 8th AVENUE, NORTH. • BIRMINGHAM, ALABAMA 35203

### Consent to Search Premises

**State of Alabama**
**Jefferson County**

I, _Dorothy Bester_ , a resident of _1037 Apt. E_
_Birmingham_ , _Jefferson_ County , Alabama, do voluntarily

consent and authorize the following Deputy Sheriff's _Morris , Finley , Sgt. French_
_Washington_ , to search my premises located at _1037 Apt._
_E, Bham_ , to determine whether or not there is any illlegal

narcotics or stolen property on my premises. I hereby certify that I am over 18 years of

age and have a possessory interest in the items in the said premises. I have not been made

any threats or promises by the above named personnel, this _24th_ day of _March_

_____ , 20 _08_ .

I further affirm that I have been advised of my constitutional rights.

X _Dorothy Bester_
Signed

_(signature)_
Witness

_(signature)_
Witness


STATE'S
EXHIBIT
15

# STATEMENT

Circle one
~~Victim~~/Witness: DOROTHY BESTER

Address: ████████

City/St ████████

Phone# HO: _____ WK: _____

**STATE'S EXHIBIT**
16

Case #: 20080308801

Date: 24 March 2008

Time: 1645

Interviewer: R. Morris

I saw my son come home
with Boysl + left + Two White gus
were with him + he lelf come
iN with the White Bay Behind
the Box

Signature: _____

Witness: _____

**EXHIBIT**

Courts

What does the
law say about
the knowledge of
the use of drugs
#
Sell of

# OFFICE OF THE DISTRICT ATTORNEY





**BRANDON K. FALLS**
District Attorney
Tenth Judicial Circuit

February 23, 2009

TELEPHONE
(205) 325-5252

FAX
(205) 325-5266

801 RICHARD ARRINGTON, JR. BLVD. N.
BIRMINGHAM, ALABAMA 35203-2320

Bessemer Circuit Court
Courthouse Annex
1801 3rd Avenue North
Bessemer, AL 35020
Attn:  Circuit Court Clerk

**Re: Certified Copies**

Dear Clerk:

I am requesting that certified copies of the listed prior convictions for Durrell Bester be mailed to our office. These certified records are needed to sentence this defendant under the Alabama Habitual Felony Offender Act. This information is required by Alabama Law. To help expedite this process, listed below is the personal information that I have on this individual:

Defendant Name:  **Durrell Bester**

DAlias:

DOB:  **9/12/1980**     Social:  **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**

Race:  **Black**   sex:  **Male**

**Please provide as soon as possible.**
We are interested in the following offense(s):

| | |
|---|---|
| **DFIOD** | CC  1999-0970 |
| **DFIOD** | CC  1999-1278 |
| **UPOM 1** | CC  2001-0258 |
| **UPOM 1** | CC  2001-0259 |

Please mail a certified copy of these prior convictions to the Jefferson County District Attorney's Office. Our mailing address is:

> **Office of the District Attorney**
> **Tenth Judicial Circuit**
> *Attention:  LawClerks*
> **801 21st Street North**
> **Birmingham, Alabama 35203**

Your prompt assistance in this matter will be greatly appreciated. Please feel free to reach me at (205) 325-5252 ext. 264 if you have any questions regarding this matter, have any trouble locating this case or if you need any further information. Thank you very much

Sincerely,

Law Clerk

| | | |
|---|---|---|
| State of Alabama<br>Unified Judicial System<br><br>Form C-7    Rev 2/79 | CASE ACTION SUMMARY<br>CONTINUATION | Case Number<br>CC 99-970 |

Style:

State vs. Bester, Durrell

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 2/25/00 | Y.O Denied    Case set May 8, 2000 |
| | The defendant being in open court, accompanied and represented by his attorney of record herein, and the indictment in this cause now having been read to the defendant now being duly arraigned does now plead not guilty, with leave of the court hereby granted to the defendant hereafter, but prior to trial date, to interpose any special pleas which he might legally have interposed prior to entering his said pleas of not guilty. This cause is ordered set for trial.<br><br>_____ Judge<br><br>*[vertical stamp: I, EARL N. CARTER, JR., AS CLERK OF THE CIRCUIT COURT, TENTH JUDICIAL CIRCUIT OF ALABAMA, BESSEMER DIVISION, DO HEREBY CERTIFY THAT THE FOREGOING IS A TRUE, CORRECT AND FULL COPY OF THE INSTRUMENT HEREWITH SET OUT AS APPEARS OF RECORD IN SAID COURT. WITNESS MY HAND AND THE SEAL OF SAID COURT THIS ___ DAY OF _____ . EARL N. CARTER, CLERK]* |
| 5/4/00 | Motion to Continue (Jm) |
| 5/8/2000 | Case passed to August 28, 2000 for trial.<br><br>_____ Judge |
| 8/28/00 | Defendant having failed to comply with the conditions of his bond. Defendant ordered placed in the County jail. Bond set in the amount of no Bond.  _____ |
| 8/28/00 | Case passed to Nov 27, 2000<br><br>_____ |
| 9/15/00 | Defendant ordered released from jail condition on complying with T.A.S.C.<br><br>_____ |

127

State of Alabama
Unified Judicial System

Form C-7    Rev 2/79

CASE ACTION SUMMARY
CONTINUATION

Case Number
CC99-970

Style: Lester, Durrell

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 9-15-00 | Bond reduced to $30,000. Defendant to be released on original bond dated 2-12-99. Mac Parsons Judge |
| 11/27/00 | case passed to Feb 26, 2021 Mac Par |
| 2/26/01 | Bond revoked defendant tested positive for drugs. Mac Par |
| 2-26-0 | Tested Positive For Opiates. |
| 2/27/0 | motion by state to amend to Discharging Firearm into occupied Vehicle Mac Par |

| | |
|---|---|
| State of Alabama<br>Unified Judicial System | **CASE ACTION SUMMARY**<br>**CONTINUATION** |

Case Number

CC _99_-_970_
10   YR   Number

Form C-7 Nov. 2/79

Style:
STATE OF ALABAMA v. _Bester Durrell_

Page Number ____ of ____ Pages

### ACTIONS, JUDGMENTS, CASE NOTES

| DATE | |
|---|---|
| 2/27/01 | The defendants desire to plead guilty having been made known to the Court, the Court addressed the defendant personally in the presence of his counsel in open court and ascertained that the defendant has a full understanding of what a guilty plea means and its consequences. A rights waiver form was executed by the Court, defendant and counsel for the defendant and is incorporated herein. The Court is satisfied that there is factual basis for the plea. |
| | [ ] The defendant pleads guilty to _Discharge Firearm Into Occupied Vehicle_ |
| | [ ] The defendant pleads guilty as youthful offender, underlying charge of |
| | |
| | Habitual offender hearing held, the Court finds ____ prior felony conviction |
| | Sentencing Hearing [ ] held; [ ] waived. _March 16th - 4:00 p.m._ _March 13th 9:03/10:06_ |
| | The Court asked the defendant if he/she had anything to say why the sentence of law should not be imposed against him/her and the defendant having had his/her say or had nothing to say, it is the judgment and sentence of the Court as fol: |
| | The Defendant is sentenced to the custody of _10_ year(s), ____ month( The Department of Corrections for a period of ____ to serve. day(s).       split |
| | The following costs are assessed against the defendant: |
| | [ ] Costs of Court        [ ] Victim's Compensation $ |
| | [ ]                       [ ] Fair Trial Tax Fund $ |
| | [ ] Fine $ |
| | [ ] Restitution to the victim(s) $ |
| | [ ] Drug Demand Reduction Act Assessment $ |
| | [ ] The payment of Court ordered monies shall be a condition of parole, early release, S.I.R. and work release. |
| | [ ] The Clerk is authorized to accept part payments for all Court ordered per mo. monies. First payment due on ____ |
| | [ ] The sentence is to be concurrent with the sentence imposed in Case number ____ |
| | [✓] The defendant is given credit for all of the actual time spent incarcerated awaiting trial of this case unless he was serving time fo another offense. |
| | [ ] The defendants application for probation is accepted and the Probatio Office is ordered to make an investigation and report its findings to the Court. |

_____
Circuit Judge

| | State of Alabama<br>Unified Judicial System<br>Form C-7    Rev 2/79 | CASE ACTION SUMMARY<br>CONTINUATION | Case Number<br>CC 99-970 |
|---|---|---|---|

Style:

State vs. Bester, Durrell          Page Number ____ of ____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 3/19/01 | Sentencing passed to April 19, 2001 at 4:00 p.m.    Max Parsons      Judge |
| 4/26/01 | case passed to May 4, 2001. Max Parsons      Judge |

| | |
|---|---|
| **State of Alabama** **Unified Judicial System** Form C-7    Rev 2/79 | **Case Number** CC99-970 |

**CASE ACTION SUMMARY**
**CONTINUATION**

Style:

State vs. Bester, Durrell          Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 5/4/01 | Defendant asked if he had anything to say before sentence being imposed upon him said nothing. Defendant is hereby sentenced to 10 years in penitentiary, to run cc with CC99-1278; CC01-258; CC01-259. Cost taxed against defendant. |
| | _____ Judge |

```
..RD372          ALABAMA JUDICIAL INFORMATION SYSTEM    CASE: CC 1999 000970.00
 ER: LIM                    CASE ACTION SUMMARY
 E:   )                     CIRCUIT   CRIMINAL          RUN DATE: 08/21/1999
 N THE CIRCUIT COURT OF JEFF-BESMR                                   JUDGE: DMP
```

STATE OF ALABAMA                    VS      BESTER DURRELL,

CASE: CC 1999 000970.00

DOB:              SEX: M  RACE: B  HT: 6 00  WT: 150   HR: BLK EYES: BRO
SSN:           ALIAS NAMES:

CHARGE01: ATTEMPT - MURDER    CODE01: MURDA LIT: MURDER ATTEMPT TYP: F #: 001
OFFENSE DATE: 02/12/1999            AGENCY/OFFICER: 0010000 HOLMES

DATE WAR/CAP ISS:                   DATE ARRESTED: 02/12/1999
DATE  INDICTED: 08/05/1999          DATE   FILED: 08/05/1999
DATE  RELEASED: 02/12/1999          DATE HEARING:
BOND    AMOUNT:    $30,000.00 P      SURETIES:

DATE 1: 09/23/1999  DESC: ARRG       TIME: 0900 A
DATE 2:             DESC:            TIME: 0000

TRACKING NOS: DC 1999 000603 00  /

   DEF/ATY: DUDLEY, CHE'REE' M        TYPE: A                     TYPE:
           1600 5TN AVENUE NORTH

           BESSEMER        AL 35020

PROSECUTOR: RUSSELL, SAMUEL L.

```
TH CSE: DC199900060300 CHK/TICKET NO: 80318        GRAND JURY: 990000
JRT REPORTER:               SID NO:   259194000
 STATUS, BOND               DEMAND: N                         OPER: LIM
```

DATE      ACTIONS, JUDGEMENTS, AND NOTES

| 8/5/99 | Indictment (lm) |
|---|---|
| 9/22/99 | It being made ... in this case is charg... ... ... ... ... ... ... ... to such examination and to be tried without a full knowledge that a trial by jury would otherwise be to him. This matter is referred to the probation office ...s of Alabama in this county to investigate and make report to this court. |

Mac Pour                    Judge

STATE'S EXHIBIT

ACRO369 AL _____ B _____ JDICIAL INFORMATION CENTER

CASE ACTION SUMMARY
CONTINUATION

CASE: CC 1999 001278.00
JUDGE ID: DMP

STATE OF ALABAMA                VS        BESTER DURRELL

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|---|---|
| 4/26/00 | Case passed to May 31, 2000 |
| 5/31/00 | The defendant being in open court, accompanied and represented by his attorney of record herein, and the indictment in this cause now having been read to the defendant now being duly arraigned does now plead not guilty, with leave of the court hereby granted to the defendant hereafter, but prior to trial date, to interpose any special plea which he might legally have interposed prior to entering his said plea of not guilty. This cause is ordered set for trial. |
| 5/31/00 | Case assign Judge Pstalor. Defendant have 2 other case before Judge Pstalor. Case passed July 20, 2000 |
| 8/1/00 | Set for trial Sept 25, 2000 - |
| 9/26/00 | TASC is a condition of bond |
| 9/18/00 | Reassign to D.M.P. |
| 12/2/2000 | Set for trial November 27, 2000. |
| 2/27/0? | Motion by state motion to amend to Discharging Firearm into Occupied Vehicle |

| State of Alabama Unified Judicial System | CASE ACTION SUMMARY CONTINUATION | Case Number CC 99 1278 ID YR Number |
|---|---|---|

Form C-7 Rev. 2/79

Style:
STATE OF ALABAMA v. Rester Durrell                    Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 2/27/01 | The defendants desire to plead guilty having been made known to the Court, the Court addressed the defendant personally in the presence of his counsel in open court and ascertained that the defendant has a full understanding of what a guilty plea means and its consequences. A rights waiver form was executed by the Court, defendant and counsel for the defendant and is incorporated herein. The Court is satisfied that there is factual basis for the plea. |

[✓]  The defendant pleads guilty to Discharge Firearm Into Occupied Vehicle

[ ]  The defendant pleads guilty as youthful offender, underlying charge of _____

Habitual offender hearing held, the Court finds _____ prior felony conviction

Sentencing Hearing [✓] held; [ ] waived. March 16th 4:00 p.m. March 13th 4:00 p.m. The Court asked the defendant if he/she had anything to say why the sentence of law should not be imposed against him/her and the defendant having had his/her say or had nothing to say, it is the judgment and sentence of the Court as fol

The Defendant is sentenced to the custody of _____ 10 year(s), _____ month( The Department of Corrections for a period of _____ to serve. day(s). _____ split

The following costs are assessed against the defendant:

[ ]  Costs of Court                    [ ]  Victim's Compensation $

[ ]  Fine $                    [ ]  Fair Trial Tax Fund $

[ ]  Restitution to the victim(s) $

[ ]  Drug Demand Reduction Act Assessment $

[ · ]  The payment of Court ordered monies shall be a condition of parole, early release, S.I.R. and work release.
[ ]  The Clerk is authorized to accept part payments for all Court ordered _____ per mo. monies. First payment due on _____

[✓]  The sentence is to be concurrent with the sentence imposed in Case number _____

[✓]  The defendant is given credit for all of the actual time spent incarcerated awaiting trial of this case unless he was serving time fo another offense.

[ ]  The defendants application for probation is accepted and the Probatio Office is ordered to make an investigation and report its findings to the Court.

_____ Circuit Judge

134

| | | |
|---|---|---|
| State of Alabama Unified Judicial System | **CASE ACTION SUMMARY** | Case Number |
| Form C-7   Rev 2/79 | **CONTINUATION** | CC 99-1278 |

Style:

State vs. Bester, Durrell          Page Number ____ of ____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 3/19/01 | Sentencing passed to April 19, 2001 at 4:00 p.m. Man Haw _____ Judge |
| 4/20/01 | Case passed to May 4, 2001. Mr. Parsons Judge |

| State of Alabama Unified Judicial System | CASE ACTION SUMMARY | Case Number |
|---|---|---|
| Form C-7    Rev 2/79 | CONTINUATION | CC 99-1278 |

Style:

State vs. Bester, Durrell          Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 5/4/01 | Defendant asked if he had anything to say before sentenced pronounced upon him said nothing. Defendant is sentenced to 10 years in penitentiary to run cc with CC99-970; CC01-258; CC01-259. Cost taxed against defendant.                    Judge |

```
20-572                    ALABAMA JUDICIAL INFORMATION SYSTEM       DATE  CC 1999 001278 00
   EM3                           CASE ACTION SUMMARY
                                   CIRCUIT  CRIMINAL               RUN DATE  10/18/1999
        THE CIRCUIT COURT OF JEFF-BESMR                                      JUDGE  TBP
```

STATE OF ALABAMA                    VS      BESTER DURRELL

REF: CC 1999 001278 00

```
DOB:             SEX: M  RACE: B  HT: 6 00  WT  180   HR: BLK EYES: BRO
SSN:          ALIAS NAMES:
CHARGE01  ASSAULT 1ST DEGREE      CODE01.  A881  LIT  ASSAULT 1ST DE  TYP  F  #  01:
OFFENSE DATE  03/19/1999                   AGENCY/OFFICER  502 0000 MALE
```

```
DATE  WAR/CAP  ISS:                          DATE ARRESTED  03/19/1999
DATE       INDICTED  10.06/1999              DATE     FILED  10/06/1999
DATE      RELEASED  03/19/1999               DATE   HEARING:
BOND      AMOUNT  $5,000.00                   SURETIES:
```

```
DATE  1                 DESC:                   TIME  0200
DATE  2                 DESC:                   TIME  0200
```

TRACKING NOS. DC 1999 001850 00    Jeff  Hood

```
DEF/ATY: STREET, STEPHEN W       TYPE  A                         TYPE
         103  23RD STREET SOUTH
         BIRMINGHAM      AL 35205
```

PROSECUTOR: RUSSELL, SAMUEL L.

```
RT CASE: DC19970018500U CHA/TICKET NO.                   GRAND JURY. 99671
RT REPORTER                        SID NO.    000097194
   STATUS  BOND                    DEMAND                          OPER  CMS
DATE    ACTIONS,  JUDGEMENTS,  AND  NOTES
```

| Date | Entry |
|---|---|
| 10-6-99 | Indictment |
| 11-22-99 | Alias Writ to Issue No Bond FTA bail $50 |

It being made known to the Court that the defendant in this
case is charged with an offense which was committed in his
minority, provisions of the Youthful Offender Act having been
explained to him, defendant hereby in open court in his
proper person and accompanied by his counsel, consents
and request that the court investigate and examine him to
determine whether he should ~~~~~~~~ as a Youthful Offender
and consents to such ex~~~~~~~~~~~~~~~~ tried without a
jury with full knowledge that a trial by jury would otherwise be
available to him. This matter is referred to the probation office
of the State of Alabama in this county to investigate and make
report to this court.

_____ Judge

1/29/99   Y/O applied & denied

          Reassigned to CMP   TBP

**STATE'S EXHIBIT**

**C**

State of Alabama
Unified Judicial System

Form C-7 Rev. 2/79

**CASE ACTION SUMMARY**
**CONTINUATION**

Case Number
cc 01-258
10   YR   Number

Style:
STATE OF ALABAMA v. Bester Durrell      Page Number ____ of ____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 5/4/01 | The defendants desire to plead guilty having been made known to the Court, the Court addressed the defendant personally in the presence of his counsel in open court and ascertained that the defendant has a full understanding of what a guilty plea means and its consequences. A rights waiver form was executed by the Court, defendant and counsel for the defendant and is incorporated herein. The Court is satisfied that there is factual basis for the plea. |

[ ✓ ]   The defendant pleads guilty to PMSI

[ ]   The defendant pleads guilty as youthful offender, underlying charge of _____

Habitual offender hearing held, the Court finds _____ prior felony conviction

Sentencing Hearing [ ✓ ] held;  [ ] waived.

The Court asked the defendant if he/she had anything to say why the sentence of law should not be imposed against him/her and the defendant having had his/her say or had nothing to say, it is the judgment and sentence of the Court as fol:

The Defendant is sentenced to the custody of _____ 10 year(s), _____ month(
The Department of Corrections for a period of _____ to serve.
day(s).       split

The following costs are assessed against the defendant:

[ ✓ ]   Costs of Court                    [ ✓ ] Victim's Compensation $50

[ ]   Fine $                           [ ] Fair Trial Tax Fund $

[ ]   Restitution to the victim(s) $ _____

Drug Demand Reduction Act Assessment $ 1,000

The payment of Court ordered monies shall be a condition of parole, early release, S.I.R. and work release.
The Clerk is authorized to accept part payments for all Court ordered monies. First payment due on _____ per mo.

The sentence is to be concurrent with the sentence imposed in Case number CC 99-970, CC 99-1278, CC01-259

The defendant is given credit for all of the actual time spent incarcerated awaiting trial of this case unless he was serving time fo another offense.

The defendants application for probation is accepted and the Probatio Office is ordered to make an investigation and report its findings to the Court.

_____
Circuit Judge

ACRD372          ALABAMA JUDICIAL INFORMATION SYSTEM      CASE: CC 2001 000258.00
OPER: LIM                CASE ACTION SUMMARY
GE:    1               CIRCUIT   CRIMINAL                 RUN DATE: 03/02/2001
IN THE CIRCUIT COURT OF JEFF-BESMR                                  JUDGE: DMP

STATE  OF  ALABAMA                  VS      BESTER DURRELL

CASE: CC 2001 000258.00

DOB:                       SEX: M  RACE: B  HT: 6 00  WT: 170   HR: BLK EYES: BRO
SSN:               ALIAS NAMES: BESTER DURELL

CHARGE01: UNLAW DISTRIB CONTRO CODE01: UDCS  LIT: UNLAW DISTRIB  TYP: F #: 001
OFFENSE DATE: 07/14/2000              AGENCY/OFFICER: 001015J WOODWAR

DATE WAR/CAP ISS:                    DATE ARRESTED: 07/14/2000
DATE    INDICTED:                    DATE    FILED: 03/02/2001
DATE   RELEASED: 07/14/2000          DATE   HEARING:
BOND     AMOUNT:      $750.00        SURETIES: BILL NALL BONDING CO

DATE 1:              DESC:              TIME: 0000
DATE 2:              DESC:              TIME: 0000

TRACKING NOS: DC 2000 002239 00  /                          /

    DEF/ATY: FAWWAL M JADO        TYPE: A                         TYPE:
             312 NORTH 18TH STREET

             BESSEMER      AL 35020                      00000

PROSECUTOR: RUSSELL SAMUEL L

OTH CSE: DC200000223900 CHK/TICKET NO:              GRAND JURY:
COURT REPORTER:                    SID NO:
EF STATUS: BOND          DEMAND:        000258194          OPER: LIM

ATE       ACTIONS, JUDGEMENTS, AND NOTES

2/28/0   DA Complaint (lm)

3/19/01  Case passed  4/19/01  Mrs Brun

4/26/01  Case passed to May 4, 2001. Mrs Brown Judge

STATE'S EXHIBIT D

State of Alabama
Unified Judicial
Form C-7 Rev. 2/79

**CASE ACTION SUMMARY**
**CONTINUATION**

Case Number:
CC 01 - 259
IO    YR    Number

Style:
STATE OF ALABAMA v. Bester, Durrell          Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 5/4/01 | The defendants desire to plead guilty having been made known to the Court, the Court addressed the defendant personally in the presence of his counsel in open court and ascertained that the defendant has a full understanding of what a guilty plea means and its consequences. A rights waiver form was executed by the Court, defendant and counsel for the defendant and is incorporated herein. The Court is satisfied that there is factual basis for the plea. |

[ ✓ ] The defendant pleads guilty to    PMUJ

[ ] The defendant pleads guilty as youthful offender, underlying charge of

_____.

Habitual offender hearing held, the Court finds _____ prior felony conviction

Sentencing Hearing [ ✓ ] held; [ ] waived.

The Court asked the defendant if he/she had anything to say why the sentence of law should not be imposed against him/her and the defendant having had his/her say or had nothing to say, it is the judgment and sentence of the Court as fol

The Defendant is sentenced to the custody of
The Department of Corrections for a period of    10    year(s), _____ month(s) _____ day(s).        split        to serve.

The following costs are assessed against the defendant:

[ ✓ ] Costs of Court                    [ ✓ ] Victim's Compensation $50

[ ] Fine $                              [ ] Fair Trial Tax Fund $

[ ] Restitution to the victim(s) $< _____ CH

[ ] Drug Demand Reduction Act Assessment $ 1,000.00

The payment of Court ordered monies shall be a condition of parole, early release, S.I.R. and work release.
The Clerk is authorized to accept part payments for all Court ordered monies. First payment due on _____ per mo.

The sentence is to be concurrent with the sentence imposed in Case number CC99-970, CC99-1978; CC01-258

The defendant is given credit for all of the actual time spent incarcerated awaiting trial of this case unless he was serving time for another offense.

The defendants application for probation is accepted and the Probation Office is ordered to make an investigation and report its findings to the Court.

_____
Circuit Judge

ACR0372          ALABAMA JUDICIAL INFORMATION SYSTEM      CASE: CC 2001 000259.00
OPER: LTM                 CASE ACTION SUMMARY
PAGE:   1                  CIRCUIT   CRIMINAL              RUN DATE: 03/02/2001
IN THE CIRCUIT COURT OF JEFF-BESMR                               JUDGE: DMP

STATE OF ALABAMA                    VS      BESTER DURRELL

CASE: CC 2001 000259.00

DOB:                    SEX: M  RACE: B  HT: 6 00  WT: 170   HR: BLK EYES: BRO
SSN:                ALIAS NAMES: BESTER DURELL
CHARGE01: PROBATION REV Pass Many CODE01: PREV  LIT: PROBATION REV  TYP: F #: 001
OFFENSE DATE: 07/14/2000            AGENCY/OFFICER: 0010150 WOODWAR

DATE WAR/CAP ISS:                   DATE ARRESTED: 07/14/2000
DATE     INDICTED:                  DATE     FILED: 03/02/2001
DATE     RELEASED: 07/14/2000       DATE   HEARING:
BOND     AMOUNT:      1500.00       SURETIES: BILL NALL BONDING CO

DATE 1:           DESC:             TIME: 0000
DATE 2:           DESC:             TIME: 0000

TRACKING NOS: CC 2000 002240 00  /                       /

  DEF/ATY: FAWWAL H JADD           TYPE: A                          TYPE:
           312 NORTH 18TH STREET

           BESSEMER      AL 35020                        00000

PROSECUTOR: RUSSELL SAMUEL L

OTH CSE: CC200000224000 CHK/TICKET NO:                    GRAND JURY:
COURT REPORTER:                  SID NO:       000259194
DEF STATUS: BOND                 DEMAND:                     OPER: LIM
DATE      ACTIONS, JUDGEMENTS, AND NOTES

2/28/01  DA Complaint (M)

3/19/01  Case passed  4/19/01  Mac Fenn

4/26/01  Case passed to May 4, 2001. Mur Parson Judge

## INDEX OF EXHIBITS RETAINED IN TRIAL COURT
## ARAP – RULE 10

**APPELLANT, DURRELL BESTER**

**VS**

**APPELLEE,** STATE OF ALABAMA

**CASE NUMBER: CC 08 3771-3772**
LIST OF EXHIBITS RETAINED IN THE TRIAL COURT WHICH CANNOT BE LEGIBLY
PHOTOCOPIED:

| | |
|---|---|
| **STATE'S EXHIBIT 11** | **BLACK BOX/TRUCK** |
| **STATE'S EXHIBIT 12** | **EVD. INSIDE RESIDENCE** |
| **STATE'S EXHIBIT 13** | **DRUG PAR** |
| **SATAE'S EXHIBIT 14** | **COCAINE** |

**ANNE-MARIE ADAMS, CLERK**
CIRCUIT COURT, CRIMINAL DIVISION

*Anne Marie Adams*

**DATE: NOVEMBER 30, 2009**

FILED IN OFFICE
CIRCUIT CRIMI

AUG 2 8 2009

| State of Alabama<br>Unified Judicial System | REPORTER'S TRANSCRIPT ORDER CRIMINAL<br>See Rules 10(c) and 11(b), Ala.<br>Alabama Rules of Appellate Procedure (A.R.App.P) | Criminal Appeal Number |
|---|---|---|
| Form ARAP-1C     8/91 | | CR    . 08-1636 |

TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.

[✓] CIRCUIT COURT [ ] DISTRICT COURT [ ] JUVENILE COURT OF ___ Jefferson ___ COUNTY

Durrell Bester , Appellant

v. [✓] STATE OF ALABAMA   [ ] MUNICIPALITY OF ___

| Case Number | CC 08 3371 CC08 3372 | Date of Judgment/Sentence/Order | 5/26/2009 |
|---|---|---|---|

| Date of Notice of Appeal | | Indigent Status Granted: |
|---|---|---|
| Oral: | Written: 7/8/2009 | [✓] Yes [ ] No |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY (1)THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR (2) THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE / DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-12-72, *CODE OF ALABAMA 1975*).

_____          _____          _____
Signature                              Date                              Print or Type Name

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R.App.P.)):

**MARK PROCEEDINGS REQUESTED:**                                          **COURT REPORTER(S)**

A. [✓] **TRIAL PROCEEDINGS** – Although this designation will include the judgment and sentence       Alicia Martin
proceedings, a transcript of the organization of the jury and arguments of counsel must be
designated separately.

B. [✓] **ORGANIZATION OF THE JURY** – This designation will include voir dire examination and       Alicia Martin
challenges for cause. Note that in noncapital cases the voir dire of the jury will not be recorded
unless the trial judge so directs. (See Rule 19.4, ArCrP.)

C. [✓] **ARGUMENTS OF COUNSEL** – Note that in noncapital cases the arguments of counsel will not       Alicia Martin
be recorded unless the trial judge so directs. (See Rule 19.4, ArCrP.)

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY):

**ADDITIONAL PROCEEDINGS REQUESTED**                **DATE**                **COURT REPORTER(S)**

D. _____   _____   _____

E. _____   _____   _____

F. _____   _____   _____

G. _____   _____   _____

**IMPORT NOTICE :** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY (1) THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR (2) THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT STATUS HAS NOT BEEN REVOKED; OR (3) THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS.

_____          8/28/2009          Martin Webb
Signature                         Date                    Print or Type Name

DISTRIBUTION : Original filed with Clerk of Trial Court and copies mailed to: (1) Clerk of the Court of Criminal Appeals, (2) the District Attorney, (3) the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if the appeal is from a municipal conviction, and (4) to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript.

ORIGINAL

STATE OF ALABAMA

IN THE CIRCUIT COURT

OF THE TENTH JUDICIAL CIRCUIT

FOR JEFFERSON COUNTY, ALABAMA

CRIMINAL DIVISION

DURRELL BESTER,

APPELLANT,

VS.                              Case Number: CC2008-3771,

CC2008-3772

STATE OF ALABAMA,

FILED IN OFFICE
CIRCUIT CRIMINAL

NOV 24 2009

ANNE-MARIE ADAMS
CLERK

APPELLEE.

-------------------------

COURT REPORTER'S OFFICIAL TRANSCRIPT

The above-entitled case came on to be heard before the Honorable Clyde E. Jones, Judge, on the 6th day of April, 2009 at or about 9:00 a.m. before Alicia Martin, Official Court Reporter and Commissioner.

APPEARANCES

Representing the State of Alabama:

Mr. Mike Anderton,
Deputy District Attorney

Representing Defendant Bester:

Mr. William Benson,
Attorney at Law
Birmingham, Alabama

EXAMINATION INDEX

STATE'S WITNESSES:                                          PAGE #


DEPUTY MARK EATON

        DIRECT BY MR. ANDERTON .    .    .    .    46

        CROSS BY MR. BENSON    .    .    .    .    .    78

        REDIRECT BY MR. ANDERTON   .    .    .    81

        RECROSS BY MR. BENSON   .    .    .    .    81

        JUROR QUESTIONS   .    .    .    .    .    .    83



DEPUTY ALI DANIELS

        DIRECT BY MR. ANDERTON .    .    .    .    85

        CROSS BY MR. BENSON    .    .    .    .    .    91



DEPUTY HATTIE FRENCH

        DIRECT BY MR. ANDERTON .    .    .    .    92

        CROSS BY MR. BENSON    .    .    .    .    126

        REDIRECT BY MR. ANDERTON   .    .    .    136

        JUROR QUESTIONS   .    .    .    .    .    .    137

        RECROSS BY MR. BENSON   .    .    .    .    139

        FURTHER DIRECT BY MR. ANDERTON    .    .    141

        JUROR QUESTIONS.    .    .    .    .    .    .    142

DEPUTY AARON GAST
    DIRECT BY MR. ANDERTON . . . . . 144
    CROSS BY MR. BENSON    . . . . . 149


DEPUTY LISA BARTELLS
    DIRECT BY MR. ANDERTON . . . . . 151
    CROSS BY MR. BENSON  . . . . . . 156



SHARI KELLEY
    DIRECT BY MR. ANDERTON . . . . . 158
    CROSS BY MR. BENSON  . . . . . . 165



SHERRY STEEL
    DIRECT BY MR. ANDERTON . . . . . 166
    CROSS BY MR. BENSON  . . . . . . 179
    REDIRECT BY MR. ANDERTON . . . . 180

1          EXAMINATION INDEX

2

3   STATE'S REBUTTAL WITNESSES:                    PAGE #

4

5

6   DEPUTY ROGER MORRIS

7        DIRECT BY MR. ANDERTON   .   .   .   .   .   205

8

9

10  DEPUTY JUDE WASHINGTON

11       DIRECT BY MR. ANDERTON .   .   .   .   .   ,   209

12       CROSS BY MR. BENSON   .   .   .   .   .   .   214

13

14

15

16

17

18

19

20

21

22

23

24

25

1          EXAMINATION INDEX

2

3   DEFENDANT'S WITNESSES:                    PAGE #

4

5   DOROTHY BESTER

6       DIRECT BY MR. BENSON  .   .   .   .   .  . 187

7       CROSS BY MR. ANDERTON  .  .  .   .   .   193

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

EXHIBIT INDEX

STATE'S EXHIBITS:                                    MAR / ADM

| 1  | Scene Photo                       | 20  | 182 |
| 2  | Scene Photo                       | 20  | 102 |
| 3  | Scene Photo                       | 20  | 112 |
| 4  | Scene Photo                       | 20  | 112 |
| 5  | Scene Photo                       | 20  | 112 |
| 6  | Scene Photo                       | 20  | 112 |
| 7  | Scene Photo                       | 20  | 112 |
| 8  | Scene Photo                       | 20  | 112 |
| 9  | Scene Photo                       | 20  | 112 |
| 10 | Scene Photo                       | 20  | n/a |
| 11 | Black Box                         | 20  | 172 |
| 12 | Evidence Found Inside Residence   | 20  | 182 |
| 13 | Drug Paraphernalia                | 20  | 182 |
| 14 | Cocaine                           | 20  | 181 |
| 15 | Consent Form                      | 104 | 109 |
| 16 | Written Statement                 | 215 | 199 |

1                    EXHIBIT INDEX

2

3    COURT'S EXHIBITS:                    MAR / ADM

4

5    1      Jury Note                     237   237

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          PROCEEDINGS

2       April 6th, 2009 - 2:20 p.m.

3

4           (Whereupon, the following was

5           heard in open court with the

6           Defendant and all counsel

7           present.)

8

9       THE COURT:  All right.  This is State

10   of Alabama vs. Durrell Bester, CC08-3771.

11       Mr. Bester has three charges.

12   Trafficking in cocaine, failure to affix a

13   tax stamp and possession of drug

14   paraphernalia.

15       Are you going to proceed with those

16   three charges, State?

17       MR. ANDERTON:  Yes, sir.

18       THE COURT:  All right, then.  The

19   Defendant is represented by William Benson.

20       You have something?

21       MR. BENSON:  I do, Your Honor.

22       I apologize, first, for not having a

23   written motion, but I would like to do a

24   motion to suppress the evidence.

25       I think what the State is going to

1  contend in this case was that --

2      THE COURT:  I think we need to put this

3  stuff about this offer, first, on the

4  record.

5      MR. BENSON:  Okay.

6      MR. ANDERTON:  Judge, the State of

7  Alabama would like to place on the record

8  that in this case, of course, as the Court

9  has listed Mr. Bester is looking at a charge

10  of trafficking in cocaine.  Which is a Class

11  A felony here in the State of Alabama.

12  Under the Alabama Habitual Offender Act,

13  Mr. Bester would be looking at -- Well, the

14  trafficking in cocaine would normally be a

15  10 to 99 to life.  Mr. Bester, from the

16  State's information, has four prior felony

17  convictions which would make Mr. Bester

18  looking at a sentence of either life or life

19  without parole, under the Alabama Habitual

20  Offender Act.

21      THE COURT:  Is that left to the Judge's

22  discretion?

23      MR. ANDERTON:  Yes, sir.  Yes, sir.

24  That would be within the Judge's discretion.

25      Now, the State, if there is a

1     conviction in this case, would certainly

2     make the argument to the Court that

3     Mr. Bester should be sentenced to life in

4     prison without the possibility of parole

5     based on the fact, and we would argue to the

6     Court, that he is in fact a violent

7     offender.  And that would be based, Your

8     Honor, on the fact that there are two -- two

9     of Mr. Bester's convictions, prior

10    convictions, are for discharging a firearm

11    into an occupied dwelling.

12        In each of those cases, I believe, he

13    actually pled to discharging into an

14    occupied vehicle.  But was sentenced to ten

15    years on each one of those cases in front of

16    Judge Parsons.  The other two convictions

17    are two different convictions of possession

18    of marijuana first-degree.  Out -- and,

19    again, out in the Bessemer Division of

20    Jefferson County.

21        Giving him a total of four, but if the

22    Court -- I mean, if the State made the

23    argument to the Court, and the Court

24    accepted that State's argument, that

25    Mr. Bester was in fact a violent offender,

1   he would be looking at a sentence up to life

2   without parole.

3       We, the State of Alabama, has made an

4   offer to Mr. Bester to plead guilty, in

5   fact, to the trafficking and tax stamps, and

6   the drug paraphernalia - which is a

7   misdemeanor - plead guilty and receive a

8   life sentence.  At that point, Mr. Bester

9   would, in fact, be able to be paroled at

10   some point.  Under the life without parole,

11   which is what the State would push for if

12   there is a jury trial and a conviction, then

13   he would not be eligible for parole.

14       And I wanted to put that on the record

15   so that the Court knew that, and so that

16   anybody who may look at this later on, will

17   certainty be apprised that Mr. Bester was

18   told what the potential punishments in these

19   cases are.

20       THE COURT:  All right, Bill.

21       MR. BENSON:  Your Honor, I'll save any

22   argument as far as the sentencing guidelines

23   should that time come necessary.

24       THE COURT:  But I need something --

25   Mr. Bester --

MR. BENSON: I will state, Your Honor,
that my client contends he only has one
prior conviction of discharging a firearm
into a vehicle.

Should it become necessary, I'll be in
touch -- I'll be in touch with his attorney
on those just to make sure the information
the State has provided is correct.

THE COURT: Well, you know, at this
point, it seems to me that both sides ought
to know how many prior felonies this man
has. And he should know. And counsel
should know. So that there isn't any
question about it. I would hate for him to
file a Rule 32 and say, well, my lawyer
didn't find out I had three prior
felonies -- even though he's telling you he
only has one, now, Billy.

MR. BENSON: Uh-huh.

THE COURT: And then, he said, well, if
you know my lawyer had told me I did have
three instead of one, then, you know, I
wouldn't have went to trial. You know.

So I don't understand why it is not
clear how many priors -- Do you have some

details Mike --

MR. BENSON: The State has provided me copies -- the certified copies of those records. I have shown those to my client.

And he still contends that there's only one prior conviction --

MR. ANDERTON: Your Honor, for the record, the State would represent to the Court that we have four different case numbers. Again in the Bessemer Division of Jefferson County, CC99-0970. Which is a discharging a firearm into an occupied dwelling.

CC99-1278, which is a discharging a firearm into an occupied dwelling.

CC2001-0258, which is a possession of marijuana first-degree.

And CC2001-0259, which is also a possession of marijuana in the first-degree.

Your Honor, the Defendant may be under the mistaken impression that because the two discharging were pled guilty to on the same day, they only count as one offense. He may also be under the misunderstanding that because the two possessions of marijuana

were pled guilty on the say same date, that

that is only a single conviction. And I

believe the State of Alabama -- the law here

in the State of Alabama has ruled that each

one of these would be in fact a conviction.

Giving him a total of four.

THE COURT: That's correct.

Well, Mr. Bester, you've heard these

statements by the DA; have you not?

THE DEFENDANT: Yes.

THE COURT: And what he's saying at

this point is that you're looking at life or

life without parole. And they're offering

you a life -- a recommendation of a life

sentence if you choose to plead guilty

today.

And I need to know that you understand

that, and understand that from what I'm

hearing there's a possibility that you could

receive a sentence of life without parole.

If it was shown that you had at least

three prior felony convictions, do you

understand that?

THE DEFENDANT: Yes.

THE COURT: All right.

1            And you wish to exercise your right to

2 a trial by jury or you wish to take the

3 State's offer of life?

4         THE DEFENDANT: I'm going to take my

5 right.

6         THE COURT: Sir?

7             (No response.)

8         THE COURT: Sir? I didn't hear you,

9 I'm sorry.

10         THE DEFENDANT: Could you repeat the

11 question?

12         MR. BENSON: Do you want the jury trial

13 or do you want to take the plea?

14         THE DEFENDANT: I really want to hire

15 me another lawyer. Because I feel I'm not

16 represented right.

17         THE COURT: Well, I didn't ask you

18 that. I need to know, we got a jury right

19 outside this courtroom, ready to go, and I

20 need to know if you want to take the life

21 sentence or do you want to go to trial?

22             (No response.)

23             (Brief Pause.)

24         MR. ANDERTON: Obviously, I'm not

25 trying to speak for Mr. Bester. Obviously,

1   but, I guess I just want to make it clear,

2   that there is a difference between a life

3   sentence and a life without parole sentence.

4   And perhaps Mr. Bester does not grasp the

5   difference.

6       THE COURT: Well, I think Mr. Bester

7   understands that life without parole means

8   you never get out of prison.

9       And a regular life sentence means that,

10  at some point, you would be eligible for

11  parole.

12      MR. ANDERTON: All right. Thank you.

13      MR. BENSON: Your Honor, at this time,

14  I think -- I mean, I'm sort of at a

15  difficult position here. My client has

16  asked for a new attorney, I would

17  respectfully request this Court to grant his

18  wish, if he doesn't feel like he's getting

19  the quality of representation he needs,

20  then --

21      THE COURT: I don't wait till the

22  moment of trial --

23      MR. BENSON: I understand, Judge --

24      THE COURT: -- to deal with attorney

25  issues.

1    Okay. So you understand that you wish

2    to proceed to trial; is that correct, Mr.

3    Bester?

4         THE DEFENDANT: I guess, yeah.

5         THE COURT: All right. You said you

6    had something on a motion to suppress,

7    Billy?

8         MR. BENSON: Yes, sir, on a motion to

9    suppress, Judge.

10        I believe what the State -- the

11   evidence the State will present, will be

12   that my client was under surveillance by the

13   police officers. He was seen leaving his

14   residence with a bag. And got into a pickup

15   truck belonging to another individual.

16        They followed him to his mother's

17   residence. He took the bag upstairs, then

18   came back downstairs without the bag. Left

19   with those individuals. Police continued to

20   follow the vehicle, pulled the vehicle over.

21        That's when they found the

22   paraphernalia. Then, went back to the

23   mother's residence. At that time, again,

24   this is what I believe the State is going to

25   state. The police officers asked the mother

1   if they can come in and search the

2   residence. And that she agreed to let them

3   come in and search. And directed them to

4   where Mr. Bester placed the bag.

5       Your Honor, I've spoken with Mr.

6   Bester's mother, the State has provided a

7   copy of the consent to search premises,

8   which she signed. Which she does

9   acknowledge signing. But she states that

10  she was not -- She has a 7th grade reading

11  level. That she did understand what she was

12  signing, was not informed of what she was

13  signing. And even when she did sign it, it

14  was signed after the search was conducted.

15      So on those grounds I would ask this

16  Court to suppress the evidence as an illegal

17  search, and that it was not a valid consent.

18          (Brief pause.)

19      MR. BENSON: It was not a search

20  warrant, it was a "stop and knock", I think

21  is what they call it.

22      THE COURT: Well, I will listen --

23      MR. BENSON: The mother is here.

24      THE COURT: -- carefully, as I do in

25  every case, to the facts. And I will allow

1   you to renew your motion to suppress, along

2   with your timely motion for judgement of

3   acquittal at the conclusion of all the

4   evidence in the case.

5        MR. BENSON:  Thank you, Judge.

6        THE COURT:  All right.

7             (Whereupon, State's Exhibit

8             Numbers 1 through 14 were marked

9             for identification.)

10            V O I R   D I R E.

11   April 6th, 2009 - 2:30 p.m.

12            (Whereupon, the following was in

13            open court with the Defendant and

14            counsel present.)

15            (Whereupon, a jury venire was

16            brought in and sworn, the

17            indictment was read, the venire

18            was qualified and identified,

19            after which the following was had

20            and done.)

21            (Whereupon, special questions on

22            voir dire examination were asked

23            of the jury venire by counsel for

24            the State, there being no

25            objections or exceptions taken

thereto.)

THE COURT: Ladies and gentlemen, we are going to break right now, for the evening.

I need you all to be back in the courtroom about 10 till 9. About 10 till 9, by the clock in the back of the courtroom.

Please, don't go back across the street to the big jury room, okay. Please, come here to the 7th floor of the Criminal Justice Building, Judge Jones's courtroom, all right.

You all don't know anything about the facts of this case. Please, don't make any decisions, please don't rush to any conclusions. You only make a decision when you have heard all of the evidence in the case.

Does anyone have any questions about tomorrow morning?

A JUROR: What time you say?

THE COURT: About 10 till 9. About ten till nine. And if you want to come a little earlier, Neil, will have you a pot of coffee back there.

1     But y'all come back here in the

2     morning. And don't discuss the case. We

3     haven't talked about any address.

4         When we come back in the morning, we

5     will pick up where we left off. We will

6     listen to the defense questions at that

7     time. Then we will select our jury. And

8     we'll get your number down to 13. Which

9     will give us 12 jurors with an extra in case

10    we have an emergency.

11        Does anyone have a question?

12        Everyone know where they parked?

13        Yes, sir?

14        JUROR: So just to clarify, we won't go

15    to the regular jury room tomorrow morning,

16    we'll come straight to this building --

17        THE COURT: Exactly.

18        JUROR: -- we don't check in over

19    there?

20        THE COURT: We are still in jury

21    selection here.

22        JUROR: Okay.

23        THE COURT: So once I get 13 of you

24    selected, then I will release the other ones

25    to go back over there for further service

1  during the week.

2        JUROR: Yes, sir.

3        THE COURT: Okay. All right, any other

4  questions?

5             (No response.)

6        THE COURT: Very good. All right.

7        You all have a good and safe evening.

8  And I'll see you in the morning at 10 till

9  9.

10            (Whereupon, the jury venire was

11                 released at 4:15 p.m.)

12       MR. BENSON: Are you going to reinstate

13  my client's bond?

14       THE COURT: Nope. I'm not.

15       MR. BENSON: I would ask that you

16  reconsider. He hasn't violated his bond.

17  He's shown up for court every time.

18       THE COURT: He's looking at what?

19       MR. BENSON: He's looking at life.

20       THE COURT: Or life without?

21       I'll feel better knowing I've got him

22  here.

23            (Whereupon, on April 6th, 2009

24             court was adjourned to April 7th,

25             2009 at 9:00 a.m.)

1     PROCEEDINGS

2         April 7th, 2009 - 9:00 a.m.

3             (Whereupon, the following was

4             heard in open court with the

5             Defendant and all counsel

6             present.)

7         THE COURT:  All right.  Good morning,

8     ladies and gentlemen.

9         We are going to continue with jury

10    selection this morning.  And I think the

11    State had finished on yesterday evening.  So

12    now, we will turn now to the defense.

13        And Billy, you have the floor.

14            (Whereupon, special questions on

15            voir dire examination were asked

16            of the jury venire by counsel for

17            the defendant, there being no

18            objections or exceptions taken

19            thereto.)

20            (Whereupon, a short recess was

21            had, after which thirteen jurors

22            were selected and the following

23            proceedings were had.)

24        THE COURT:  What says the State?

25        MR. ANDERTON:  The State is satisfied,

1    Your Honor.

2            THE COURT:   What says the defense?

3            MR. BENSON:   The defense is satisfied,

4    Your Honor.

5            THE COURT:   Ladies and gentlemen, to

6    those of you all who were not selected, we

7    thank you and appreciate your service in

8    jury selection in this case.

9            Would you please return to the big jury

10   room across the street for further service

11   during week?   Have a great week.

12               (Whereupon, those not selected

13                were released.)

14           THE COURT:   All right, ladies and

15   gentlemen, let's talk a bit.   Try to get you

16   orientated.

17           A JUROR:   Your Honor?   I believe I need

18   to speak with you and counsel in chambers

19   before we get started.

20           Or there's something I need to discuss

21   with you.

22           THE COURT:   Okay.   Come on back in

23   chambers.

24               (Whereupon, the following was

25                heard in chambers with the

1           defendant and all counsel, along

2                with the juror.)

3       THE COURT: Okay. Ms. McAlister, you

4   have something you want to tell the Court?

5       JUROR: Yes, sir. Just before we get

6   started, I wanted to let you know that I did

7   leave when you gave us the break, and I

8   don't know if these were Mr. Bester's

9   friends or family that were sitting behind

10  me. But they were having discussions about,

11  it sounded like whether they believe the

12  search warrant was proper or not.

13      And also heard a statement, "I know he

14  doesn't want to go back to jail," and I

15  don't know if that means his initial arrest

16  or he's been priorly convicted of another

17  crime. And I don't believe that would

18  influence my decision. I certainly know I

19  don't consider that evidence. But I just

20  wanted to make all the parties aware that I

21  heard these discussions.

22      THE COURT: Okay. Would you do me a

23  favor and have a seat right outside there,

24  please?

25          (Whereupon, the juror complies.)

THE COURT: They shouldn't have been talking in the courtroom.

MR. BENSON: I will certainly instruct them to cease and desist, Your Honor, I apologize.

THE COURT: Well, I only have one extra.

MR. ANDERTON: Judge, of course --

THE COURT: Wasn't she the last one to come on the jury?

MR. ANDERTON: She was, yes, Your Honor. Mr. Jenkins was sitting next to her, and I don't know how long these discussions have been going on. Or if Mr. Jenkins or any of the other jurors heard Mr. Bester's family speaking in those terms. How long they've been doing, how loud they've been doing it, even during the break while -- before we reconvened this time.

I don't know. I know Mr. Jenkins is on the last guy - I can't remember his name, he's not on - he's not on, I don't think, concern.

But Ms. McAlister and Mr. Jenkins were on that final row.

1      THE COURT:  Right, right.

2          Maybe he left during the break.

3          MR. BENSON:  I believe he did, Your

4      Honor.

5          THE COURT:  I don't know, I wasn't out

6      there.

7          MR. ANDERTON:  Of course, I don't

8      either.

9          But I also don't know if they continued

10     these discussions while the jurors were back

11     in the room.  But, talking about the facts

12     of the case, like that, around people that

13     they know are potential jurors in this case.

14              (Brief pause.)

15         THE COURT:  All right.  What do you

16     suggest we do with her?

17         We could excuse her.  And just let her

18     be the alternate.

19         MR. ANDERTON:  She has said -- she has

20     said that, you know, she doesn't consider

21     that evidence.

22         MR. BENSON:  Right.

23         MR. ANDERTON:  And she was quite

24     honestly forthright enough to come to the

25     Court on her own, and not even in answering

a question, "Do you need to talk to us in
the back room?", she kind of did it on here
own.

THE COURT: She is the alternate.

MR. BENSON: Right.

THE COURT: I guess, we can just tell
her don't talk to anybody else.

MR. BENSON: And Your Honor, she is an
attorney --

THE COURT: But there is risk of
contamination.

I'm sorry?

MR. BENSON: She is an attorney, if I
remember correctly. And so I think that,
you know, she's a aware of the process and
can put that aside.

THE COURT: Well, I don't want him
coming up later saying, well, my attorney
should have got her off the jury, so I
didn't have fair trial, so give me a new
trial.

I'm thinking the safest thing to do is
just exclude her. I mean, she seems like
she's a real, you know, nice lady, and would
be a good juror. But as it stands, she's

1    the alternate.

2         So since she's already the alternate.

3         And this case is not going to last but

4    a day, right?

5         MR. ANDERTON:  I wouldn't expect it to

6    be any more than that.

7         THE COURT:  So I think the safest thing

8    to do, and the best thing to do for him, so

9    as not to help make any issues.  Is just to

10   be exclude her and let her go.  Before she

11   has any contact with the other jurors.  And

12   that way he can't speculate as to whether or

13   not she said something to somebody during a

14   break, or lunch, or while they, you know,

15   back in the jury room.

16        MR. ANDERTON:  Judge, may I make the

17   suggestion, that we give Mr. Benson and

18   Mr. Bester a moment to talk among

19   themselves?  It may be that he would have

20   just as big an argument on appeal, by saying

21   she should have not been excused.

22        THE COURT:  Well, she's already the

23   alternate, she's not on the jury.

24        MR. ANDERTON:  I understand.

25        THE COURT:  You know, she's just the

1     alternate.

2         You have something you wish to add for

3     the record?

4         MR. BENSON: Your Honor, we're in favor

5     of the Court's position.

6         MR. ANDERTON: Okay.

7         MR. BENSON: That she should be

8     excluded.

9         THE COURT: Have you talked to your

10    client?

11        MR. BENSON: No -- Well, if you mind

12    just giving me a moment I'll talk to him.

13        THE COURT: Okay.

14           (Off the record.)

15        MR. BENSON: Your Honor, my client

16             concurs. This juror probably

17             should be excluded.

18        THE COURT: All right, I'm going to

19    exclude her. Okay.

20        Okay, next question. (Pause) Who are

21    those people out there, are they family?

22        MR. BENSON: The majority is family.

23    One of them won't be in, she's a potential

24    witness. So she'll be outside the

25    courtroom.

As I stated a moment ago, I will
certainly get with the others and tell them
the talking needs to cease and desist.

THE COURT: There's no doubt in my mind
whoever said, "He don't want to go back to
jail", is trying to influence the jury by
making that comment.

Certainly it's gross negligence.

All right. Let's go back in.

She's excused.

(Whereupon, the alternate juror
was excused.)

(Whereupon, the following was
heard in open court with the
Defendant and all counsel present,
the jury is present.)

THE COURT: Ladies and gentlemen, y'all
go in the jury room for a second.

(Whereupon, the jury leaves the
courtroom, and the following is
heard outside their presence.)

THE COURT: Those of you all that are
here in the courtroom with the Defendant,
you all have a right to be here. And we're
glad to have you here in our courtroom.

1    But, because these are serious proceedings,

2    you must be on your best behavior.

3         Now, I just had to excuse a juror

4    because you all were talking in my

5    courtroom.  And the woman heard you all

6    talking about him being in jail, and him not

7    wanting to go back to jail.

8         First of all, you should not have been

9    talking period in the courtroom.  And second

10   of all, you certainly should not have been

11   saying anything about him in jail.

12        While you are in this courtroom, do not

13   talk.  If you want to talk, go outside and

14   talk quietly.  If you all cause a mistrial,

15   he's going to be sitting in jail until the

16   next trial date.  Which may be two months

17   from now.  I don't know.  So you don't want

18   to do anything to cause a mistrial in this

19   case.  So be on your best behavior.

20        When the jury comes and goes.  No one

21   needs to be on that front row.  Okay.  Where

22   they have to walk right past there.  Okay.

23        Anything for the State?

24        MR. ANDERTON:  Nothing, Your Honor.

25        THE COURT:  Anything for the defense?

1          MR. BENSON: No, Your Honor.

2          THE COURT: Bring them in.

3              (Whereupon, the jury returns to

4              the courtroom where the following

5              was heard in open court with the

6              Defendant and all counsel

7              present.)

8          THE COURT: All right. Ladies and

9      gentlemen, first of all, you all are our

10     jury for the trial of this case. And let me

11     just say this:

12         Serving as a juror is an honor. It's a

13     matter of civic pride. It is one of the

14     most important things that we do as citizens

15     in this country, serve on juries. It's

16     right up there along with voting. Those are

17     the two most important civic

18     responsibilities that we have.

19         And when you are serving as a juror in

20     the case, you have responsibility to make

21     sure that you are not doing anything

22     improper, okay.

23         So if you have a question about whether

24     you should or should not be doing something,

25     I would caution you, probably, not to do it

until you check with the court, okay. If

you have a question in your mind.

Okay, let's go ahead then and get

started.

First thing I'd like to do is review

the charges. And then we're gonna talk

about some other things to kind of get you

familiar with the process.

How many have served on a jury before?

(Jurors indicate by raising their

hands.)

THE COURT: Couple. Okay. So this

should be helpful for the rest.

The Defendant, as I said before, enters

into the court presumed to be innocent.

That is, he comes into the court with the

presumption of innocence around him. And

that coat of presumption of innocence

follows him throughout the trial, until such

time, as the State, through the D.A.'s

Office there, can prove beyond a reasonable

doubt that he is guilty.

In other words, the Defendant has no

burden of proof. The burden of proof is on

the State because the State brought the

1   charges.  Okay.  These charges against the

2   Defendant, charging him with trafficking,

3   failure to affix a tax stamp and possession

4   of drug paraphernalia.

5       These charges are not evidence.  It's

6   simply the way we notify a person who is

7   accused of committing a crime of the formal

8   charge or charges against him or her.  And

9   that's why you are here.  To determine if

10  the State can prove beyond a reasonable

11  doubt the Defendant's guilt.

12      What is a reasonable doubt?  It's a

13  doubt that you can give a good, sound,

14  sensible reason for.  A good, sound,

15  sensible reason for.

16      Say I have a reasonable doubt of the

17  Defendant's guilt because of this fact, or

18  that fact.  Or because of a review of all of

19  the evidence, or some part of the evidence,

20  or from a lack of evidence.  If you do not

21  have a reasonable doubt, you convict.  If

22  you do, you acquit.

23      You, ladies and gentlemen, are the

24  finders of facts in this case from the

25  evidence.  And in determining the guilt or

1    innocence of this Defendant, you should not

2    go outside of the evidence that you receive

3    from this witness stand.  Except you should

4    use your good common sense and life

5    experiences that you've gained during the

6    course of your lives.  You want to take that

7    good common sense with you back in the jury

8    room during your deliberations and use them.

9        So when you go back there, you're going

10   to have the testimony that you've heard, you

11   are going to have exhibits that I have

12   allowed into evidence for your

13   consideration, along with your good common

14   sense, education, life experiences and

15   training.  Okay.

16       It would be your job, as the judges of

17   the facts, to determine the credibility, the

18   believability, of the witnesses who testify

19   during the course of the trial.  In other

20   words, it would be your job to determine how

21   much weight you give to the testimony of the

22   witnesses.

23       For example, one witness you might say,

24   hum I give that witness a lot of

25   credibility, give their testimony a lot of

weight. And the next witness you might say,
I don't give that witness's testimony much
weight or much credibility. You see what I
mean?

Then, at the end of the trial, you take
the evidence when you go back there that you
believe. That you find credible, worthy of
belief. And you ask yourself, does this
evidence convince me beyond a reasonable
doubt of the Defendant's guilt. If it does,
you convict. If it does not, you acquit.

I am the judge of the law. It's my job
to rule on objections that the attorneys
make during the course of the trial. And
you are not to presume anything from the
rulings that I make on the attorney's
objections. The attorneys are duty bound to
make objections when they think it is
proper. If an attorney objects and the
Court says, "sustained", that means the
witness cannot answer the question. If the
Court says, "overruled", that means the
witness is free to answer the question.

During the pendency of the case - and
they tell me it's not going to be a long

1   trial - do not discuss this case or your

2   feelings about similar matters among

3   yourselves. Okay. In other words, you

4   don't want to say, well, you know, last week

5   one of my coworkers, two weeks ago, had jury

6   duty. And they were on a similar case to

7   this, and this is what happened -- Don't do

8   that. Because see, then that gets that case

9   over in this case, and we don't want that.

10  Don't go on the internet to look up any

11  terms or try to do some research. Why?

12      Because you are going outside of what I

13  just instructed you to. And that's to get

14  your evidence from the courtroom, here, from

15  this witness stand, and the exhibits, and

16  your good ole common sense, okay.

17      So don't let anyone talk to you about

18  this case during the pendency. And the 12

19  of you are to only talk about it once I give

20  it to you for your deliberations, okay.

21  Okay.

22      I think Billy mentioned earlier during

23  voir dire that the attornies may not speak

24  to you if they see you outside, or in the

25  hallways, or coming and going. That is

1   because they are attempting to avoid the

2   appearance of impropriety. It wouldn't look

3   right if I was leaving and I looked over and

4   I saw one of you and one of these attorneys

5   huddled over in a corner, talking, would it?

6   You wouldn't want that. And it wouldn't be

7   fair to either side. So that's why they

8   don't talk to you because they are

9   attempting to avoid the appearance of

10  impropriety.

11      Normally, we'll have a morning recess

12  about 10:30ish and an afternoon recess about

13  3ish. We normally start at nine and 1:30.

14  Today that will probably be a little

15  different. Because we have a little

16  different afternoon schedule, but I will

17  tell you about that when we break.

18      Okay. This is the trial procedure that

19  we will follow. We will begin with the

20  opening statements of the attorneys. In

21  opening statements the attorneys are allowed

22  to tell you what they expect the evidence to

23  show in the case. To kind of give you a

24  preview of coming attractions sort-of-speak.

25  They tell you what they expect the evidence

to show in the case. Kind of give you a road map of where they plan to take you. The State will proceed first, then the defense will proceed.

After that, the State will begin calling witnesses to the witness stand in an effort to try to begin convincing you of the Defendant's guilt. The State will get to question the witness. Then the defense will get to cross-examine the witness. And different rules apply depending upon whether you called the witness or whether the other party called the witness.

At some point, the State will look to the Court and say that the State rests. That means that they have called the witnesses that they wish to as of that time. And at that time, I will need to take up a legal matter with the attorneys out of your presence.

After that, we will then turn to the defense. And we'll ask the defense to call what witnesses that they may. And they don't have to because they don't have any burden. But they do have the right to call

1    whatever witnesses that they wish to. So

2    once the defense calls a witness. Then, the

3    State gets to question or cross-examine the

4    witness also.

5          Then, at some point, the defense will

6    look to the Court and say the defense rests.

7    And I will take up another legal matter with

8    the lawyers. That we have to, procedurally

9    speaking.

10         After you've heard all of the evidence,

11    then the attorneys will engage in closing

12    arguments to you. And in closing arguments

13    the attorneys are allowed to review all of

14    the evidence that they have presented from

15    their vantage point. From their view point.

16    To review the key points on their respective

17    sides with you. And they also are allowed

18    to argue inferences from the evidence in

19    closing arguments for your consideration.

20         Because the State has the burden of

21    proof, the State will argue their case first

22    and last. With the defense arguing their

23    case in the middle.

24         Finally, after closing arguments the

25    Court will instruct you as to the law that

1     you should apply in the case. Then you will
2     begin deliberations, okay.

3          The rule is in effect. Anyone that's
4     going to testify as a witness must wait
5     outside. Do not discuss your testimony with
6     anyone other than the attorneys. Each side
7     is responsibile for enforcement of the rule
8     on their respective sides.

9          (Brief pause.)

10         THE COURT: The charges are quite
11    simple.

12         The trafficking count charging Durrell
13    Bester with either knowingly bringing into
14    this State being in actual or constructive
15    possession of 28 grams, but less than 500
16    grams of cocaine. That's trafficking.
17    Which is based on the amount.

18         The second count is failure to affix a
19    tax stamp to those drugs that he was alleged
20    to have been in possession of. Because the
21    law says, if you are gonna have drugs, you
22    have to get tax stamps and put them on the
23    drugs.

24         The third count is simply drug
25    paraphernalia count. Alleging that he had

1    syringes, Brillo pads, an ashtray, a pill

2    splitter and a push rod used for unlawfully

3    injecting cocaine in his possession.

4        So it will be your job to determine

5    whether or not the State can prove these

6    charges beyond a reasonable doubt.  Okay.

7        All right.  So let's turn our attention

8    now to the -- Oh, let me say this.

9        When we begin taking testimony, we will

10   give you note pads and a pencils so that you

11   can make notes of testimony that you wish to

12   memorialize for your later consideration,

13   okay.

14       What the lawyers say is not evidence.

15   So in opening statements you will not have

16   the note pads and pencils to make notes.

17       So once the testimony begins, we will

18   give you notepads and pencils.  Because once

19   you're back there deliberating, you can't

20   send me a note that says, "Judge, what did

21   the second witness say about the color of

22   the car?"

23       I cannot comment on it.  Because that's

24   your job.  To determine what the facts are

25   in the case, okay?  All right.

1          Let's turn our attention now to the

2    State and let's hear their opening

3    statement.

4          Mr. Anderton, you have the floor.

5               (Whereupon, the State presented

6               their opening statement to the

7               jury, there being no objections or

8               exceptions taken thereto.)

9               (Whereupon, the defense presented

10              their opening statements to the

11              jury, there being no objections or

12              exceptions taken thereto.)

13         THE COURT:   State, are you prepared to

14    call your first witness?

15         MR. ANDERTON:   We are, Your Honor.

16         THE COURT:   Call your first witness.

17         MR. ANDERTON:   The State calls Mark

18    Eaton.

19              DEPUTY MARK EATON,

20         A witness for the State,

21    Was duly sworn and testified as follows:

22         THE COURT:   Have a seat, get

23    comfortable, scoot up towards the

24    microphone, watch your knees down there.

25              (Witness complies.)

```
 1              THE COURT:  State your full name for
 2         the record, please, sir.
 3              THE WITNESS:  Mark Eaton.
 4              THE COURT:  Go ahead, State.
 5                   DIRECT EXAMINATION
 6    BY MR. ANDERTON:
 7    Q.    Mr. Eaton, where do you work?
 8    A.    I work at the Jefferson County Sheriff's
 9    Office.
10    Q.    In what capacity?
11    A.    I'm an investigator for the Vice and
12    Narcotics Unit.
13    Q.    All right.  As an investigator for the Vice
14    and Narcotics Unit, what do you do, Mark?
15    A.    My job is to investigate complaints, or
16    reports we get of people that are selling drugs.
17    Take the investigation to the point of purchasing
18    drugs from these individuals, and then executing
19    search warrants.
20    Q.    Okay.  And how long have you been working
21    with the Jefferson County Sheriff's Office?
22    A.    14 years.
23    Q.    Okay.  And how long have you been an
24    investigator with the narcotics department?
25    A.    Five years.
```

1  Q.    All right.  During the course of that time,

2  is it Sergeant Eaton, is it Officer Eaton, what is

3  it?

4  A.    Deputy.

5  Q.    Deputy Eaton?

6        Deputy, during the course of that 14 years

7  with the Sheriff's Office have you had occasion to

8  participate in the execution of search warrants?

9  A.    Yes, sir.

10  Q.    All right.  And during the course of the

11  last five years have you had occasion to in fact

12  secure a search warrant, and execute them

13  yourself?

14  A.    Yes, sir.

15  Q.    All right.

16        Deputy, let me direct your attention to the

17  24th of March, 2008 and ask you if you remember

18  that particular occasion.

19  A.    Yes, sir.

20  Q.    All right.  Based on the events of that day,

21  had you come to know a fellow by the name of

22  Durrell Bester?

23  A.    Yes, sir.

24  Q.    And do you see Mr. Bester in court today?

25  A.    Yes, sir.

1   Q.    Would you point him out and tell me what

2   he's wearing today, please?

3   A.    He's sitting right over there (pointing)

4   wearing a white shirt and dark colored tie, and

5   slacks.

6   Q.    All right?

7              MR. ANDERTON:   Your Honor, if the

8              record could reflect the witness as

9              indicated the Defendant, Durrell Bester?

10             THE COURT:   So noted.

11  Q.    Now, Deputy Eaton, prior to March 24th, 2008

12  did you in fact secure a search warrant for the

13  person of and the apartment of Durrell Bester?

14  A.    For the person and the residence of Durrell

15  Bester, yes, sir.

16  Q.    Okay.  And did you in fact serve that search

17  warrant at the time you wanted to serve that

18  search warrant?

19  A.    Not at the exact time.

20  Q.    Okay.  And tell us what happened prior to

21  actually serving that search warrant.

22  A.    We had surveillance on the residence.  Deputy

23  Washington and Sergeant French were sitting on the

24  streets and watching the residence while we were

25  briefing for the search warrant and preparing to go

1    execute the search warrant.

2    Q.   Okay.

3    A.   While they were sitting there they observed a

4    pickup truck come --

5              MR. BENSON: Objection, Your Honor, to

6         the Detective -- or Deputy testifying to

7         what another officer saw.

8              THE COURT: Sustained.

9    Q.   All right.

10        When were you -- were you notified that

11   something was going on over at the apartment?

12   A.   Yes.  They called me on the radio.

13   Q.   Okay.  And Did you in fact have a

14   conversation with them?

15   A.   Yes, sir.

16   Q.   All right.  When was the first time that you

17   arrived on any scene concerning this

18   investigation?

19   A.   It was just a few minutes later.

20   Q.   All right.  And where did you arrive?

21   A.   I came to the location, 1100 Center Point

22   Road at the Bama Gas Station, where the pickup

23   truck had left that residence and come to this

24   location.

25   Q.   All right.  And at that time, did you see

1  the individual you know as Durrell Bester?

2  A.    No, I didn't -- I couldn't tell who was in

3  the vehicle at that time.  I only saw the vehicle.

4  Q.    Okay.  Did the vehicle stay there?

5  A.    No.

6  Q.    Stay there at that gas station?

7  A.    No, sir.

8  Q.    Okay.  Where did it go?

9  A.    It left out of the gas station, and we

10  followed it to an apartment at the Twin Gates

11  Apartment Complex on Huffman Road on the other side

12  of Center Point Parkway.

13  Q.    All right.  And the Twin Gates Apartment

14  Complex is that here in Jefferson County?

15  A.    Yes, sir.

16  Q.    Is it in the Birmingham Division of

17  Jefferson County?

18  A.    Yes, sir.

19  Q.    All right.  Once the truck -- You said you

20  were following a truck?

21  A.    Yes, sir.

22  Q.    Did you see anybody get out of that truck?

23  A.    Yes, sir.

24  Q.    Okay.  Who did you see get out of that

25  truck?

1  A.    When it arrived at the apartment complex, I

2  saw Mr. Bester and a white male, who we didn't know

3  at that time, get out of the pickup truck.

4  Q.    All right.  And what, if anything, did they

5  do at that point?

6  A.    They both walked into an apartment there at

7  the apartment complex --

8  Q.    Do you know what apartment that was?

9  A.    It was letter E.

10  Q.    All right.  Let me show you --

11        MR. ANDERTON:  Judge, may I approach?

12        THE COURT:  Yes, you may freely.

13  Q.    Let me show you what's been marked as

14  State's Exhibit No. 1, for identification

15  purposes, and see if you can identify that,

16  please?

17  A.    Yes, sir.  This is the apartment door with

18  the letter number E on the door that the Defendant

19  went into to.

20  Q.    Okay.  Did you go into that apartment at

21  that time?

22  A.    No, sir.

23  Q.    Who went into that apartment at that time?

24  A.    At that time, none of us went into the

25  apartment only the Defendant and the white male

1    that got out of the truck with him.

2    Q.    Okay.  When Mr. Bester got out of the car --

3    truck, and went into the apartment, was he

4    carrying anything?

5    A.    Yes, sir.  He had a white bag in his hand.

6    Q.    Okay.  About how long was Mr. Bester and

7    this white male were they in the apartment?

8    A.    One to two minutes, approximately.

9    Q.    Then what happened?

10   A.    They came out, got back in the truck, and

11   drove away from the apartment complex.

12   Q.    Okay.  When Mr. Bester left that apartment

13   complex -- When he walked out of the apartment,

14   excuse me, and walked back to the truck, did he

15   have white bag with him at that point?

16   A.    No, sir.

17   Q.    Okay.  What happened once Mr. Bester and

18   this white male got back into the truck and drove

19   off?

20   A.    We began to follow on Mr. Bester, and we

21   called for a patrol unit to come stop him.

22   Q.    Okay.  Who is we?

23   A.    It was myself, most of the members of the

24   narcotic unit, other than Sergeant French and

25   Deputy Washington.  They stayed at the Twin Gates

1  and watched the apartment while we followed Mr.

2  Bester to try and get him pulled over by a patrol

3  vehicle.

4  Q.    All right.   What type of automobile were

5  y'all in?

6  A.    All of them were unmarked cars, SUVs and

7  different cars --

8  Q.    Okay.   But you didn't have any marked units

9  with you at that time --

10  A.    No, sir.   No, sir.

11  Q.    Okay.   So you weren't following him in a

12  marked unit?

13  A.    No, sir.

14  Q.    Okay.   And why not?

15  A.    Part of our job is to do undercover work.

16  And we don't want to people to know who we are

17  until it's time for us to do so.

18  Q.    All right.   Now, there are unmarked cars out

19  there, Deputy Eaton, are there not, that have the

20  blue lights and the sirens and all this kind of

21  stuff?

22  A.    Yes, sir.

23  Q.    All right.   When you indicated that you

24  called for a patrol unit, why didn't -- Were your

25  vehicles equip with all the blue lights and all

1 the other stuff?

2 A. No, sir. We don't have lights or sirens in

3 our vehicles.

4 Q. Okay. All right. So you said you called

5 for a patrol unit?

6 A. Yes, sir.

7 Q. And what was the purpose in calling for the

8 patrol unit?

9 A. We were calling them to come make a traffic

10 stop on Mr. Bester since I already had a search

11 warrant for him also, and to stop him so that we

12 could detain him.

13 Q. All right. Did you notice anything about

14 the automobile that they were riding in also?

15 A. Yes. It was a pickup truck with a lot of

16 luggage and other type of things in the back-end of

17 the pickup truck.

18 Q. Okay. Was there anything about the tag that

19 was unusual?

20 A. Yes. You couldn't see the year sticker. I

21 believe it was the year sticker. The tag was

22 askewed and you couldn't tell if it was a good tag

23 on the vehicle or not.

24 Q. Okay. And did in fact a patrol unit arrive

25 on the scene?

1    A.    Yes, sir.

2    Q.    All right.  Did the truck pull over?

3    A.    Yes, sir.

4    Q.    All right.  The patrol unit, now it's a

5 marked unit; is that right?

6    A.    Yes, sir.

7    Q.    Got the lights, got the siren and got the

8 door markings and stripes, and all that stuff,

9 right?

10    A.    Yes, sir.

11    Q.    Okay.  So it would be easily recognizable as

12 an official sheriff's car?

13    A.    Yes, sir.

14    Q.    And did the truck pull over?

15    A.    Yes, sir.

16    Q.    Okay.  What happened next?

17    A.    Deputy Daniels, was the patrol officer that

18 stopped the vehicle for us.  He approached the

19 vehicle on the driver's side.  And I pulled up and

20 approached the vehicle on the passenger side with

21 him.

22    Q.    Okay.  What happened next?

23    A.    As we walked up to the car, I went ahead and

24 got Mr. Bester out of the vehicle and informed him

25 that we had a search warrant for the residence that

1  he was staying at, as well has him. And I placed

2  him in handcuffs and I put him in the back seat of

3  the patrol vehicle.

4        Deputy Daniels talked to the two white male

5  subjects that were in the car with them also.

6  Q.    Okay.  Not what was said, but could you see

7  that a conversation was taking place between

8  Deputy Daniels and these other two men?

9  A.    Yes, sir.

10 Q.    Okay.  In addition to running drug

11 investigations, do you have any additional duties

12 with the sheriff's office?

13 A.    Yes, sir.  I'm also the K-9 Handler for the

14 narcotics unit.

15 Q.    All right.  What is the K-9 Handler?

16 A.    I have a -- My responsibility is that I have

17 a dog that's trained to detect narcotics.  And I

18 use her on any search warrants to search the

19 residences, as well as vehicles on traffic stops.

20 And she's trained to detect four different types of

21 drugs.

22 Q.    All right.  What type drugs is she trained

23 to detect?

24 A.    She can detect marijuana, methamphetamine,

25 cocaine and heroin.

1  Q.    Tell us what is her name.

2  A.    Pepsi.

3  Q.    All right.

4        THE COURT:   What's her name?

5        THE WITNESS:   Pepsi.

6        She was named in Europe before she ever

7        came to the United States.

8  Q.    All right.  Tell us, if you will, what her

9  training is that would qualify her to be a drug

10 dog.

11 A.    They go through a series of tests from the

12 time the dogs are brought here to the United

13 States.  She was trained by Ricky Barleaf at

14 Alabama Canine Law Enforcement Training Center.

15 It's in Northport, Alabama.

16        There's 30 different drug finds that these

17 dogs have to perform and score well enough on them

18 to be certified as a -- to be used as a drug dog.

19        She passed all of those qualifications.  And

20 every year we go back for a week long evaluation

21 and recertification on that training.

22 Q.    What type of dog is Pepsi?

23 A.    She's German Shepherd.

24 Q.    All right.  How old is she presently?

25 A.    We think she's around four to four and half

1  years-old.

2  Q.    Okay.  So she would have been about three or

3  three and half, at that time?

4  A.    Yes, sir.

5  Q.    All right.  And at that time was she in fact

6  fully qualified?

7  A.    Yes, sir --

8  Q.    To be a drug dog?

9        All right.  About how long had Pepsi been,

10 I guess, working full-time as a drug dog?

11 A.    At that time, I had had her for a year and

12 three months, and she was with a previous hander

13 before me for nine months.  So approximately two

14 years with sherif's office.

15 Q.    All right.  And when she's not working,

16 where does Pepsi live?

17 A.    At my home.

18 Q.    And why is that?

19 A.    Part of it is when you work a K-9 you form a

20 bond with that K-9, they're your partner, you take

21 care of them, you feed them, you give them water.

22 That way they trust you.  And they do what you tell

23 them to do, and obey you and not other people that

24 you come into contact with on the streets.

25 Q.    All right.  Can you give the ladies and