```
REL: 04/16/2010
Notice: This unpublished memorandum should not be cited as precedent. See Rule 54, Ala.R.App.P. Rule 54(d),
states, in part, that this memorandum "shall have no precedential value and shall not be cited in arguments or
briefs and shall not be used by any court within this state, except for the purpose of establishing the application
of the doctrine of law of the case, res judicata, collateral estoppel, double jeopardy, or procedural bar."
```

# Court of Criminal Appeals
State of Alabama
Judicial Building, 300 Dexter Avenue
**P. O. Box 301555**
**Montgomery, AL 36130-1555**

A. KELLI WISE
Presiding Judge
SAMUEL HENRY WELCH
MARY BECKER WINDOM
J. ELIZABETH KELLUM
JAMES ALLEN MAIN
Judges

Lane W. Mann
Clerk
Gerri Robinson
Assistant Clerk
(334) 229-0751
Fax (334) 229-0521

### MEMORANDUM

CR-08-1636    Jefferson Circuit Court CC-08-3771; CC-08-3772

<u>Durrell Bester, alias</u> v. State of Alabama

MAIN, Judge.

Durrell Bester, alias, was convicted of trafficking in cocaine, a violation of § 13A-12-231(2)a, Ala. Code 1975; failure to affix a tax stamp, a violation of § 40-17A-4, Ala. Code 1975; and possession of drug paraphernalia, a violation of § 13A-12-260, Ala. Code 1975. He was sentenced, as a habitual offender with three or more prior felony convictions, to life imprisonment without the possibility of parole for the trafficking conviction, and to 15 years' imprisonment for the tax-stamp conviction. The record also indicates that Bester was sentenced to 12 months in jail for the paraphernalia conviction. The sentences were ordered to run concurrently. Finally, the record indicates that the trial court imposed the statutorily-mandated fines, fees, and assessments for each



conviction. Bester filed a motion for a new trial, which the trial court denied following a hearing. This appeal followed.

I.

Bester first contends that the trial court erred in denying his motion for a judgment of acquittal. Specifically, he argues that the State did not present any evidence to establish that he constructively possessed the cocaine that formed the basis for the trafficking charge against him.

Deputy Mark Eaton, with the Jefferson County Sheriff's Department, testified that he was an investigator with the Vice and Narcotics Unit. According to Deputy Eaton, on March 24, 2008, law enforcement conducted surveillance on Bester's residence and obtained a search warrant for the residence. Deputy Eaton stated that during their surveillance, he followed a pickup truck; he stated that he observed Bester and another male arrive at an apartment complex where Bester's mother lived. Deputy Eaton stated that Bester and the other male exited the truck and entered Bester's mother's apartment, and that Bester was holding a white plastic bag in his hand. Deputy Eaton further testified that approximately one or two minutes later Bester and the other male came out of the apartment, got back into the pickup truck, and drove away from the apartment complex. According to Deputy Eaton, Bester was not holding the white bag when he left the apartment. Deputy Eaton testified that he and other undercover officers followed the pickup truck and called another officer in a marked patrol car to execute a traffic stop on the pickup truck. Deputy Eaton stated that he pulled his unmarked car alongside the pickup truck when the traffic stop was executed, and he got Bester out of the truck, informed him that they had a search warrant for his residence, and placed Bester in handcuffs and put him in the back seat of the patrol car. Deputy Eaton testified that Bester was a passenger in the pickup truck and was not the owner.[1]

---

[1]Deputy Ali Daniels of the Jefferson County Sheriff's Department testified that he initiated the traffic stop of the white pickup truck. Deputy Daniels' testimony was limited to his involvement in the execution of the traffic stop and was consistent with Deputy Eaton's testimony as set out above,

2

According to Deputy Eaton, the uniformed deputy spoke with the two other individuals in the pickup truck. The driver of the vehicle refused to consent to a search of the pickup truck, so Deputy Eaton had his canine partner, a German Shepard named "Pepsi," who was trained to detect the odor of assorted narcotics, walk around the vehicle. Deputy Eaton testified that Pepsi indicated the presence of drugs near the rear bed cargo area of the pickup truck, so he placed Pepsi in the bed of the truck, at which time Pepsi went to a suitcase in the bed of the truck and indicated the presence of drugs. Deputy Eaton stated that the suitcase was searched and inside a black plastic box in the suitcase he "found pieces of torn off Brillo pad, syringes, an ash tray, a pill splitter, and a push rod that was burnt on the end for a crack pipe." (R. 66.) According to Deputy Eaton, there were male clothes and female clothes in the suitcase. Deputy Eaton testified that Bester advised him that the suitcase was his, told him the female clothes belonged to his girlfriend, and that he had left in a hurry so he had just grabbed whatever he could and threw it in the bag. Deputy Eaton stated that Bester was placed under arrest at that time for possession of drug paraphernalia.

Deputy Eaton stated that he then returned to Bester's residence at 1368 5th Place Northwest and, along with other officers, executed the search warrant. According to Deputy Eaton, the search uncovered "a few small bags that had what appeared to be cocaine residue inside the residence ... [and] a set of digital scales in the kitchen cabinet." (R. 77.) According to Deputy Eaton, Bester was not charged with regard to any of the items found at his residence.

Sergeant Hattie French of the Jefferson County Sheriff's Department testified that she was the Sergeant of the Vice and Narcotics Unit. According to Sgt. French, she and Deputy Jude Washington were conducting surveillance on Bester's residence when they observed a blue pickup truck occupied by two white males, drive up to the house at a high rate of speed; she stated that one of the males went up to the porch of the house, that a black male, who she identified at trial as

---

with the following exception -- Deputy Daniels testified that he believed Bester was the driver of the vehicle.

3

Bester, came out of the house and "they went to throwing stuff in the back of the pickup truck." (R. 96.) She stated that she observed the men throw white bags, a black gym bag, luggage, and clothes into the back of the truck. Sgt. French further testified that Bester was holding a white bag in his hand when he got into the truck. According to Sgt. French, the men got into the truck and drove away. Sgt. French stated that they followed the truck to an apartment. She further stated that they were joined by Deputy Eaton at that location. Sgt. French testified that they observed Bester and a white male take items into the apartment; she stated that the white male carried a large white bag into the apartment, come back outside and got a piece of electronic equipment from the truck and carried it into the apartment. According to Sgt. French, Bester also carried a white bag into the apartment that was consistent with the appearance of the white bag she saw him carry from his residence. Sgt. French testified that they were at that location for approximately five or six minutes when they got back into the truck and left. She stated that Bester did not have the white bag in his hands when he left the apartment.

Sgt. French testified that after the truck left, she and other deputies remained at that location while other deputies followed the truck. She stated that she observed a female leave the apartment like she was going to the store. According to Sgt. French, when the woman returned, she and other deputies approached the woman and spoke with her in the doorway of her apartment. Sgt. French stated that she identified herself to the woman and told her she wanted to talk to her about her son. Sgt. French testified that the woman, who she identified as Dorothy Bester, told her to "come in." (R. 101.) Sgt. French further testified that she informed Dorothy Bester that they had been conducting surveillance on her son, had seen him come to her apartment with a white bag, and had seen him leave without that white bag. Sgt. French stated that she asked Dorothy if she could tell her where the bag was and whether she could look around the residence. According to Sgt. French, Dorothy asked if she was going to jail, offered to show deputies around the apartment, and signed a written consent to a search of her

4

apartment.[2]  Sgt. French testified that Dorothy led them to the second bedroom, pointed to a corner behind a small stereo, and said "'he put the bag over there.'" (R. 110.)

Sgt. French further testified that they discovered the bag where Dorothy had indicated, and that that bag appeared to be consistent with the bag Bester had carried from his house and into the apartment. According to Sgt. French, inside the bag they found electronic digital scales and what was later determined to be 69.6 grams of cocaine.[3] She further testified that officers also found, in a different white bag on the floor of the same room, clothing, some scales, baggies, and a glass Pyrex type cup containing residue; Sgt. French testified that that bag appeared to be consistent with the bag carried by the white male. Sgt. French testified that Dorothy told them that the bag and assorted clothes on the floor were Bester's things "that he just dropped them and left them in the floor." (R. 118.)[4] Sgt. French conceded on cross-examination that she did not take any photographs of Bester carrying the white bag from his house or into the apartment, and that there had been no surveillance of the apartment so she could not say who else had been at the apartment or what they had taken into the apartment.

Dorothy Bester testified for the defense that she was the defendant's mother. According to Dorothy, Bester and his

---

[2]Sgt. French testified that Dorothy attempted to show officers around without signing the form, but that Sgt. French insisted on first reading the form to Dorothy and ascertaining that she understood the consent form before searching the residence.

[3]Sgt. French stated that the cocaine in the bag was separated into two bags, one containing powder cocaine, and the other containing crack cocaine. The State presented evidence that the bag containing power cocaine weighed 43.5 grams, and the bag containing crack cocaine weighed 26.1 grams.

[4]Sgt. French also testified that one of the deputies found marijuana on top of the dresser in that bedroom, but that she was not the agent involved in that case, and she was not aware of any charges against Bester involving the marijuana.

5

girlfriend had gotten into an argument so he brought his clothes to her apartment; she stated that a white male with Bester brought a bag into the apartment and took it into the back and put it in the hamper in her bedroom. Dorothy testified that she also went out and helped Bester carry in clothes. She further testified that she went to the store and when she returned she found a number of people standing outside her apartment, asking her questions. According to Dorothy, when she opened her door, they followed her in, and were telling her to give them the bag because they saw him bring it in. Dorothy stated that she told the officers that her son brought in clothes and the white male brought in the bag, which she retrieved from her hamper and gave to the officers.[5] She further stated that at the time, her niece and her niece's boyfriend lived in the apartment, and that other visitors came to the apartment on occasion. Dorothy denied telling officers that her son had put a bag behind the stereo. Finally, Dorothy testified that the room where the bag containing the cocaine, the bag containing the assorted scales, baggies, pyrex container, and some of Bester's clothing, and the clothing on the floor, was her bedroom.

> "In deciding whether there is sufficient evidence to support the verdict of the jury and the judgment of the trial court, the evidence must be reviewed in the light most favorable to the prosecution. Cumbo v. State, 368 So. 2d 871 (Ala. Cr. App. 1978), cert. denied, 368 So. 2d 877 (Ala. 1979). Conflicting evidence presents a jury question not subject to review on appeal, provided the state's evidence establishes a prima facie case. Gunn v. State, 387 So. 2d 280 (Ala. Cr. App.), cert. denied, 387 So. 2d 283 (Ala. 1980). The trial court's denial of a motion for a judgment of acquittal must be reviewed by determining whether there existed legal evidence before the jury, at the time the motion was made, from which the jury by fair inference could have found the appellant guilty. Thomas v. State, 363 So. 2d 1020 (Ala. Cr.

---

[5] She conceded that she signed a consent-to-search form, but testified that the form was just thrust in front of her and she did not know what she was signing.

>>App. 1978). In applying this standard, the appellate court will determine only if legal evidence was presented from which the jury could have found the defendant guilty beyond a reasonable doubt. Willis v. State, 447 So. 2d 199 (Ala. Cr. App. 1983); Thomas v. State. When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for a judgment of acquittal by the trial court does not constitute error. Young v. State, 283 Ala. 676, 220 So. 2d 843 (1969); Willis v. State."

Breckenridge v. State, 628 So. 2d 1012, 1018 (Ala. Crim. App. 1993).

>>"'In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider the evidence in the light most favorable to the prosecution.' Faircloth v. State, 471 So. 2d 485, 489 (Ala. Cr. App. 1984), affirmed, Ex parte Faircloth, [471] So. 2d 493 (Ala. 1985).
>>
>>>"'...
>>>
>>>"'"The role of appellate courts is not to say what the facts are. Our role, ... is to judge whether the evidence is legally sufficient to allow submission of an issue for decision to the jury." Ex parte Bankston, 358 So. 2d 1040, 1042 (Ala. 1978). An appellate court may interfere with the jury's verdict only where it reaches "a clear conclusion that the finding and judgment are wrong." Kelly v. State, 273 Ala. 240, 244, 139 So. 2d 326 (1962). ... A verdict on conflicting evidence is conclusive on appeal. Roberson v. State, 162 Ala. 30, 50 So. 345 (1909). "[W]here there is ample evidence offered by the state to support a verdict, it should not be overturned even though the evidence

7

> offered by the defendant is in sharp conflict therewith and presents a substantial defense." Fuller v. State, 269 Ala. 312, 333, 113 So. 2d 153 (1959), cert. denied, Fuller v. Alabama, 361 U.S. 936, 80 S. Ct. 380, 4 L. Ed. 2d 358 (1960).' Granger [v. State], 473 So. 2d [1137,] 1139 [(Ala. Crim. App. 1985)]."

White v. State, 546 So. 2d 1014, 1017 (Ala. Crim. App. 1989). Also,

> "'[c]ircumstantial evidence is not inferior evidence, and it will be given the same weight as direct evidence, if it, along with the other evidence, is susceptible of a reasonable inference pointing unequivocally to the defendant's guilt. Ward v. State, 557 So. 2d 848 (Ala. Cr. App. 1990). In reviewing a conviction based in whole or in part on circumstantial evidence, the test to be applied is whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt; not whether such evidence excludes every reasonable hypothesis but guilt, but whether a jury might reasonably so conclude. Cumbo v. State, 368 So. 2d 871 (Ala. Cr. App. 1978), cert. denied, 368 So. 2d 877 (Ala. 1979).'

> "Ward, 610 So. 2d at 1191-92."

Lockhart v. State, 715 So. 2d 895, 899 (Ala. Crim. App. 1997).

> "'"'Whether circumstantial evidence tending to connect the defendant with the crime excludes, to a moral certainty, every other reasonable hypothesis than that of the defendant's guilt is a question for the jury and not the court.' [Cumbo v. State, 368 So. 2d 871 (Ala. Crim. App. 1978)]; Cannon v. State, 17 Ala. App. 82, 81 So. 860 (1919). Our function is not to be factfinders, however tempting that may

8

>sometimes be. We must not substitute ourselves for jurors, nor play their role in the criminal process. Jury verdicts should not be disturbed unless they are not based upon evidence sufficient to meet the test set out above."'"

Gissendanner v. State, 949 So. 2d 956, 973 (Ala. Crim. App. 2006), quoting Parker v. State, 589 So. 2d 773, 776 (Ala. Crim. App. 1991), quoting in turn Linzy v. State, 455 So. 2d 260, 262 (Ala. Crim. App. 1984).

Additionally, it is well settled that "[t]he weight and probative value to be given to the evidence, the credibility of the witnesses, the resolution of conflicting testimony, and inferences to be drawn from the evidence are for the jury." Smith v. State, 698 So. 2d 189, 214 (Ala. Crim. App. 1996), aff'd, 698 So. 2d 219 (Ala. 1997).

>"In Johnson v. State, 555 So. 2d 818, 819-20 (Ala. Cr. App. 1989), this court noted the difference in 'sufficiency' and 'weight' as follows:
>
>>"'The weight of the evidence is clearly a different matter from the sufficiency of the evidence. The sufficiency of the evidence concerns the question of whether, "viewing the evidence in the light most favorable to the prosecution, [a] rational factfinder could have found the defendant guilty beyond a reasonable doubt." Tibbs v. Florida, 457 U.S. 31, 37, 102 S. Ct. 2211, 2215, 72 L. Ed. 2d 652 (1982). Accord, Prantl v. State, 462 So. 2d 781, 784 (Ala. Cr. App. 1984).
>>
>>"'....
>>
>>"'In contrast, "[t]he 'weight of the evidence' refers to 'a determination [by] the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.'" Tibbs v. Florida, 457 U.S. at 37-38 [102 S. Ct. at

9

>    2216] (emphasis added). We have repeatedly held that it is not the province of this court to reweigh the evidence presented at trial. E.g., Franklin v. State, 405 So. 2d 963, 964 (Ala. Cr. App.), cert. denied, 405 So. 2d 966 (Ala. 1981); Crumpton v. State, 402 So. 2d 1081, 1085 (Ala. Cr. App.), cert. denied, 402 So. 2d 1088 (Ala. 1981); Nobis v. State, 401 So. 2d 191, 198 (Ala. Cr. App.), cert. denied, 401 So. 2d 204 (Ala. 1981). "'[T]he credibility of witnesses and the weight or probative force of testimony is for the jury to judge and determine.'" Harris v. State, 513 So. 2d 79, 81 (Ala. Cr. App. 1987) (quoting Byrd v. State, 24 Ala. App. 451, 136 So. 431 (1931)).[']
>
> "(Emphasis in original.) See Smith v. State, 604 So. 2d 434 (Ala. Cr. App. 1992); Pearson v. State, 601 So. 2d 1119 (Ala. Cr. App. 1992); Curry v. State, 601 So. 2d 157 (Ala. Cr. App. 1992)."

Zumbado v. State, 615 So. 2d 1223, 1240-41 (Ala. Crim. App. 1993).

Pursuant to § 13A-1-2(13), Ala. Code 1975, in order to possess one must "have physical possession or otherwise exercise dominion or control over tangible property." As Bester was not in actual possession of the cocaine or paraphernalia in this case, the question becomes whether he was in constructive possession. Regarding constructive possession, the Alabama Supreme Court has stated:

>    "'In order to establish constructive possession, the State must prove "(1) [a]ctual or potential physical control, (2) intention to exercise dominion and (3) external manifestations of intent and control."'

"Ex parte Fitkin, 781 So. 2d 182, 183 (Ala. 2000)(quoting Bright v. State, 673 So. 2d 851, 852 (Ala. Crim. App. 1995)). Where contraband is seized

inside a residence, "constructive possession can only arise 'where the prohibited material is found on the premises owned or controlled by the appellant.'" Crane v. State, 401 So. 2d 148, 149 (Ala. Crim. App. 1981)(quoting Williams v. State, 340 So. 2d 1144, 1145 (Ala. Crim. App. 1976)). '"When constructive possession is relied on, the prosecution must also prove beyond a reasonable doubt that the accused had knowledge of the presence of the controlled substances."' Ex parte Tiller, 796 So. 2d [310] at 312 [(Ala.2001)] (quoting Posey v. State, 736 So. 2d 656, 658 (Ala. Crim. App. 1997)).

"'While non-exclusive possession may raise a suspicion that all the occupants had knowledge of the contraband found, a mere suspicion is not enough. Some evidence that connects a defendant with the contraband is required. Generally, the circumstances that provide that connection include:

"'"(1) evidence that excludes all other possible possessors; (2) evidence of actual possession; (3) evidence that the defendant had substantial control over the particular place where the contraband was found; (4) admissions of the defendant that provide the necessary connection, which includes both verbal admissions and conduct that evidences a consciousness of guilt when the defendant is confronted with the possibility that illicit drugs will be found; (5) evidence that debris of the contraband was found on defendant's person or with his personal effects; (6) evidence which shows that the defendant, at the time of the arrest, had either used the contraband very shortly before, or was under its influence."'

"Grubbs v. State, 462 So. 2d 995, 997-98 (Ala. Crim. App. 1984) (quoting Temple v. State, 366 So. 2d 740, 743 (Ala. Crim. App. 1978))."

11

Ex parte J.C., 882 So. 2d 274, 277-78 (Ala. 2003). "Furthermore, knowledge is usually established by circumstantial evidence." Mitchell v. State, 713 So. 2d 981, 984 (Ala. Crim. App. 1997), citing Rowell v. State, 666 So. 2d 830 (Ala. 1995) and Ward v. State, 484 So. 2d 536 (Ala. Crim. App. 1985). Finally, constructive possession of a controlled substance may be established by circumstantial as well as direct evidence. Knight v. State, 622 So. 2d 426, 430 (Ala. Crim. App. 1992).

In the present case, the State presented evidence that the bag containing the cocaine appeared to be the same bag Bester was seen carrying into the apartment shortly before officers entered the apartment and found the bag. The State also presented evidence that Bester's mother informed officers that Bester had carried the bag containing cocaine into the apartment and placed it behind the stereo. Further, the State presented evidence that other items found in the room belonged to Bester and had just been brought into the room at the same time as the cocaine. In short, the State presented evidence that Bester was in actual possession of the cocaine shortly before it was discovered by authorities and, further, that debris and related paraphernalia were discovered with Bester's personal effects. Thus, given the evidence in this case, the jury could conclude that Bester was connected with the cocaine so that reasonable inferences could be drawn that he had knowledge of the existence of the cocaine, that he had control over the cocaine, and that he had the necessary intent to exercise dominion over the cocaine. This Court must consider the evidence in a light most favorable to the State and determine "whether the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt." Cumbo v. State, 368 So. 2d 871, 874 (Ala. Crim. App. 1978), cert. denied, 368 So. 2d 877 (Ala. 1979). Here, the evidence established a connection between Bester and the cocaine sufficient to meet the State's burden of presenting evidence of constructive possession, and the trial court properly submitted the case to the jury for it to resolve any conflicts in the evidence. The jury resolved any conflicts adversely to Bester, and this Court will not go behind that verdict.

12

II.

Bester next asserts that his counsel was ineffective at trial for a number of reasons.

Initially, we note that this claim was not preserved for appellate review. See Harris v. State, 563 So. 2d 9, 11 (Ala. Crim. App. 1989) ("'[T]he now settled rule [is] that claims of ineffective assistance of counsel may not be considered for the first time on direct appeal.'") (citation omitted).

Moreover, even if this claim had been preserved for appellate review, we note that Bester's argument does not comply with Rule 28(a)(10), Ala.R.App.P., which requires that an argument contain "the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." Further, "[r]ecitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed." Hamm v. State, 913 So. 2d 460, 486 (Ala. Crim. App. 2002). Although Bester does cite to Strickland v. Washington, 466 U.S. 668 (1984), for the general standard for evaluating an ineffective claim, it is well settled that "[a]uthority supporting only 'general propositions of law' does not constitute a sufficient argument for reversal." Beachcroft Properties, LLP v. City of Alabaster, 901 So. 2d 703, 708 (Ala. 2004), quoting Geisenhoff v. Geisenhoff, 693 So. 2d 489, 491 (Ala. Civ. App. 1997). Suffice it to say that Bester's brief did not meet the requirements of Rule 28(a)(10), Ala.R.App.P. Therefore, even if this issue had been preserved at trial, it is deemed waived on appeal.

III.

Finally, Bester argues that the trial court erred in sentencing him to life imprisonment without the possibility of parole because the record did not indicate that he was a violent offender. However, as with the ineffective claims, Bester's argument as to this issue does not meet the requirements of Rule 28(a)(10), Ala.R.App.P. He cites no legal authority for this claim, and only presents two general citations to the record in his one-page argument on this

13

issue. "When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research." <u>City of Birmingham v. Business Realty Inv. Co.</u>, 722 So. 2d 747, 752 (Ala. 1998). Therefore, this claim is deemed waived.

Based on the foregoing, the trial court's judgment is affirmed.

AFFIRMED.

Wise, P.J., and Welch and Windom, JJ., concur. Kellum, J., concurs in the result.

14