FILED
2013 Feb-12 AM 11:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

COURT OF CRIMINAL APPEALS NO. _____ CR-2011-0207 _____

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS
## FROM
**CIRCUIT COURT OF** ___ JEFFERSON ___ **COUNTY, ALABAMA**

CIRCUIT COURT NO ___ CC-2008-3771.60 ___

CIRCUIT JUDGE ___ CLYDE E JONES ___

Type of Conviction/ Order Appealed From: ___ RULE 32 PETITION ___

Sentence Imposed: ___ PETITION DENIED ___

Defendant Indigent:   ☑ YES   ☐ NO

## DURRELL BESTER
**NAME OF APPELLANT**

JOHN CHARLES ROBBINS      (205) 320-5270
(Appellant's Attorney)                              (Telephone No.)
2031 2ND AVENUE NORTH
(Address)
BIRMINGHAM            AL      35203
(City)                    (State)        (Zip Code)

### V.
## STATE OF ALABAMA
**NAME OF APPELLEE**

(State represented by Attorney General)

NOTE: If municipal appeal, indicate above, and enter

name and address of municipal attorney below.

df
_____

(For Court of Criminal Appeals Use Only)



```
ACRO370            ALABAMA JUDICIAL INFORMATION SYSTEM      CASE: CC 2008 003771.60
  PER: ROS                     CASE ACTION SUMMARY
  AGE:    1                    CIRCUIT   CRIMINAL                RUN DATE: 02/09/2012
IN THE CIRCUIT COURT OF JEFFERSON                                      JUDGE: CEJ

STATE  OF  ALABAMA            VS       BESTER DURRELL
                                       #216904  HOLMAN UNIT 3700
CASE: CC 2008 003771.60
                                       ATMORE, AL  36503 5099

DOB:                  SEX: M  RACE: B  HT: 6 01  WT: 220   HR: BLK EYES: BRO
SSN:              ALIAS NAMES: BESTER DURELL
CHARGE01: RULE 32-FELONY      CODE01: RULE  LIT: RULE 32-FELONY TYP: F #: 001
OFFENSE DATE:                         AGENCY/OFFICER:

DATE WAR/CAP ISS:                     DATE ARRESTED:
DATE    INDICTED:                     DATE     FILED: 12/09/2010
DATE    RELEASED:                     DATE   HEARING:
     BOND AMOUNT:           $.00      SURETIES:

DATE 1:          DESC:                TIME: 0000
DATE 2:          DESC:                TIME: 0000

TRACKING NOS: GJ 2008 001997 00  /  DC 2008 003379 00  /

DF/ATY: ROBBINS JOHN CHARLES       TYPE: R                        TYPE:
        2031 2ND AVE N

        BIRMINGHAM     AL 35203                        00000

PROSECUTOR: FALLS BRANDON KENT


OTH CSE: GJ200800199700 CHK/TICKET NO:              GRAND JURY:
COURT REPORTER:                 SID NO:    000259194
DEF STATUS: PRISON              DEMAND:                            OPER: ROS
   TRANS DATE    ACTIONS, JUDGEMENTS, AND NOTES                        OPE
| 12/08/2010 | AFTER CONSIDERATION OF SAME, DEFENDANT'S MOTION    | LYK |
| 12/08/2010 | TO PROCEED IN FORMA PAUPERIS IS HEREBY GRANTED     | LYK |
| 12/14/2010 | ASSIGNED TO: (CEJ)                        (AR01)   | LYK |
| 12/14/2010 | INITIAL STATUS SET TO: "P" - PRISON       (AR01)   | LYK |
| 12/14/2010 | CHARGE 01: RULE 32-FELONY/#CNTS: 001      (AR01)   | LYK |
| 12/14/2010 | FILED ON: 12/09/2010                      (AR01)   | LYK |
| 12/14/2010 | 12/09/2010: PETITION FOR RELIEF FROM CONVICTION OR | LYK |
| 12/14/2010 | SENTENCE (PURSUANT TO RULE 32, ALABAMA RULES OF    | LYK |
| 12/14/2010 | CRIMINAL PROCEDURE)                                | LYK |
| 12/14/2010 | CASE ACTION SUMMARY PRINTED               (AR01)   | LYK |
| 12/14/2010 | COPY OF RULE 32 PETITION PROVIDED TO DISTRICT ATTY | LYK |
| 12/14/2010 | FILE SENT TO COURTROOM TO RULE ON PETITION         | LYK |
| 12/15/2010 | STATE HAS 30 DAYS AND NO LATER THAN 1/17/11 TO     | CYC |
| 12/15/2010 | RESPOND                                            | CYC |
| 12/16/2010 | CASE SCANNED STATUS SET TO: N             (AR10)   | CYC |
| 12/16/2010 | SET FOR: REVIEW DOCKET/HEAR ON 01/29/2011 AT 0900A | CYC |
| 12/17/2010 | NOTIFIED ALL PARTIES OF ORDER DATED 12-15-10       | TAP |
```

```
ACRO370                ALABAMA JUDICIAL INFORMATION SYSTEM      CASE: CC 2008 003771.60
OPER: ROS                      CASE ACTION SUMMARY
PAGE:    2                     CIRCUIT   CRIMINAL              RUN DATE: 02/09/2012
============================================================================================
IN THE CIRCUIT COURT OF JEFFERSON                                           JUDGE: CEJ
```

| TATE   OF   ALABAMA | VS | BESTER DURRELL |
|---|---|---|

CASE: CC 2008 003771.60

#216904   HOLMAN UNIT 3700

ATMORE, AL   36503 5099

```
DOB:                    SEX: M  RACE: B  HT: 6 01  WT: 220   HR: BLK EYES: BRO
SSN:            ALIAS NAMES: BESTER DURELL
============================================================================================
```

| TRANS DATE | ACTIONS, JUDGEMENTS, AND NOTES | OPE |
|---|---|---|
| 01/03/2011 | MOTION TO DISMISS RULE 32 PETITION | SAW |
| 01/06/2011 | ATTORNEY FOR DEFENDANT: SCOFIELD DOUGLAS HARRY | CYC |
| 01/06/2011 | SET FOR: STATUS CALL ON 01/24/2011 AT 0900A (AR10) | CYC |
| 01/06/2011 | RETURN ORDER PRINTED ON: 01/06/2011          (AR08) | CYC |
| 01/24/2011 | DOUGLAS SCOFFIED, ATTY OF RECORD GIVEN A COPY | CMB |
| 01/24/2011 | OF RULE 32 PETITION AND MOTION TO DISMISS RULE 32 | CMB |
| 01/24/2011 | PETITION AS REQUESTED | CMB |
| 01/24/2011 | COPY REQUEST SCANNED, AND COPIES DONE | CMB |
| 01/24/2011 | SET FOR: EVIDENTIARY ON 02/18/2011 AT 0900A (AR10) | CYC |
| 01/27/2011 | ORDER OF HEARING SENT TO DA,DEFT,ATTY | BRW |
| 02/08/2011 | ORDER E-FILED - ORDER - ORDER E-FILED - RENDERED & | AJA |
| 02/08/2011 | ORDER - TRANSMITTAL | AJA |
| 02/08/2011 | SET FOR:  EVIDENTIARY ON 03/15/2011 AT 0900A(AR10) | CYC |
| 02/17/2011 | NOTICE OF APPEARANCE | SAW |
| 02/18/2011 | ATTORNEY FOR DEFENDANT: ROBBINS JOHN CHARLES(AR10) | SAW |
| 04/28/2011 | SET FOR:  EVIDENTIARY ON 05/18/2011 AT 0900A(AR10) | JUB |
| 05/03/2011 | NOTIFIED ALL PARTIES OF ORDER DATED 4-28-11 | TAP |
| 06/22/2011 | DISPOSITION JUDGE ID CHANGED FROM:      TO: CEJ | JUB |
| 06/22/2011 | CHARGE 01 DISPOSED BY: PET DENIED ON: 06/21/2011 | JUB |
| 06/22/2011 | CHARGE 01: RULE 32-FELONY/#CNTS: 001      (AR10) | JUB |
| 06/22/2011 | SENTENCE RECORD CREATED FOR CHARGE: 01     (AR10) | JUB |
| 06/24/2011 | SET FOR: RULE 32-FELONY ON 06/17/2011 AT 0900A | JUB |
| 06/24/2011 | ORDER E-DOCKETED - ORDER - RULE 32 - PRONOUNCED: 6 | AJA |
| 07/13/2011 | D001-OTHER - NOTICE OF APPEAL FILED. | AJA |
| 07/13/2011 | MOTION - TRANSMITTAL | AJA |
| 07/13/2011 | WRITTEN NOTICE OF APPEAL E-FILED ON 7/13/11 | LAW |
| 07/14/2011 | D001-OTHER /DOCKETED | AJA |
| 07/14/2011 | ORDER GENERATED FOR OTHER - NOTICE OF APPEAL - REN | AJA |
| 07/14/2011 | ORDER - TRANSMITTAL | AJA |
| 07/15/2011 | DEFT HAS 14 DAYS TO FILE AFFIDAVIT OF INDIGENCY | JUB |
| 07/28/2011 | D001-OTHER - AFFIDAVIT FILED ON 7/27/2011. | AJA |

```
ACRO370                    ALABAMA JUDICIAL INFORMATION SYSTEM          CASE: CC 2008 003771.60
OPER: ROS                      CASE ACTION SUMMARY
PAGE:    3                    CIRCUIT   CRIMINAL                        RUN DATE: 02/09/2012
=======================================================================================================
IN THE CIRCUIT COURT OF JEFFERSON                                                          JUDGE: CEJ

  TATE   OF   ALABAMA                       VS      BESTER DURRELL
                                                    #216904   HOLMAN UNIT 3700
  CASE: CC-2008 003771.60
                                                    ATMORE, AL  36503 5099

  DOB:                        SEX: M  RACE: B  HT: 6 01  WT: 220    HR: BLK EYES: BRO
  SSN:             ALIAS NAMES: BESTER DURELL
=======================================================================================================
```

| | | |
|---|---|---|
| 07/28/2011 | ATTORNEY FOR DEFENDANT: PRO SE                        (AR10) | AJA |
| 08/02/2011 | ORDER GENERATED FOR OTHER - AFFIDAVIT - RENDERED &           | AJA |
| 08/02/2011 | ORDER - TRANSMITTAL                                          | AJA |
| 08/02/2011 | E-ORDER DATED 8/2/11 GRANTING DEFT'S REQUEST TO             | LAW |
| 08/02/2011 | PROCEED IN FORMA PAUPERIS.  STATE TO RESPOND                | LAW |
| 08/02/2011 | TO SAID PETITION W/IN 30 DAYS& NO LATER THAN                | LAW |
| 08/02/2011 | 9/12/11                                                     | LAW |
| 11/02/2011 | CASE APPEALED ON: 07/13/2011                          (AR10) | LAW |
| 11/02/2011 | APPEAL "TO" TYPE: "R"                                 (AR10) | LAW |
| 11/02/2011 | APPEAL DATE CHANGED FROM: 00/00/0000                  (AR11) | LAW |
| 11/02/2011 | APPEAL TYPE CHANGED FROM:                             (AR11) | LAW |
| 11/02/2011 | ATTY 1 TYPE CHANGED FROM:                             (AR11) | LAW |
| 11/02/2011 | ATTW TYPE CHANGED FROM:                               (AR11) | LAW |
| 11/02/2011 | PROSECUTOR CHANGED FROM:                              (AR11) | LAW |
| 11/02/2011 | IRA TYPE CHANGED FROM:                                (AR11) | LAW |
| 11/02/2011 | ATTY 1 CHANGED FROM:                                  (AR11) | LAW |
| 11/02/2011 | INDTRL TYPE CHANGED FROM:                             (AR11) | LAW |
| 11/02/2011 | WRITTEN NOTICE OF APPEAL MAILED TO THE COURT OF             | LAW |
| 11/02/2011 | CRIMINAL APPEALS, ATTY GENERAL, DA & DEFTS ATTY            | LAW |
| 11/02/2011 | COURT REPORTER 1 CHANGED FROM:                        (AR11) | LAW |
| 11/07/2011 | ORDER FROM CT OF CRIMINAL APPEALS RE: CT REPORTER'         | ROS |
| 11/07/2011 | TIME FOR FILING THE TRANSCRIPT IS EXTENDED FOR             | ROS |
| 11/07/2011 | 28 DAYS FROM DATE OF ORDER                                  | ROS |
| 11/07/2011 | IMPORTANT NOTICE FROM CT OF CRIMINAL APPEALS RE:           | ROS |
| 11/07/2011 | APPELLATE COUNSEL                                           | ROS |
| 11/07/2011 | DEFICIENCY NOTICE/REPORTER'S TRANSCRIPT ORDER              | ROS |
| 12/13/2011 | DOCKETING STATEMENT                                         | ROS |
| 12/13/2011 | REPORTER'S TRANSCRIPT ORDER                                 | ROS |
| 12/14/2011 | DOCKETING STATEMENT MAILED TO THE CT OF CRIMINAL          | ROS |
| 12/14/2011 | APPEALS, ATTY GENERAL, DA, CT REPORTER AND                 | ROS |
| 12/14/2011 | DEFT'S ATTY                                                 | ROS |
| 01/04/2012 | LETTER TO CT REPORTER FROM THE CT OF CRIMINAL             | ROS |

Case 2:12-cv-03974-RDP-TMP   Document 9-12   Filed 02/12/13   Page 5 of 175

```
ACRO370              ALABAMA JUDICIAL INFORMATION SYSTEM     CASE: CC 2008 003771.60
OPER: ROS                     CASE ACTION SUMMARY
PAGE:    4                  CIRCUIT    CRIMINAL                 RUN DATE: 02/09/2012
===================================================================================
IN THE CIRCUIT COURT OF JEFFERSON                                       JUDGE: CEJ
```

| TATE   OF   ALABAMA | VS | BESTER DURRELL |
|---|---|---|

#216904   HOLMAN UNIT 3700

CASE: CC 2008 003771.60

ATMORE, AL   36503 5099

DOB:                      SEX: M  RACE: B  HT: 6 01  WT: 220   HR: BLK EYES: BRO
SSN:                  ALIAS NAMES: BESTER DURELL

| 01/04/2012 | APPEALS RE: TRANSCRIPT TO BE COMPLETED BY | ROS |
| 01/04/2012 | 01/25/12 | ROS |
| 02/09/2012 | CASE ACTION SUMMARY PRINTED            (AR08) | ROS |
| 02/09/2012 | CASE ACTION SUMMARY PRINTED            (AR08) | ROS |



```
ACRO372                ALABAMA JUDICIAL INFORMATION SYSTEM     CASE: CC 2008 003771.60
OPER: LYK              CASE ACTION SUMMARY
PAGE:    1             CIRCUIT   CRIMINAL                  RUN DATE: 12/14/2010
================================================================================
IN THE CIRCUIT COURT OF JEFFERSON COUNTY                              JUDGE: CEJ

STATE  OF  ALABAMA                    VS    BESTER DURRELL
                                            #216904  HOLMAN UNIT 3700
 CASE: CC 2008 003771.60
                                            ATMORE, AL  36503 5099
DOB:                   SEX: M  RACE: B  HT: 6 01  WT: 220   HR: BLK EYES: BRO
SSN:              ALIAS NAMES: BESTER DURELL
================================================================================
CHARGE01: RULE 32-FELONY       CODE01: RULE  LIT: RULE 32-FELONY TYP: F #: 001
OFFENSE DATE:                          AGENCY/OFFICER:

DATE WAR/CAP ISS:                      DATE ARRESTED:
DATE     INDICTED:                     DATE      FILED: 12/09/2010
DATE     RELEASED:                     DATE   HEARING:
BOND       AMOUNT:          $.00         SURETIES:

DATE 1:            DESC:              TIME: 0000
DATE 2:            DESC:              TIME: 0000

TRACKING NOS: GJ 2008 001997 00  /  DC 2008 003379 00  /

   DEF/ATY:                       TYPE:                         TYPE:

                    00000                          00000

PROSECUTOR: FALLS BRANDON KENT

================================================================================
OTH CSE: GJ200800199700 CHK/TICKET NO:                   GRAND JURY:
COURT REPORTER:              SID NO:       000259194
DEF STATUS: PRISON           DEMAND:                            OPER: LYK
DATE     ACTIONS,  JUDGEMENTS,  AND  NOTES
================================================================================
```

ACRO369   A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R
CASE ACTION SUMMARY
CONTINUATION

CASE: CC 2008 003771.60
JUDGE ID:  CEJ

STATE  OF  ALABAMA                    VS      BESTER DURRELL

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|---|---|

## JUDGES NOTES AND ORDERS

12-8-10    [handwritten notes, illegible] dfe's Motion to Proceed In Forma Pauperis is hereby Granted

12/16/10   [handwritten notes, illegible] ... Monday ... 17, 2010 ... No Longer Det. ...
SCANNED
JAN 4 1 2010

1/4/11    Attorney Doug ___field is hereby appointed to represent defendant ___ in. Case set on January 24 2011 @ 9am for a status conference. Notify parties.
SCANNED JAN 13 2011

1/24/11   Case set on February 16, 2011 @ ___m for ___ hearing. Notify parties.
SCANNED  JAN-2-7 2011



### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### BIRMINGHAM DIVISION

STATE OF ALABAMA              )
                             )
        V.                    )          Case No.:  CC-2008-003771.60
                             )
BESTER DURRELL.               )

### ORDER

This case is hereby continued to March 15, 2011 at 9am for Evidentiary Hearing.

DONE this 8th day of February, 2011.

/s CLYDE E JONES

CIRCUIT JUDGE

3/11/2011 8:40 AM
CC-2008-003771.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### BIRMINGHAM DIVISION

STATE OF ALABAMA            )
                            )
          V.                )          Case No.:  CC-2008-003771.00
                            )
BESTER DURRELL              )

### ORDER

This case is continued to Friday, March 25, 2011 at 9am for an Evidentiary Hearing.

DONE this 11th day of March, 2011.

/s/ CLYDE E JONES

CIRCUIT JUDGE

3/24/2011 9:02 AM
CC-2008-003771.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**
**BIRMINGHAM DIVISION**

STATE OF ALABAMA                    )
                                    )
        V.                          )        **Case No.:**  CC-2008-003771.00
                                    )
BESTER DURRELL                      )

**ORDER**

This case is hereby continued to Thursday, April 28th, 2011 at 9am for an Evidentiary Hearing.

DONE this 24th day of March, 2011.

                        /s/ CLYDE E JONES
                        _____

                        CIRCUIT JUDGE



6/21/2011 3:58 PM
CC-2008-003771.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
## BIRMINGHAM DIVISION

STATE OF ALABAMA )
)
V. ) Case No.: CC-2008-003771.00
)
BESTER DURRELL )
Defendant. )

## ORDER

This matter came on to be heard pursuant to the Rule 32 Petition filed by the Defendant on December 9th, 2010.

The first issue regarding the failure to administer the oath to the jury, I find that the record is clear that the Court instructed the jury as to the oath when they appeared here in open court.

Additionally, in Jefferson County, the Court Administrator gives the entire jury pool the Oath of Office when they come in on Monday mornings at 9 a.m.

The Court finds that the second issue regarding failure to request a mistrial regarding the alternate juror making some statements is without merit. There was no harm done, nor was the Defendant prejudiced in any manner, due to the fact that that juror did not actually sit on the jury.

The third issue regarding defense counsel's failure to object to the Court allowing the jurors to ask questions is without merit. That issue has gone up to the Appellate Courts in the State of Alabama on several occasions. And the Appellate Courts have ruled that I do have the authority to allow jurors to ask questions in criminal cases. So that issue is without merit.

The fourth issue involves the Defendant's assertion that trial counsel denied him his right to testify. The Court heard the Defendant's testimony that he requested his attorney Mr. Benson to allow him to testify and they both agreed that there was some discussion about it.

They both agreed that Mr. Benson discussed the fact that if he testified on the witness stand, that the State would cross-examine him as to his four prior felony convictions. Which would basically make him look like a habitual criminal to the jury. And after that discussion, Mr. Benson stated, and I believe him, that the Defendant said that, well, I'm going to take your advice and not testify. So the Court finds that the fourth issue is without merit.

There is another similar issue raised, the fifth issue, in that it is alleged that trial counsel failed to request or object to the Court not giving a jury instruction on the Petitioner's failure to testify. There was no request made to the Court to give the instruction regarding a Defendant who does not testify during his trial and therefore the Court did not have an opportunity to rule on that issue. Therefore, the Court finds

that the fifth issue is without merit also.

The sixth issue is in regard to a claim of ineffective assistance of trial counsel. On the day of trial, as I understand it, the Defendant indicated that he was desirous of hiring other counsel. This Court has never allowed defendants to put off trials on the day of trial, based upon that request alone.

Additionally, there was nothing presented to the Court that was sufficient, in the Court's mind, to continue the case to another date. The Court also felt that said request was simply a dilatory action and designed to simply put off the trial of the case. Accordingly, the sixth issue also has no merit.

The seventh issue relates to the trial Court's denial to the Petitioner's Motion To Suppress. The Court notes that that issue was not raised on appeal, and the Court made the correct decision when it heard said motion. And I think there was probably a pretrial motion to suppress that was made in that case.

Furthermore the Court has reviewed the facts of this trafficking case and deems that the denial of the motion to suppress was the proper decision in this case, according to that issue, and relief is hereby denied on that ground.

The eighth and last issue relates to the proper sentence for this Defendant. The Court does not believe that, at this late date, it has jurisdiction to amend his sentence of life without parole to life, based upon the time that has passed since the original sentence.

Therefore, it is the judgment of the Court that all of the Petitioner's grounds for relief are hereby denied and the Petitioner is not entitled to relief pursuant to Rule 32 Ala. R. Crim. P.


DONE this 21st day of June, 2011.

                              /s/ CLYDE E JONES
                              CIRCUIT JUDGE




ACR0369   A L A B A M A   J U D I C I A L   I N F O R M A T I O N   C E N T E R

CASE ACTION SUMMARY
CONTINUATION

CASE: CC 2008 003771.60
JUDGE ID:   CEJ

STATE OF ALABAMA                    VS   BESTER DURRELL

| DATE | ACTION, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 4/26/11 | Dt defense counsels request, case continued to May 18th 2011 @ 9:00m for m Evidentiary Hearing. |
|  | SCANNE   MAY 03 2011   [signature] |
| 5/18/11 | By agreement of parties, case continued to June 13th 2011 @ 9:00 m for m evidentiary hearing. Parties notified. |
|  | [signature] Clyde E Jones Jr |
| 6-13-11 | Case is cont to 6-17-11 et 9:00AM for Rule 32 Hrg SCANN MAY 19 2011 (both parties agree and have been notified) |
|  | [signature] Clyde E Jones |
|  | [signature] |

7/2/2011 1:24 PM
CC-2008-003771.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### BIRMINGHAM DIVISION

STATE OF ALABAMA                    )
                                    )
V.                                  ) Case No.: CC-2008-003771.00
                                    )
BESTER DURRELL                      )
Defendant.                          )

### ORDER

MOTION TO DISMISS filed by STATE OF ALABAMA is hereby GRANTED.

**DONE this 2nd day of July, 2011.**

**/s/ CLYDE E JONES**
**CIRCUIT JUDGE**

7/5/2011 1:47 PM
CC-2008-003771.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
ANNE-MARIE ADAMS, CLERK

**IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA**
**BIRMINGHAM DIVISION**

STATE OF ALABAMA )
)
V. ) Case No.: CC-2008-003771.00
)
BESTER DURRELL )
Defendant. )

**ORDER**

The order dated July 2nd, 2011 is hereby set aside. See order dated June 21st, 2011.

**DONE this 5th day of July, 2011.**

/s/ **CLYDE E JONES**
**CIRCUIT JUDGE**



## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### BIRMINGHAM DIVISION

STATE OF ALABAMA )
)
V. ) Case No.: CC-2008-003771.60
)
BESTER DURRELL )
Defendant. )

### ORDER

The Defendant is hereby given fourteen days to file an affidavit of indigency as it relates to his request to proceed in forma pauperis.

**DONE this 14th day of July, 2011.**

/s/ **CLYDE E JONES**
**CIRCUIT JUDGE**



### IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### BIRMINGHAM DIVISION

STATE OF ALABAMA                )
                                )
V.                              )    Case No.: CC-2008-003771.60
                                )
BESTER DURRELL                  )
Defendant.                      )

## ORDER

The Defendant's request to proceed in forma pauperis is hereby granted. The State is to respond to said petition within thirty (30) days of today's date and no later than September 1st, 2011. This case is hereby set for review on September 12th, 2011.

**DONE this 2nd day of August, 2011.**

                          **/s/ CLYDE E JONES**
                          **CIRCUIT JUDGE**

ACR371

ALABAMA JUDICIAL DATA CENTER
IN THE CIRCUIT COURT OF JEFFERSON COUNTY
NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEALS
BY THE TRIAL COURT CLERK

JUDGE: CLYDE E JONES

APPEAL DATE: 07/13/2011 | STATE OF ALABAMA VS BESTER DURRELL

INDIGENCY STATUS:
GRANTED INDIGENCY STATUS AT TRIAL COURT:      __X__ YES   _____ NO
APP. TRIAL COUNSEL PERMITTED TO W/D ON APPEAL: _____ YES   __X__ NO
INDIGENT STATUS REVOKED ON APPEAL:            _____ YES   __X__ NO
INDIGENT STATUS GRANTED ON APPEAL:            __X__ YES   _____ NO

DEATH PENALTY: NO

APPEAL TYPE: RULE 32 PETITION

THIS APPEAL IS FROM AN ORDER DENYING A PETITION (I.E., RULE 32 PETITION,
WRIT OF HABEAS CORPUS, ETC) OR FROM ANY OTHER ISSUED BY THE TRIAL JUDGE.

CC/CASE NUMBER: 01/CC 2008 003771.60

ORDER ENTERED(DATE): 06212011 PETITION: __DISMISSED  X DENIED  __GRANTED

| POST-JUDGMENT MOTIONS FILED: | DT FILED | DT DENIED | CON BY AGREE |
|---|---|---|---|
| ____ MOTION FOR NEW TRIAL | | | |
| ____ MOTION FOR JUDG. OF ACQUIT | | | |
| ____ MOTION TO W/D GUILTY PLEA | | | |
| ____ MOTION FOR ATTY TO W/DRAW | | | |
| ____ OTHER | | | |

COURT REPORTER(S):
ADDRESS:                    MARTIN ALICIA
                           RM 706-JUDGE CLYDE JONES
                           BIRMINGHAM, AL  35203

APPELLATE COUNSEL #1:
ADDRESS:                    ROBBINS JOHN CHARLES
                           2031 2ND AVE N

                           BIRMINGHAM, AL  35203 3703
                           205-320-6270
EMAIL ADDRESS:             JCROBBINS59@YAHOO.COM

APPELLATE COUNSEL #2:
ADDRESS:

PHONE NUMBER:
EMAIL ADDRESS:

APPELLANT (PRO SE):
ADDRESS:                    BESTER DURRELL
                           #216904  HOLMAN UNIT 3700
                           ATMORE, AL  36503 5099
AIS #:                     000216904

APPELLEE (IF CITY APPEAL):
ADDRESS:

I CERTIFY THAT THE INFORMATION PROVIDED                OPERATOR: LAW
ABOVE IS ACCURATE TO THE BEST OF MY          PREPARED: 11/02/2011
KNOWLEDGE AND I HAVE SERVED A COPY OF
THIS NOTICE OF APPEAL ON ALL PARTIES TO
THIS ACTION ON THIS ____ DAY OF _____, 11
                                             CIRCUIT COURT CLERK



## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF ALABAMA, | ) | |
| Plaintiff, | ) | CASE NUMBER: |
| v. | ) | CC 2008-3771.6 |
| DURELL BESTER, | ) | |
| Defendant. | ) | |

### NOTICE OF APPEAL and LEAVE OF COURT TO PROCEED ON THIS APPEAL ON AN *IN FORMA PAUPERIS BASIS*

COMES NOW the Defendant in the above styled proceeding, DURELL

BESTER, by and through his undersigned counsel and hereby files this written notice of

his intent to appeal the judgement entered by the Court on June 17, 2011 to the Alabama

Court of Criminal Appeals. The Defendant hereby requests leave of court to proceed

with this appeal on an *in forma pauperis* basis. The Defendant is currently incarcerated

serving a life sentence without the possibility of parole and his family is has limited

financial resources.

/s/ John C. Robbins
John C. Robbins                    ROB060
Counsel for the Defendant

OF COUNSEL:
ROBBINS LAW FIRM
2031 2nd Avenue North
Birmingham, AL 35203
(205) 320-5270
(205) 879-1247 *facsimile*

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Notice of Appearance upon the following via first class United States Mail, properly addressed and postage thereon prepaid this the 13th day of July, 2011.

Brandon Falls
District Attorney
Criminal Justice Center
801 N. Richard Arrington, Jr. Blvd.
Birmingham, AL 35203

/s/ John C. Robbins
OF COUNSEL

# PETITION FOR RELIEF FROM
# CONVICTION OR SENTENCE

### (Pursuant to Rule 32,
### Alabama Rules of Criminal Procedure)

FILED IN OFFICE
CIRCUIT CRIMINAL

DEC 09 2010

ANNE-MARIE ADAMS
Clerk

**Case Number**

| CC | 08 | 3771 |
| CC | 08 | 3772 |
| ID | YR | NUMBER |

IN THE _____Circuit_____ COURT OF __Jefferson__ ALABAMA

__Durrell Bester__ vs. __State of Alabama__

Petitioner (Full Name)                          Respondent

[indicate either the "State" or,
if filed in municipal court, the
name of the "Municipality"]

Prison Number __216904__ Place of Confinement __Holman__

County of conviction __Jefferson County Circuit Court__

### NOTICE: BEFORE COMPLETING THIS FORM, READ CAREFULLY THE ACCOMPANYING INSTRUCTIONS.

1. Name and location (city and county) of court which entered the judgment of conviction or sentence under attack __Jefferson County__

2. Date of judgment of conviction __May 26, 2009__

3. Length of sentence __Life Without Parole__

4. Nature of offense involved (all counts) __Trafficking In Cocaine (1 Count) Possession of Drug Paraphernalia (1 Count) And Failure To Fix Tax Stamp (1 Count)__

5. What was your plea? (Check one)
   (a) Guilty _____
   (b) Not guilty _X_
   (c) Not guilty by reason of mental disease or defect _____
   (d) Not guilty and not guilty by reason of mental disease or defect _____

6. Kind of trial: (Check one)

(a) Jury __X__                    (b) Judge only _____

7. Did you testify at the trial?

Yes _____                        No __X__

8. Did you appeal from the judgment of conviction?

Yes __X__                          No _____

9. If you did appeal, answer the following:

(a) As to the state court to which you first appealed, give the following information:

(1) Name of court __Alabama court of criminal Appeals__

(2) Result __AFFirmed__

(3) Date of result __4 - 16 - 2010__

(b) If you appealed to any other court, then as to the second court to which you appealed, give the following information:

(1) Name of court __Alabama Supreme Court__

(2) Result __AFFirmed__

(3) Date of result _____

(c) If you appealed to any other court, then as to the third court to which you appealed, give the following information:

(1) Name of court __N/A__

(2) Result _____

(3) Date of result _____

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any court, state or federal?

 Yes _____         No _X_

11. If your answer to Question 10 was "yes", then give the following information in regard to the first such petition, application, or motion you filed:

(a)  (1)  Name of court _____ N / A _____

     (2)  Nature of proceeding _____

     (3)  Grounds raised _____

          _____

          _____

          _____

          _____

          (attach additional sheets if necessary)

     (4)  Did you receive an evidentiary hearing on your petition, application, or motion?

          Yes _____              No _____

     (5)  Result _____

     (6)  Date of result _____

(b)  As to any second petition, application, or motion, give the same information:

     (1)  Name of court _____ N / A _____

     (2)  Nature of proceeding _____

     (3)  Grounds raised _____

          _____

          _____

          _____

          (attach additional sheets if necessary)

     (4)  Did you receive an evidentiary hearing on your petition, application, or motion?

          Yes _____              No _____

     (5)  Result _____

     (6)  Date of result _____

(c)  As to any third petition, application, or motion, give the same information (attach additional sheets giving the same information for any subsequent petitions, applications, or motions):

     (1)  Name of court _____ N / A _____

3

(2) Nature of proceeding _____

(3) Grounds raised _____

_____

_____

_____

_____

(attach additional sheets if necessary)

(4) Did you receive an evidentiary hearing on your petition, application, or motion?

Yes _____          No _____

(5) Result _____

(6) Date of result _____

(d) Did you appeal to any appellate court the result of the action taken on any petition, application, or motion?

(1) First petition, etc.          Yes _____          No _____

(2) Second petition, etc.          Yes _____          No _____

(2) Third petition, etc.          Yes _____          No _____

**ATTACH ADDITIONAL SHEETS GIVING THE SAME INFORMATION
FOR ANY SUBSEQUENT PETITIONS, APPLICATIONS, OR MOTIONS.**

(e) If you did not appeal when you lost on any petition, application, or motion, explain briefly why you did not:

_____ N / A _____

_____

_____

12. Specify every ground on which you claim that you are being held unlawfully, by placing a check mark on the appropriate line(s) below and providing the required information. Include all facts. If necessary, you may attach pages stating additional grounds and the facts supporting them.

# GROUNDS OF PETITION

Listed below are the possible grounds for relief under Rule 32. Check the ground(s) that apply in your case, and follow the instruction under the ground(s):

A. The Constitution of the United States or of the State of Alabama requires a new trial, a new sentence proceeding, or other relief.

For your information, the following is a list of the most frequently raised claims of constitutional violation:.

4

(1) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(2) Conviction obtained by use of coerced confession.

(3) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(4) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(5) Conviction obtained by a violation of the privilege against self-incrimination.

(6) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(7) Conviction obtained by a violation of the protection against double jeopardy.

(8) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(9) Denial of effective assistance of counsel.

This list is not a complete listing of all possible constitutional violations.

If you checked this ground of relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each constitutional violation that you claim, whether or not it is one of the nine listed above, and include under it each and every fact you feel supports this claim. Be specific and give details.

____ B. **The court was without jurisdiction to render the judgment or to impose the sentence.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

____ C. **The sentence imposed exceeds the maximum authorized by law, or is otherwise not authorized by law.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

____ D. **Petitioner is being held in custody after his sentence has expired.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

____ E. **Newly discovered material facts exist which require that the conviction or sentence be vacated by the court, because:**

**The facts relied upon were not known by petitioner or petitioner's counsel at the time of trial or sentencing or in time to file a post-trial motion pursuant to rule 24, or in time to be included in any previous collateral proceeding, and could not have been discovered by any of those times through the exercise of reasonable diligence; and**

**The facts are not merely cumulative to other facts that were known; and**

5

The facts do not merely amt to impeachment evidence; and

If the facts had been known at the time of trial or sentencing, the result would probably have been different; and

The facts establish that petitioner is innocent of the crime for which he was convicted or should not have received the sentence that he did.

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

___ F.  **The petitioner failed to appeal within the prescribed time and that failure was without fault on petitioner's part.**

If you checked this ground or relief, attach a separate sheet of paper with this ground listed at the top of the page. On this separate sheet of paper list each and every fact you feel supports this claim. Be specific and give details.

13. **IMPORTANT NOTICE REGARDING ADDITIONAL PETITIONS RULE 32.2(b) LIMITS YOU TO ONLY ONE PETITION IN MOST CIRCUMSTANCES. IT PROVIDES:**

"**Successive Petitions.** The court shall not grant relief on a second or successive petition on the same or similar grounds on behalf of the same petitioner. A second or successive petition on different grounds shall be denied unless the petitioner shows both that good cause exist why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and that failure to entertain the petition will result in a miscarriage of justice."

A. Other than an appeal to the Alabama Court of Criminal Appeals or the Alabama Supreme Court, have you filed in state court any petition attacking this conviction or sentence?

Yes _____          No ✗

B. If you checked "Yes," give the following information as to earlier petition attacking this conviction or sentence:

(a)  Name of court _____ N|A _____

(b)  Result _____

(c)  Date of result _____
     (attach additional sheets if necessary)

C. If you checked the "Yes" line in 13A, above, and this petition contains a different ground or grounds of relief from an earlier petition or petitions you filed, attach a separate sheet or sheets labeled: "EXPLANATION FOR NEW GROUND(S) OF RELIEF."

On the separate sheet(s) explain why "good cause exists why the new ground or grounds were not known or could not have been ascertained through reasonable diligence when the first petition was heard, and [why the] failure to entertain [this] petition will result in a miscarriage of justice."

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?

Yes _____          No ✗

15. Give the name and address, if known, of each attorney who represented you at the following stages of the case that resulted in the judgment under attack:

(a) At preliminary hearing _____

(b) At arraignment and plea ___William___ ___Benson___
___413- B Main St. Trussvile, Al. 35173___

(c) At trial _____William Benson___

(d) At sentencing _____William Benson___

(e) On appeal ___Martin Weinberg___
___P.O. Box 154 Shannon, Al. 35142___

(f) In any post-conviction proceeding _____N/A___

(g) On appeal from adverse ruling in a post-conviction proceeding ___N/A___

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at the same time?

Yes __X__          No _____

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes _____          No __X__

(a) If so, give name and location of court which imposed sentence to be served in the future: ___N/A___

(b) And give date and length of sentence to be served in the future: ___N/A___

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes _____          No __X__

18. What date is this petition being mailed?

_____

Wherefore, petitioner prays that the court grant petitioner relief to which he may be entitled in this proceeding.

7

# PETITIONER'S VERIFICATION UNDER OATH
# SUBJECT TO PENALTY FOR PERJURY

I swear (or affirm) under penalty of perjury that the foregoing is true and correct.

Executed on _____ 9/22/10 _____.
(Date)

_____
Signature of Petitioner

SWORN TO AND SUBSCRIBED before me this the _22_ day of _September_ _2010_

_____
Notary Public

MY COMMISSION EXPIRES JULY 17, 2012

## OR *

## ATTORNEY'S VERIFICATION UNDER OATH
## SUBJECT TO PENALTY FOR PERJURY

I Swear (or affirm) under penalty of perjury that, upon information and belief, the foregoing is true

and correct. Executed on _____.
(Date)

_____
Signature of Petitioner's Attorney

SWORN TO AND SUBSCRIBED before me this the _____ day of _____, _____.

_____
Notary Public

Name and address of attorney representing petitioner
in this proceeding (if any)

_____

_____

_____

_____

* If petitioner is represented by counsel, Rule 32.6(a) permits either petitioner or counsel to verify the
petition.

IN THE CIRCUIT COURT OF JEFFERSON COUNTY ALABAMA

DURRELL BESTER                    *

    Petitioner,    *

VS.                               *    Case No. CC 08-3771-3772

STATE OF ALABAMA                  *

    Respondent.    *

## PETITION FOR RELIEF FROM CONVICTIONS
## AND SENTENCES PURSUANT TO RULE 32 ALA. CRIM. P.

Come now the Petitioner, Durrell Bester, and
hereby pursuant to Rule 32 Ala.R.Crim.P., Petitions
this Honorable Court for relief from convictions
and sentences, and submits the following in support
hereof:

### I.  Procedural History:

1. Petitioner, Durrell Bester, on April 8, 2009,
was adjudged guilty on one count of Trafficking in
Cocaine:  one count of Failure to Affix Tax Stamp
and one count of Possession of Drug Paraphernalia.

2.  On May 26, 2009, Bester was sentenced, as
a Habitual Offender to Life Without Parole for the
Trafficking conviction; Fifteen years for the Stamp
conviction and twelve months for the paraphernalia

3. On Direct Appeal, Bester raised three issues for review; 1) the State evidence was insufficient to establish that he constructively possessed the Cocaine entitling him to a judgment of equittal; 2) Trial Counsel was ineffective and 3) that his sentence of Life Without Parole was illegally imposed.

The Court of Criminal Appeals affirmed the convictions in a memorandum opinion on April 16, 2010.

4. There being no other Appeals, Application or Motion pending in regards to the above cases, the instant petition for Relief from Convictions and Sentence, pursuant to Rule 32 Ala.R.Crim.P., follows:

## II. GROUNDS OF PETITION:

A. DENIAL OF SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSI-TANCE OF COUNSEL AT TRIAL.

B. DENIAL OF SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSI-TANCE OF COUNSEL ON DIRECT APPEAL.

## III SUPPORTING FACTS:

(A1). Petitioner, Durrell Bester, was denied his Sixth Amendment Right to effective assistance of counsel at trial, when counsel fail to object to the Oath not being administered to the Petit Jury.

Petitioner avers that the evidence of record demonstrate that no Oath was administered to his Petit Jury as required

See §12-16-170 Ala. Code 1975.

On the morning of April 7, 2009, the record reflects, though the proceeding was not completely transcribed, that the Attorneys selected the Petit Jury and after selections, the Court heard evidence regarding a juror that heard spectators talk about the case, then the Court proceeded to instruct the Petit Jury as to the course of proceeding. (R. 24-45) Further, the record reflects that Counsel's gave opening arguments and the State called its first witness. (R.45) There is nothing in the record reflecting that the Petit Jury was sworn or that defense Counsel objected to the Court not swearing in the Petit Jury.

Petitioner contends that in Alabama it is well settled that the failure to administer the Oath to the Petit Jury renders the jury's verdict a nullity... and if the jury or any member thereof was not sworn, it was not the verdict of a jury. Jackson vs. State, 12 So.3d 720 Ala.Crim.App. (2007); Ex parte deramus, 721 So.2d 242 (Ala.1998).

Bester contends that Counsel unprofessional error was prejudicial to his substantive fundamental rughts.

(A2). Petitioner was denied his Sixth Amendment Right to effective assistance of counsel when counsel fail to request a mistrial, when a juror disclosed that she heard spectators talking about the case in the courtroom.

The record reflects that immediately after the striking
of the Petit Jury on the morning of April 7, 2009, the follow
ing occurred:

The Court: All right, ladies and gentlemen, let's
talk a bit. Try to get you orientated.

A Juror: Your Honor? I believe I need to speak with
you and counsel in chambers before we get started.

Or there is something I need to discuss with you.

The Court: Okay. Come on back in chambers.

(Wherefore, the following was heard in chambers with
the defendant an all counsel, along with the juror.

The Court: Okay. Ms. Allister, you have something you
want to tell the Court?

Juror: Yes Sir. Just before we get started, I wanted
to let you know that I did leave when you gave us the break,
and I don't know it there were Mr. Bester's friends or family
that were sitting behind me. But they were having discssions
about, it sounded like whether they believe the Search War-
rant was proper or not.

And also heard a statement, "I know he doesn't want
to goback to jail," and he's been priorly convicted of
another crime. And I don't believe that would influence
my decision. I certainly know I don't consider that evidence
but I just wanted to make all the parties aware that I heard
these discussions.

The Court:  Okay.  Would you do me a favor and have a seat right out there, please?

(Whereupon the juror complies.)

The Court:  They shouldn't have been talking in the Courtroom.

Mr. Benson:  (Defense Counsel) I will certainly instruct them to cease the desist, your Honor, I apologize.

The Court:  Well, I only have one extra.

Mr. Anderton: (Prosecutor) Judge of course--

The Court:  Wasn't she the last one to come on the jury

Mr. Anderson:  She was, yes, Your Honor.  Mr. Jenkins was sitting next to her, and I don't know how long these discussions have been going on.  Or if Mr. Jenkins or any of the other jurors heard Mr. Bester's family speaking in those terms.  How long they've been doing, how loud they've been doing it, even during the break while --before we recon-vened this time.

. I don't know.  I know Mr. Jenkin is on the last guy I can't remember his name, he's not on, I don't think, con-cern.

But Ms. Allister and Mr. Jenkins were on that final row.

The Court:  Right, Right.

Maybe he left during the break.

Mr. Benson: I believe he did your Honor.

The Court: I don't know, I wasn't out there.

Mr. Anderton: Of course, I don't either.

But I also don't know if they continued those discussion while the jurors were back in the room. But, talking about the facts of the case, like that, around people that they know are potential jurors in this case.

(Brief Pause)

The Court: All Right. What do you suggest we do with her? We could excuse her. And just let her be the alternative

Mr Anderton: She has said-- She has said that, you know, she doesn't consider that evidence.

MR. Benson; Right.

(R. 25-28)

Petitioner contends that the Trial Court after hearing the juror and arguments of counsels, excluded the juror. (R. 29-31)

Bester avers that Trial Counsel did not move for a mistrial or instructions to the rest of the jurors to disregard anything that they had heard. This action was prejudicial to Bester, because there's a reasonable probability that under the facts of this case, the entire Petit Jury might have been unlawfully influenced by the comments the spectator made, which could have unlawfully influenced their verdict rendered.

Counsel error and omission deprived Baster of fundamental fair trila.

Petitioner was denied his Sixth Amendment Right to effective Assistance of counsel when counsel failed to object to the trial court allowing jurors to directly question witnesses during trial.

(A 3)  Petitioner submits that during the course of his trial members of the Patit Jury were allowed to question witnesses.

Specifically, the record reflects that during the testimony of Michael Eaton, a Deputy with the Jefferson County Sheriff's Department and who participated in and secured and served the warrants, the record reflects the following:

> "  THE COURT:  All right.  Ladies and gentlemen of
> the jury, if you have a burning question in your
> mind as a result of Officer Eaton's-- Deputy Eaton's
> testimony, I will allow you to ask it, if it is
> admissible.
> This is not an opportunity to clear a question
> you may have remaining in your mind as a result
> of the witness's testimony and the lawyer's quest-
> ioning, and the procedure is that, if you wish
> to ask a question, I will approve the question,
> and then the witness will answer.
> Once you receive an answer from the witness, you
> should not comment concerning the witness's answer.
> Ok.

Does anyone here have a question for Deputy Eaton?

Yes Sir?

A JUROR:  I'm not sure if I'm allowed to ask or not, is
there a reason why the box wouldn't have been
fingerprinted?

THE COURT:  Do you know the answer to that question?

THE WITNESS:  Because, Mr. Lester had owned up to owning
the luggage.  I didn't see the need to have
it fingerprinted, because he'd already told
me that the bag was his.

THE COURT:  Anyone else?

Yes Ma'am?

A JUROR:  I'm just trying to understand where was the White
plastic bag found?  Was it found at the house
or at the apartment?

THE COURT:  Can you answer?  Do you know the answer?

THE WITNESS:  Yes, Sir--

MR. BENTON:  But, Your Honor --

THE COURT:  Come up.

(Side Bar).

THE COURT: Okay. He can't answer that question.

A JUROR: He cannot?

THE COURT: he cannot. Okay.

He cannot, that is all I can say.

Anyone else?

(No Response).

THE COURT: Any follow-up then for the State?

MR. ANDERSON: No, Sir.

THE COURT: I'm sorry. yes Sir?

A JUROR: I want to ask a question.

  Where was the --- was the plastic bag in the
  truck-- when they stopped them, was the plastic
  bag in the truck, when he was taken to his
  Mother's house?

THE COURT: Okay. He can't answer that.

Any follow-up for the defense?

MR. BENSON: No, Your Honor.

THE COURT: All right. You may stand down."

Further during the testimony of Sgt. French, with the
Jefferson County Sheriff's Department, the Trial Court allowed
Juror's to question the witnesses. The Record reflects:

(R. 137-139, 142):

THE COURT:  Any questions for Sgt. French?  Yes, Sir.

A JUROR:  You said they took two bags in and you said he
          brought a bag out.  Did he bring the bag out
          or what---

THE WITNESS:  No, I did not say he brought---

THE OCURT:  Okay.  Wait, wait, wait, wait, wait.
            We ask a question, then I approve it before
            we answer it, Okay?  You didn't know that.

THE WITNESS:  No, I didn't.  I'm sorry.

THE COURT:  Did you understand his question?

THE WITNESS:  He said, I said they brought--- he took two
              bags in and brought one bag out.

THE JUROR:  No, I mean to say, the White guy brought one
            one bag in and he brought one bag out.  I think,
            didn't you say, he took his bag back out?
            He brought the bag back out.

THE COURT:  Okay, that's the question.  Did you say, did
            you say that?

THE WITNESS:  No.

THE COURT:  Okay, she said no.  Yes, Sir?

A JUROR:   My understanding of that, the same question.
           Both Mr. Bester and his friend were both taking
           White bags into the house.

THE COURT:   Is that correct?  Is the question?

A JUROR:   Into the apartment, I'm sorry, not the house.

THE COURT:   Okay.

THE WITNESS:   That is correct.

THE COURT:   Okay.  Yes, Sir?

A JUROR:   It seems as though before you said, they were
           different types of bags.  One was like a Walmart
           plastic bag and one was a white garbage bag,
           is that correct?

A JUROR:   Okay.  And can I ask one more then?
           The White garbage bag that the White male brought
           in, did that look like the White garbage bag
           that you found at the apartment that had this
           Pyrex jar------

THE WITNESS:   The White garbage bag that the White male
               carried in was a larger one that was sitting
               in the floor.

A JUROR:   Right.

THE WITNESS:   That had the Pyrex dish and other stuff.

THE COURT:   Okay.  Anyone else?

(No response)

(Id. 137-139).

Petitioner, further submits that the record reflects at
R. 142, the Jurors further questioned the witnesses:

THE COURT:  Yes Sir?

A JUROR:  It was the bag that was behind the stereo, the
bag that allegedly--- that had the cocaine; can
I ask that question?  That cocaine that was found
in or was it the other bag?

THE COURT:  You can answer it.

THE WITNESS:  It was the bag that was behind the stereo
that had the cocaine in it.

THE COURT:  Anyone else?

(No response)"  (Id. at 142).


Bester contends that he was prejudiced by Counsel's failure
to object to the Trial Court's solicitation of questions from
the Petit Jury without any special request from them.  The quest-
ions asked by certain jurors could have influenced the indiv-
idualized determination of the facts by other jurors, and thus,
deprived Petitioner of an individualized verdict.

In **UNITED STATES VS. AJMAL**, 67 F.3rd. 12, 15 (2nd Cir.
1995), the Court of Appeals for the Second Circuit held that
the Trial Court exceeded it's discretion by allowing extensive
Juror questioning as a matter of course and by inviting questions
at the end of each witness's testimony, that the Court stated,
that the Trial Court's decision to invite and allow extensive
juror questioning was not necessitated by the factual intricacies
of that case. (Id.).

Petitioner contends that Counsel's unprofessional error
in failing to Object to the Court's actions was Prejudical to
the Petitioner's Fundamental Right to a fair trial.

(A 4). Petitioner was denied his Sixth Amendment Right
to Effective Assistance of Counsel when Counsel deprived him
of his right to Testify in his own defense.

Bester contends that his trial counsel, WILLIAM BENSON,
deprived him of his Fundamental Right to Testify in his own
defense, and that Counsel's action prejudiced his defense and
deprived the Petitioner of a fundamental Fair Trial.

Petitioner submits that prior to Trial, he made known to
counsel that he wanted to testify, and let the jury know that
he did not possess the drugs and did not have knowledge of the
drugs being in the residence. Counsel agreed, and stated that
my Mother, who will also testify, that the White guy had the

sack with the drugs would corroborate my testimoney.  (R. 186).
However, the records reflect, that after the State had rested,
Mr. Benson only called my Mother, Dorothy Bester, as a Defense
witness, and rested the Defense without callng me as a witness
in my own defense.  (R. 187-203).

Counsel informed me, that I did not need to testify, that
the Jury heard my version through my Mother, and that the Prose-
cution would be able to Cross- Examine you, and bring up your
prior convictions.  I still insisted on testifying, but counsel
refused to let me.

Bester contends that the Right of the accused to testify
is a personal right that can only be waived by the accused him-
self.  SEE:  ROCK VS. ARKANSAS, 483 U.S. 44 (1987) and REEVES
VS. STATE, 974 So.2d. 314, 325 (ALA.CR.app. 2007).

Petitioner contends, he was prejudiced by Counsel's un-
professional errors, as there exists, under the circumstances,
a reasonable probability that had the Jury heard Bester's Test-
imony, the results of the proceeding would have been different.

(A- 5).     Petitioner was denied his Sixth Amendment Right
to Effective Assistance of Counsel, when counsel failed to re-
quest and/ or object to the Court not giving Jury Instructions
on the Failure of Bester to testify.

In **CARTER VS. KENTUCKY**, 450 U.S. 288 (1981), the Supreme Court held that the Fifth Amendment requires that a Criminal Trial Judge must give a no-adverse-inferrence jury instruction when requested by a Defendant to do so. Id. at 300.

In the instant case, because Counsel failed to request and /or object to the lack of such, the jury was allowed to infer that Bester was Guilty because he did not testify.

Counsel's unprofessional error and omission was prejudicial to the Fundamental Substantive Rights of the Petitioner.

## INEFFECTIVE APPELLATE COUNSEL CLAIM---- (GROUND B):

(B-1). Petitioner was denied his Sixth Amendment Right to Effective Assistance of Counsel on Direct Appeal, when Counsel failed to preserve and/or raise for Appellate review the following claims:

A. The Trial Court's denial of Bester's request for New Counsel. The Record reflects at the outse of Trial, Bester requested a new Counsel, and the Court denied the request without inquiry, depriving Bester of his right to Counsel of choice. (R. 16). Trial Counsel, WILLIAM BENSON even requested to Withdraw himself. (R. 17).

B.   The Trial Court's denial of Bester's Motion to Suppress.
The Record reflects at the outset of Trial, Bester moved to
Suppress, on the grounds that the Search was illegal and based
on an involuntary consent.  (R. 18-20).

C.   The Trial Court abused it's discretion in finding Bester
a Violent Offender and sentencing him to LIFE WITHOUT PAROLE.
The Record reflects that Bester was never afforded allocution
before sentence was announced.  (R. 1-19, 20-26).

Appellate Counsel attempted to raise this issue on Appeal,
however, the Appellate Court found the claim was Waived because
counsel cited no legal authority to support the claim.  (SEE
MEMORANDUM OPINION in BESTER VS. STATE, CR-08-1636).

Bester contends that his Appellate Counsel on Direct Appeal,
AMRTIN WEINBERG, errors and ommissions in not raising the above
meritorious claims, was outside the range of professional assist-
ance required of Attorney's representing a Defendant in a First
Appeal as a matter of Right. SEE: EVITTS VS. LUCEY, 469 U.S.
387 (1985): and STRICKLAND VS. WASHINGTON, 466 U.S. 668 (1984).
Bester contends that had Appellate Counsel raised the above
claims, there is a reasonable probability that the results
of Bester's Direct Appeal would have been different.  SEE:
BRYANT VS. STATE, 739 So.2d. 1138 (ALA.CR.APP. 1998).

Case Number

CC 08 - 3771
CC 08 - 3772
ID    YR    NUMBER
(To be completed
by Court Clerk)

# IN FORMA PAUPERIS DECLARATION

In The Circuit Court of Jefferson County Alabama

[Insert appropriate court]

Durrell Besler

(Petitioner)

vs.

State of Alabama

(Respondent(s))

FILED IN OFFICE
CIRCUIT CRIMINAL

DEC 0 6 2010

ANNE-MARIE ADAMS
CLERK

## DECLARATION IN SUPPORT OF REQUEST TO PROCEED IN FORMA PAUPERIS

I, Durrell Besler #216904 , declare that I am the petitioner in the above entitled case; that in support of my motion to proceed without being required to prepay fees, costs, or give security therefor, I state that because of my poverty I am unable to pay the costs of said proceeding or to give security therefor; that I believe I am entitled to relief.

1. Are you presently employed?   Yes _____   No X

   a. If the answer is "yes", state the amount of your salary or wages per month, and give the name and address of your employer.

   N/A

   b. If the answer is "no", state the date of last employment and the amount of the salary and wages per month which you received.

   2007   $1,000.00 per month

2. Have you received within the past twelve months any money from any of the following sources?

   a. Business, profession, or other form of self-employment?

   Yes _____   No X

   b. Rent payments, interest, or dividends?

   Yes _____   No X

   c. Pensions, annuities, or life insurance payments?

   Yes _____   No X

   d. Gifts or inheritances?

   Yes _____   No X

   e. Any other sources?

   Yes X   No _____

2

If the answer to any of the above is "yes", describe each source of money and state the amount received from each during the past twelve months.

I _Receive Funds From Family members To purchase Necessities From prison Canteen._

3. Do you own cash, or do you have money in a checking or savings account?

Yes __X__     No _____

(Include any funds in prison accounts.)

If the answer is "yes", state the total value of the items owned.

_See below Certificate_

4. Do you own any real estate, stocks, bonds, notes, automobiles, or other valuable property (excluding ordinary household furnishings and clothing)?

Yes _____     No __X__

If the answer is "yes", describe the property and state its approximate value.

_N/A_

5. List the persons who are dependent upon you for support, state your relationship to those persons, and indicate how much you contribute toward their support.

_N/A_

I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct.

Executed on __11 — 22 — 10__
                (Date)

X _Durell Berton_
Signature of Petitioner

## CERTIFICATE

I hereby certify that the petitioner herein has the sum of $ __21.49__ on account to his credit at the institution where he is confined. I further certify that petitioner likewise has the foregoing securities as to his credit according to the records of said __Limon CF__ institution:

__11/23/10__
DATE

_[signature]_
AUTHORIZED OFFICER OF INSTITUTION

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
HOLMAN CORRECTIONAL FACILITY

AIS #: 216904      NAME: BESTER, DURRELL        AS OF: 11/23/2010

| MONTH | # OF DAYS | AVG DAILY BALANCE | MONTHLY DEPOSITS |
|-------|-----------|-------------------|------------------|
| NOV   | 7         | $549.14           | $0.00            |
| DEC   | 31        | $316.64           | $0.00            |
| JAN   | 31        | $131.59           | $215.00          |
| FEB   | 28        | $227.46           | $480.00          |
| MAR   | 31        | $116.06           | $410.00          |
| APR   | 30        | $79.27            | $300.00          |
| MAY   | 31        | $46.75            | $205.00          |
| JUN   | 30        | $17.93            | $320.00          |
| JUL   | 31        | $16.30            | $315.00          |
| AUG.  | 31        | $14.51            | $405.00          |
| SEP   | 30        | $42.87            | $480.00          |
| OCT   | 31        | $19.75            | $425.00          |
| NOV   | 23        | $28.65            | $340.00          |

IN THE CIRCUIT COURT, TENTH JUDICIAL CIRCUIT
JEFFERSON COUNTY, ALABAMA
CRIMINAL DIVISION

DURRELL BESTER,                          )
                                         )
                    Petitioner,          )
                                         )
vs.                                      )        CASE NO. CC 2008-3771.60
                                         )                CC 2008-3772.60
STATE OF ALABAMA,                        )
                                         )
                    Respondent,          )

*FILED IN OFFICE*
*CIRCUIT CRIMINAL*

JAN 03 2011

ANNE-MARIE ADAMS
CLERK

## **MOTION TO DISMISS RULE 32 PETITION**

COMES NOW the State of Alabama, by and through Brandon Falls, District Attorney for the Tenth Judicial Circuit, Jefferson County, Alabama, and says in response to the petition heretofore filed the following:

1. Respondent respectfully requests this Honorable Court take judicial notice of its own records in the above-cited case.

2. The State of Alabama denies each and every allegation in Petitioner's motion jointly and severally and demands strict proof thereof.

3. Petitioner was convicted of Trafficking in Cocaine and Failure to Affix Tax Stamp on April 8, 2009 and sentenced to Life without Parole and Fifteen (15) years to be served concurrently. Petitioner appealed and said conviction was upheld on June 23, 2010.

4. Petitioner is precluded from relief by operation of law as his claims were raised at trial. Rule 32.2(a)(2), Alabama Rules of Criminal Procedure.

ORIGINAL

5. Petitioner is precluded from relief by operation of law as his claims could have been raised at trial. Rule 32.2(a)(3), Alabama Rules of Criminal Procedure.

6. Petitioner is precluded from relief by operation of law as his claims were raised on appeal. Rule 32.2(a)(4), Alabama Rules of Criminal Procedure.

7. Petitioner is precluded from relief by operation of law as his claims could have been raised on appeal. Rule 32.2(a)(5), Alabama Rules of Criminal Procedure.

8. Petitioner's claims are precluded because any claim that counsel was ineffective must be raised as soon as practicable, either at trial, on direct appeal, or in the first Rule 32 petition, whichever is applicable." Rule 32.2(d), Alabama Rules of Criminal Procedure.

9. Without waiving any of the aforementioned procedural bars, Respondent denies Petitioner's claims that he received ineffective assistance of trial and appellate counsel. Petitioner makes the following specific claims:

**A. Ineffective Assistance of Trial Counsel**

**A1. Trial counsel failed to object to the oath not being administered to the petit jury.**

Claims regarding the swearing of the venire are non-jurisdictional; therefore, Petitioner's claim is waived because it could have been, but was not, raised at trial or on appeal. Furthermore, the entire jury venire is sworn in by the Court Administrator before being disbursed to the various courtrooms. This oath tracks the language contained in Rule 12.1(c), Ala.R.Crim.P., which pertains to the qualification of the jury venire, and it also satisfies the oath required under §12-16-170, Code of Alabama, 1975. See *Deramus v. State*, 721 So.2d 239; (Ala.Crim.App. 1997). Additionally, the record reflects that the

individual jurors sent to the courtroom for Petitioner's trial was sworn in after entering the courtroom (see Exhibit "A" attached). Thus, Petitioner's claim is without merit.

**A2. Trial counsel failed to request a mistrial after a juror disclosed that she heard spectators talking about the case in the courtroom during a break.**

Immediately after hearing the comments, the juror disclosed the same to the Court. Petitioner's counsel then had a lengthy discussion in chambers with the Judge, juror and prosecutor (see Exhibit "B" attached) wherein it was determined that only the disclosing juror and one other were seated on the back row in front of the spectators and that the other juror was believed to have stepped outside during the break. The Court then suggested that the disclosing juror be dismissed to prevent a possible claim of jury contamination later on. Counsel, *after discussion with Petitioner*, agreed to the dismissal of the juror. Petitioner's mere speculation that the entire petit jury *might* have been influenced by the spectator's comments is unsupported by the facts.

**A3. Trial counsel was ineffective for failing to object to the Court allowing the jurors an opportunity to question the witnesses.**

Petitioner claims that questions asked by jurors *may* have influenced the determination of facts by other jurors. Again, Petitioner's claim is mere speculation. Besides the fact that the Judge qualified the questions being asked before allowing the witness to answer the question, it is well settled that "whether to allow jurors to question witnesses is a matter within the trial judge's discretion." United States v. Rawlings, 380 U.S. App. D.C. 378; 522 F.3d 403; 2008 U.S. App. LEXIS 8005. (See also, United States v. Callahan, 588 F.2d 1078, 1979 U.S. App. LEXIS 17143; United States v. Collins, 226

F.3d 457, 2000 U.S. App. LEXIS 22237; <u>United States v. Richardson</u>, 233 F.3d 1285; 2000 U.S. App LEXIS 27467.

### A4. Trial counsel denied Petitioner his right to testify on his own behalf.

A defendant desiring to testify on his own behalf must make his desire known to his attorney. By his own admission, Petitioner states that, after his mother testified, his attorney advised him that there was no need for him to testify since his mother's testimony encompassed what he was going to say and that, if he did testify, his priors could come out. "Trial counsel may advise the defendant, and should do so in the strongest possible terms, not to testify if counsel believes that it would not be wise for the defendant to testify." <u>United States v. Teague</u>, 953 F.2d 1525 (11th Circuit 1992). Although Petitioner claims that there is a reasonable probability that the outcome would have been different if the jury had heard his testimony; that is not likely in light of the evidence against him, and the fact that the jury apparently discounted his mother's testimony which was substantially the same as Petitioner's would have been.

### A5. Trial counsel failed to request and/or object to the Court not giving jury instructions on Petitioner's failure to testify.

What Petitioner is referring to is a "no adverse inference" instruction. As discussed in the *Carter* case which Petitioner cites, a trial judge must give such an instruction when requested by a defendant to do so. In this case, the Court was not requested by the defendant to do so, therefore, counsel had no cause to object. Furthermore, the Court instructed the jury that the defendant had no burden of proof and was presumed innocent. As for counsel's failure to specifically request such an instruction, Petitioner's claim is precluded because it could have been but was not raised on appeal.



The Alabama Supreme Court has delineated a two-prong test based on *Strickland v. Washington*, 466 U.S. 668 (1984), to determine whether counsel was effective. *See Ex Parte Lawley*, 512 So.2d 1370 (Ala.Crim.App.1987). First, the Petitioner must prove that his counsel was deficient; and second, the Petitioner must prove that his counsel's performance prejudiced him such that the outcome would be different but for his counsel's ineffective performance. *Lawley*, 512 So.2d 1370, 1372 (Ala.Crim.App. 1987). Therefore, "to establish ineffective assistance of counsel, the accused must show that his attorney's performance was so deficient as to fall below the objective standard of reasonableness and further, that this deficiency actually prejudiced him and deprived him of a fair trail." *Stringfellow v. State*, 485 So.2d 1238 (Ala.Crim.App. 1986); *See also Daniels v. State*, 650 So. 2d 544, 552 (Ala. Crim. App. 1995) and *Dobyne v. State*, 805 So. 2d 733, 743 (Ala. Crim. App. 2000). Petitioner has failed to meet this burden and his claims are due to be denied.

## B. Ineffective Assistance of Appellate Counsel

Petitioner argues that appellate counsel was ineffective in failing to raise the following issues on appeal which Petitioner describes as "meritorious claims".

### B1. Trial Court's denial of Petitioner's request for new counsel which deprived him of his right to counsel of his choice.

First of all, Petitioner has a right to counsel not counsel of his choice. Second, the only time Petitioner requested new counsel was when the trial was about to start and the Court was asking him if he wanted to take the State's plea offer or proceed to trial. His only response was "I really want to hire me another lawyer. Because I feel I'm not represented right." (See Exhibit "C" attached). Petitioner did not state any other reason

5

why he was requesting new counsel at this stage of the proceedings. "Once trial has begun a defendant does not have the unbridled right to reject assigned counsel and demand another... in order to warrant a substitution of counsel during trial, the defendant must show good cause...." McKee v. Harris, 649 F.2d 927, (U.S. App. 1981) LEXIS 12819. Petitioner's request was unfounded and not timely made. Therefore, the Court's denial of his request was proper. "The right to choose counsel is a shield and part of an accused's due process rights. It should not be used as a sword with the purpose of obstructing the orderly procedure of the courts or to interfere with the fair administration of justice." Robinson v. State, 581 So.2d 1197, (Ala.Crim.App. 1990) LEXIS 1752.

### B2. Trial Court's denial of Petitioner's Motion to Suppress.

Petitioner's trial attorney made a motion to suppress based on his client's claim that the consent form signed by his mother was invalid due to her limited education and that it was signed after the search had taken place. The Court denied the motion. "A trial court's ruling on a motion to suppress will not be disturbed unless it is palpably contrary to the weight of the evidence." Patterson v. State, 659 So.2d 1014 (Ala.Cr.App. 1995). The Court heard testimony of the officers involved, particularly Sgt. French, who testified that she read the consent form to Petitioner's mother prior to the search. (See Exhibit "D" attached). Thus, the Court's decision was not *contrary to the weight of the evidence.*

### B3. The trial Court abused its discretion in declaring Petitioner a violent offender and sentencing him to life without parole.

Although appellate counsel did raise this issue on appeal, he cited no legal authority; probably because he could not find any to support his position on the issue.

6

Petitioner had four prior felonies, two of which were for discharging a firearm into an occupied dwelling which are violent felonies as defined by §12-25-32(13), Code of Alabama, 1975. Furthermore, Petitioner was convicted of a Class A felony with a prior conviction for a Class A felony. Under these facts, life without parole was mandated under §13A-5-9(c)(4) Alabama Criminal Code. Thus, Petitioner's sentence was not an abuse of discretion.

"To administer effective assistance of counsel, appellate counsel is not required to raise each and every issue. Brownlee v. State, 666 So.2d 91, 99 (Ala.Crim.App. 1995). "Winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986). Therefore, Petitioner's claims are due to be denied.

10. Respondent avers that no material issue of law or fact exists which would entitle the Petitioner to relief under Rule 32, and that no purpose would be served by any further proceedings. Rule 32.7, Alabama Rules of Criminal Procedure.

**WHEREFORE, PREMISES CONSIDERED**, and in consideration of Rule 32.7(d), ALABAMA RULES OF CRIMINAL PROCEDURE, Respondent, the State of Alabama, respectfully moves this Honorable Court to dismiss the above styled petition without an evidentiary hearing.

Respectfully submitted this _3rd_ day of January, 2011.

**F. BRADY RIGDON**
Deputy District Attorney

7

 

Office of the District Attorney
801 R. Arrington, Jr. Blvd. N.
Birmingham, AL 35203
Phone: (205) 325-5252
Facsimile: (205) 325-5266

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Motion to Dismiss Rule

32 Petition via U.S. Mail postage prepaid and properly addressed on this the $\cancel{2d}$ day of

January, 2011, as follows:

Durrell Bester
Holman Correctional Facility
Holman 3700
Atmore, AL 36503

**F. BRADY RIGDON**
Deputy District Attorney

# EXHIBIT "A"



1    you to renew your motion to suppress, along

2    with your timely motion for judgement of

3    acquittal at the conclusion of all the

4    evidence in the case.

5              MR. BENSON:  Thank you, Judge.

6              THE COURT:  All right.

7                   (Whereupon, State's Exhibit

8                   Numbers 1 through 14 were marked

9                   for identification.)

10                  V O I R   D I R E.

11        April 6th, 2009 - 2:30 p.m.

12                  (Whereupon, the following was in

13                  open court with the Defendant and

14                  counsel present.)

15                  (Whereupon, a jury venire was

16                  brought in and sworn, the

17                  indictment was read, the venire

18                  was qualified and identified,

19                  after which the following was had

20                  and done.)

21                  (Whereupon, special questions on

22                  voir dire examination were asked

23                  of the jury venire by counsel for

24                  the State, there being no

25                  objections or exceptions taken

# EXHIBIT "B"



1    Your Honor.

2          THE COURT:   What says the defense?

3          MR. BENSON:   The defense is satisfied,

4    Your Honor.

5          THE COURT:   Ladies and gentlemen, to

6    those of you all who were not selected, we

7    thank you and appreciate your service in

8    jury selection in this case.

9          Would you please return to the big jury

10   room across the street for further service

11   during week?   Have a great week.

12              (Whereupon, those not selected

13                  were released.)

14         THE COURT:   All right, ladies and

15   gentlemen, let's talk a bit.   Try to get you

16   orientated.

17         A JUROR:   Your Honor?   I believe I need

18   to speak with you and counsel in chambers

19   before we get started.

20         Or there's something I need to discuss

21   with you.

22         THE COURT:   Okay.   Come on back in

23   chambers.

24              (Whereupon, the following was

25                  heard in chambers with the



1     defendant and all counsel, along

2     with the juror.)

3     THE COURT:  Okay.  Ms. McAlister, you

4  have something you want to tell the Court?

5     JUROR:  Yes, sir.  Just before we get

6  started, I wanted to let you know that I did

7  leave when you gave us the break, and I

8  don't know if these were Mr. Bester's

9  friends or family that were sitting behind

10  me.  But they were having discussions about,

11  it sounded like whether they believe the

12  search warrant was proper or not.

13     And also heard a statement, "I know he

14  doesn't want to go back to jail," and I

15  don't know if that means his initial arrest

16  or he's been priorly convicted of another

17  crime.  And I don't believe that would

18  influence my decision.  I certainly know I

19  don't consider that evidence.  But I just

20  wanted to make all the parties aware that I

21  heard these discussions.

22     THE COURT:  Okay.  Would you do me a

23  favor and have a seat right outside there,

24  please?

25     (Whereupon, the juror complies.)



1        THE COURT:  They shouldn't have been

2  talking in the courtroom.

3        MR. BENSON:  I will certainly instruct

4  them to cease and desist, Your Honor, I

5  apologize.

6        THE COURT:  Well, I only have one

7  extra.

8        MR. ANDERTON:  Judge, of course --

9        THE COURT:  Wasn't she the last one to

10  come on the jury?

11        MR. ANDERTON:  She was, yes, Your

12  Honor.  Mr. Jenkins was sitting next to her,

13  and I don't know how long these discussions

14  have been going on.  Or if Mr. Jenkins or

15  any of the other jurors heard Mr. Bester's

16  family speaking in those terms.  How long

17  they've been doing, how loud they've been

18  doing it, even during the break while --

19  before we reconvened this time.

20        I don't know.  I know Mr. Jenkins is on

21  the last guy - I can't remember his name,

22  he's not on - he's not on, I don't think,

23  concern.

24        But Ms. McAlister and Mr. Jenkins were

25  on that final row.

```
 1           THE COURT:  Right, right.

 2       Maybe he left during the break.

 3           MR. BENSON:  I believe he did, Your

 4       Honor.

 5           THE COURT:  I don't know, I wasn't out

 6       there.

 7           MR. ANDERTON:  Of course, I don't

 8       either.

 9       But I also don't know if they continued

10       these discussions while the jurors were back

11       in the room.  But, talking about the facts

12       of the case, like that, around people that

13       they know are potential jurors in this case.

14                 (Brief pause.)

15           THE COURT:  All right.  What do you

16       suggest we do with her?

17       We could excuse her.  And just let her

18       be the alternate.

19           MR. ANDERTON:  She has said -- she has

20       said that, you know, she doesn't consider

21       that evidence.

22           MR. BENSON:  Right.

23           MR. ANDERTON:  And she was quite

24       honestly forthright enough to come to the

25       Court on her own, and not even in answering
```

1    a question, "Do you need to talk to us in

2    the back room?", she kind of did it on here

3    own.

4         THE COURT:   She is the alternate.

5         MR. BENSON:   Right.

6         THE COURT:   I guess, we can just tell

7    her don't talk to anybody else.

8         MR. BENSON:   And Your Honor, she is an

9    attorney --

10        THE COURT:   But there is risk of

11   contamination.

12        I'm sorry?

13        MR. BENSON:   She is an attorney, if I

14   remember correctly.   And so I think that,

15   you know, she's a aware of the process and

16   can put that aside.

17        THE COURT:   Well, I don't want him

18   coming up later saying, well, my attorney

19   should have got her off the jury, so I

20   didn't have fair trial, so give me a new

21   trial.

22        I'm thinking the safest thing to do is

23   just exclude her.   I mean, she seems like

24   she's a real, you know, nice lady, and would

25   be a good juror.   But as it stands, she's

1     the alternate.

2          So since she's already the alternate.

3          And this case is not going to last but

4     a day, right?

5          MR. ANDERTON:   I wouldn't expect it to

6     be any more than that.

7          THE COURT:   So I think the safest thing

8     to do, and the best thing to do for him, so

9     as not to help make any issues.   Is just to

10    be exclude her and let her go.   Before she

11    has any contact with the other jurors.   And

12    that way he can't speculate as to whether or

13    not she said something to somebody during a

14    break, or lunch, or while they, you know,

15    back in the jury room.

16         MR. ANDERTON:   Judge, may I make the

17    suggestion, that we give Mr. Benson and

18    Mr. Bester a moment to talk among

19    themselves?   It may be that he would have

20    just as big an argument on appeal, by saying

21    she should have not been excused.

22         THE COURT:   Well, she's already the

23    alternate, she's not on the jury.

24         MR. ANDERTON:   I understand.

25         THE COURT:   You know, she's just the

31

1       alternate.

2           You have something you wish to add for

3       the record?

4           MR. BENSON:  Your Honor, we're in favor

5       of the Court's position.

6           MR. ANDERTON:  Okay.

7           MR. BENSON:  That she should be

8       excluded.

9           THE COURT:  Have you talked to your

10      client?

11          MR. BENSON:  No -- Well, if you mind

12      just giving me a moment I'll talk to him.

13          THE COURT:  Okay.

14              (Off the record.)

15          MR. BENSON:  Your Honor, my client

16              concurs.  This juror probably

17              should be excluded.

18          THE COURT:  All right, I'm going to

19      exclude her.  Okay.

20          Okay, next question.  (Pause) Who are

21      those people out there, are they family?

22          MR. BENSON:  The majority is family.

23      One of them won't be in, she's a potential

24      witness.  So she'll be outside the

25      courtroom.

# EXHIBIT "C"



And you wish to exercise your right to a trial by jury or you wish to take the State's offer of life?

THE DEFENDANT: I'm going to take my right.

THE COURT: Sir?

(No response.)

THE COURT: Sir? I didn't hear you, I'm sorry.

THE DEFENDANT: Could you repeat the question?

MR. BENSON: Do you want the jury trial or do you want to take the plea?

THE DEFENDANT: I really want to hire me another lawyer. Because I feel I'm not represented right.

THE COURT: Well, I didn't ask you that. I need to know, we got a jury right outside this courtroom, ready to go, and I need to know if you want to take the life sentence or do you want to go to trial?

(No response.)

(Brief Pause.)

MR. ANDERTON: Obviously, I'm not trying to speak for Mr. Bester. Obviously,

1 but, I guess I just want to make it clear,

2 that there is a difference between a life

3 sentence and a life without parole sentence.

4 And perhaps Mr. Bester does not grasp the

5 difference.

6  THE COURT: Well, I think Mr. Bester

7 understands that life without parole means

8 you never get out of prison.

9  And a regular life sentence means that,

10 at some point, you would be eligible for

11 parole.

12  MR. ANDERTON: All right. Thank you.

13  MR. BENSON: Your Honor, at this time,

14 I think -- I mean, I'm sort of at a

15 difficult position here. My client has

16 asked for a new attorney, I would

17 respectfully request this Court to grant his

18 wish, if he doesn't feel like he's getting

19 the quality of representation he needs,

20 then --

21  THE COURT: I don't wait till the

22 moment of trial --

23  MR. BENSON: I understand, Judge --

24  THE COURT: -- to deal with attorney

25 issues.

18

1       Okay.  So you understand that you wish

2   to proceed to trial; is that correct, Mr.

3   Bester?

4       THE DEFENDANT:  I guess, yeah.

5       THE COURT:  All right.  You said you

6   had something on a motion to suppress,

7   Billy?

8       MR. BENSON:  Yes, sir, on a motion to

9   suppress, Judge.

10      I believe what the State -- the

11  evidence the State will present, will be

12  that my client was under surveillance by the

13  police officers.  He was seen leaving his

14  residence with a bag.  And got into a pickup

15  truck belonging to another individual.

16      They followed him to his mother's

17  residence.  He took the bag upstairs, then

18  came back downstairs without the bag.  Left

19  with those individuals.  Police continued to

20  follow the vehicle, pulled the vehicle over.

21      That's when they found the

22  paraphernalia.  Then, went back to the

23  mother's residence.  At that time, again,

24  this is what I believe the State is going to

25  state.  The police officers asked the mother

# EXHIBIT "D"



1   Q.   All right.  And did she indicate to you that

2   she would in fact show you around her apartment?

3   A.   Yes, she did.

4   Q.   All right.  And that was prior to her ever

5   signing that particular piece of paper?

6   A.   That's correct.

7   Q.   All right.  You asked her to sign a consent

8   form?

9   A.   I asked her to sign a consent form.

10   Q.   The writing on that document is whose

11   writing?

12   A.   I want to say it's Deputy Roger Morris.

13   Q.   Okay.  All right.  Were you present when the

14   consent to search form was filled out?

15   A.   Yes, I was.

16   Q.   All right.  And did you in fact see Ms.

17   Bester sign that particular form?

18   A.   I did.

19   Q.   Do you know if anyone read that form to Ms.

20   Bester prior to her signing it?

21   A.   Yes.

22   Q.   Who did?

23   A.   I read it to her.

24   Q.   Okay.  Tell us if you will what you read to

25   Ms. Bester prior to her signing the form?

108

1   A.    Okay.   It says:

2        "Consent to search premises, State of

3   Alabama, Jefferson County.   I am, and then the

4   individual's name, a resident of whatever the

5   address is, do voluntarily consent and authorize

6   the following deputy sheriffs:   Morris, Finley,

7   Sergeant French and Washington to search my

8   premises located at 1037 Apartment E Birmingham.

9        "To determine whether or not there is any

10  illegal narcotics or stolen property on my

11  premises.   I hereby certify that I am over 18 years

12  of age and have a possessory interest into the

13  items of the said premises.

14       "I have not been -- I have not been made any

15  threats or promises by the above named personnel.

16  This 24th day March, 2008.

17       "I further affirm that I have been advised

18  of my constitutional rights."

19  Q.    All right.

20  A.    And then it's signed and then it has two

21  witnesses.

22  Q.    All right.   Who were the witnesses?

23  A.    I think Roger Morris and myself.

24  Q.    Okay.   And did both of you watch Ms. Bester

25  sign that particular form?

109

1   A.      Yes.  Sitting in her living room.

2   Q.      Does that form appear to be an exact copy --

3   an exact duplicate of the original form?

4   A.      Yes.

5   Q.      With the exception of that gold star up at

6   the top, in that photograph -- I mean in that

7   Xeroxed copy is black and white?

8   A.      Yes.

9   Q.      The holes and the State sticker?

10  A.      That's it.

11  Q.      But does it appear to be an exact duplicate?

12  A.      It does.

13  Q.      Other than those items?

14  A.      It does.

15          MR. ANDERTON:  State would move to

16      introduce State's Exhibit 15.

17          MR. BENSON:  Defense would object based

18      on our discussion.

19          THE COURT:  15 is in.

20              (Whereupon, State's Exhibit Number

21              15 was received into evidence.)

22  Q.      Now, Sergeant French, once Ms. Bester signed

23  that form, did she take you anywhere in the

24  apartment?

25  A.      Yes, she did.

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### CRIMINAL DIVISION

STATE OF ALABAMA,                    )

          *Plaintiff*,              )      CASE NUMBER:

v,                                   )      CC 2008-3771.6

DURELL BESTER,                       )

          *Defendant*.              )

### NOTICE OF APPEARANCE

**COMES NOW** the undersigned counsel, **JOHN C. ROBBINS**, and hereby

enters his appearance in the above-styled case.

John C. Robbins      ROB060
Counsel for the Defendant

**OF COUNSEL**:
ROBBINS LAW FIRM
2031 2nd Avenue North
Birmingham, AL 35203
(205) 320-5270
(205) 879-1247 *facsimile*

### CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the above and foregoing Notice of
Appearance upon the following via first class United States Mail, properly addressed and
postage thereon prepaid this the 14th day of February, 2011.

Brandon Falls
District Attorney
Criminal Justice Center
801 N. Richard Arrington, Jr. Blvd.
Birmingham, AL 35203

OF COUNSEL

FILED IN OFFICE
CIRCUIT CRIMINAL

FEB 17 2011

ANNE-MARIE ADAMS
CLERK

SCANNED   FEB 17 2011

# ORIG1NAL

## IN THE CIRCUIT COURT OF JEFFERSON COUNTY, ALABAMA
### CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF ALABAMA, | ) | |
| *Plaintiff,* | ) | CASE NUMBER: |
| v. | ) | CC 2008-3771.6 |
| DURELL BESTER, | ) | |
| *Defendant.* | ) | |

**FILED IN OFFICE
CIRCUIT CRIMINAL
JUL 27 2011
ANNE-MARIE ADAMS
CLERK**

### AFFIDAVIT

My name is Durrell Bester. I am over the age of 18 years. I am currently in the custody of the Alabama Department of Corrections and I am incarcerated Holman Correctional Facility. On July 13, 2011, I filed a Notice of Appeal and requested leave of Court to proceed with the appeal on an *in forma pauperis* basis. I am currently serving a life sentence without the possibility of parole. I do not have an financial assets. My family is without the financial resources to assist me in pursing the appeal of this matter.

Durell Bester
Durrell Bester

*State of Alabama* )
*County of* Escambia )

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Durrell Bester, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that being informed of the contents of said instrument, executed the same voluntarily on the day the same bears date.

This notarization is prepared specifically and only for the Affidavit in support of the Notice of Appeal and Motion to Leave to Proceed *In Forma Pauperis* filed in connection with the above matter.

GIVEN under my hand and official seal this the 22nd day of July, 2011.

Sharon D. Tayle
Notary Public
My commission expires:

**My Commission Expires Oct. 5, 2013**

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing Notice of Appearance upon the following via first class United States Mail, properly addressed and postage thereon prepaid this the _____ day of July, 2011.

Brandon Falls
District Attorney
Criminal Justice Center
801 N. Richard Arrington, Jr. Blvd.
Birmingham, AL 35203

_____
OF COUNSEL

## COURT REPORTER'S INDEX OF TRIAL EXHIBITS — ARAP RULE 11(e)

### IN THE CIRCUIT COURT OF _Jefferson_ COUNTY

APPELLANT. _Durrell Bester_

VS.

STATE OF ALABAMA · or ·      appellant

     appellee

**ACTION (Case)**
No. CC2008-3771.60
[✓] State Criminal
[ ] Civil (Law)
[ ] City Appeal (Crim.)
[ ] Civil (Equity)

TO: (name) _Anne-Marie Adams_ CLERK OF CIRCUIT COURT OF _Jefferson_ COUNTY.

FROM: (name) _Alicia Martin_ COURT REPORTER OF _10th_ JUDICIAL CIRCUIT OF ALABAMA

### REPORTER'S INDEX TO EXHIBITS

The following **EXHIBITS** were received by the Court Reporter in above Action and same have been properly marked and identified. Where capable said exhibit(s) have been assembled herein (in flat file); where incapable of being assembled herein such exhibit(s) placed in suitable separate container. This index includes _all_ exhibits and further indicates those offered, admitted or not admitted into evidence, etc. . .:

| Party | Exhibit No. | BRIEF DESCRIPTION OF EXHIBIT | Admitted Yes | Admitted No | Iden. Only (✓) | With- drawn (✓) | Released By Court To Party (✓) | Original Replaced By Copy (✓) | In File (✓) | In Con- tainer (✓) | REMARKS, etc. |
|---|---|---|---|---|---|---|---|---|---|---|---|
| C | 1 | Excerpt - Trial Record | ✓ | | | | | | | | |
| P | 1 | CAS - Δ's Prior | ✓ | | | | | | | | Petitioner's X-bt |
| P | 2 | CAS - Δ's Prior | ✓ | | | | | | | | Petitioner's X-bt |
| P | 3 | CAS - Δ's Prior | ✓ | | | | | | | | Petitioner's X-bt |
| P | 4 | CAS - Δ's Prior | ✓ | | | | | | | | Petitioner's X-bt |

FILED IN OFFICE

JAN 2 2 2012

JEFFERSON COUNTY CIRCUIT COURT
CRIMINAL
ANNE MARIE ADAMS  CLERK

1) ABOVE INDEX RECEIVED & FILED _1/27/12_

2) EXHIBITS IN FILE &/OR CONTAINER VERIFIED (except as noted)

/S/ _Anne Marie Adams_
CLERK

DATED THIS _27th_ DAY OF _January, 2012_

/S/ _Alicia Martin_
COURT REPORTER
10th JUDICIAL CIRCUIT

| | | |
|---|---|---|
| 14:32:48 | 1 | you to renew your motion to suppress, along |
| 14:32:54 | 2 | with your timely motion for judgement of |
| 14:32:58 | 3 | acquittal at the conclusion of all the |
| 14:33:00 | 4 | evidence in the case. |
| 14:33:00 | 5 | MR. BENSON:  Thank you, Judge. |
| 14:33:02 | 6 | THE COURT:  All right. |
| | 7 | (Whereupon, State's Exhibit |
| | 8 | Numbers 1 through 14 were marked |
| | 9 | for identification.) |
| | 10 | V O I R   D I R E. |
| | 11 | April 6th, 2009 - 2:30 p.m. |
| | 12 | (Whereupon, the following was in |
| | 13 | open court with the Defendant and |
| | 14 | counsel present.) |
| | 15 | (Whereupon, a jury venire was |
| | 16 | brought in and sworn, the |
| | 17 | indictment was read, the venire |
| | 18 | was qualified and identified, |
| | 19 | after which the following was had |
| | 20 | and done.) |
| | 21 | (Whereupon, special questions on |
| | 22 | voir dire examination were asked |
| | 23 | of the jury venire by counsel for |
| | 24 | the State, there being no |
| | 25 | objections or exceptions taken |

**EXHIBIT**

Court's

1

```
 1                 STATE OF ALABAMA

 2              IN THE CIRCUIT COURT

 3          OF THE TENTH JUDICIAL CIRCUIT

 4          FOR JEFFERSON COUNTY, ALABAMA

 5                CRIMINAL DIVISION

 6

 7    DURRELL BESTER,

 8

 9      APPELLANT,

10

11    VS.                    Case Number: CC2008-3771,

12                                   CC2008-3772

13    STATE OF ALABAMA,

14

15      APPELLEE.

16

17    - - - - - - - - - - - - - - - - - - - - - - - -

18

19         COURT REPORTER'S OFFICIAL TRANSCRIPT

20

21         The above-entitled case came on to be heard

22    before the Honorable Clyde E. Jones, Judge, on the

23    6th day of April, 2009 at or about 9:00 a.m.

24    before Alicia Martin, Official Court Reporter and

25    Commissioner.
```

139

STATE'S
EXHIBIT

D

**CASE ACTION SUMMARY**
**CONTINUATION**

Petitioner's
Exhibit

|

Case Number:

CC 01 - 259

of Alabam...
...ied Judicia
Form C-7 Rev. 2/79

| Style:<br>STATE OF ALABAMA v. Bester, Durrell | Page Number _____ of _____ Pages |
| --- | --- |

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
| --- | --- |
| 5/4/01 | The defendants desire to plead guilty having been made known to the Court, the Court addressed the defendant personally in the presence of his counsel in open court and ascertained that the defendant has a full understanding of what a guilty plea means and its consequences. A rights waiver form was executed by the Court, defendant and counsel for the defendant and is incorporated herein. The Court is satisfied that there is factual basis for the plea. |
| | [ ✓ ]   The defendant pleads guilty to   TMJ1° |
| | [ ]   The defendant pleads guilty as youthful offender, underlying charge of _____ |
| | Habitual offender hearing held, the Court finds _____ prior felony conviction: |
| | Sentencing Hearing [ ✓ ] held; [ ] waived. |
| | The Court asked the defendant if he/she had anything to say why the sentence of law should not be imposed against him/her and the defendant having had his/her say or had nothing to say, it is the judgment and sentence of the Court as fol |
| | The Defendant is sentenced to the custody of _____ The Department of Corrections for a period of 10 year(s); _____ month day(s).    split _____ to serve. |
| | The following costs are assessed against the defendant: |
| | [ ✓ ] Costs of Court                  [ ✓ ] Victim's Compensation $50 |
| | [ ] Fine $                            [ ] Fair Trial Tax Fund $ |
| | [ ] Restitution to the victim(s) $ ~~_____~~ Ch |
| | [ ] Drug Demand Reduction Act Assessment $ 1,000.00 |
| | The payment of Court ordered monies shall be a condition of parole, early release, S.I.R. and work release.<br>The Clerk is authorized to accept part payments for all Court ordered monies.  First payment due on _____ per mo. |
| | The sentence is to be concurrent with the sentence imposed in Case number CC99-978, CC99-978, CC01-258 |
| | The defendant is given credit for all of the actual time spent incarcerated awaiting trial of this case unless he was serving time fo another offense. |
| | The defendants application for probation is accepted and the Probatior Office is ordered to make an investigation and report its findings to the Court. |
| | _____<br>Circuit Judge |

STATE'S EXHIBIT

C

Petitioner's Exhibit

2

137

State of Alabama
Unified Judicial System

Form C-7 Rev. 3/78

CASE ACTION SUMMARY
CONTINUATION

Case Number

CC 01-258

Style:
STATE OF ALABAMA v. Bester Durrell

Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|------|-------------------------------|
| 3/4/01 | The defendants desire to plead guilty having been made known to the Court, the Court addressed the defendant personally in the presence of his counsel in open court and ascertained that the defendant has a full understanding of what a guilty plea means and its consequences.  A rights waiver form was executed by the Court, defendant and counsel for the defendant and is incorporated herein. The Court is satisfied that there is factual basis for the plea. |
| | [ ✓ ]   The defendant pleads guilty to PMJI |
| | [  ]   The defendant pleads guilty as youthful offender, underlying charge of |
| | Habitual offender hearing held, the Court finds _____ prior felony conviction |
| | Sentencing Hearing [ ✓ ] held; [  ] waived. |
| | The Court asked the defendant if he/she had anything to say why the sentence of law should not be imposed against him/her and the defendant having had his/her say or had nothing to say, it is the judgment and sentence of the Court as fol |
| | The Defendant is sentenced to the custody of The Department of Corrections for a period of ___10___ year(s); _____ month( day(s).          split          to serve. |
| | The following costs are assessed against the defendant: |
| | [ ✓ ]   Costs of Court                      [ ✓ ] Victim's Compensation $50 |
| | [  ]   Fine $                          (  ) Fair Trial Tax Fund $ |
| | [ ✓ ]   Restitution to the victim(s) $ |
| | [ ✓ ]   Drug Demand Reduction Act Assessment $ 1,000 |
| | The payment of Court ordered monies shall be a condition of parole, early release, S.I.R. and work release. |
| | The Clerk is authorized to accept part payments for all Court ordered monies.  First payment due on _____ per mo. |
| | The sentence is to be concurrent with the sentence imposed in Case number CC99-970, CC99-7578, CC01-259 |
| | The defendant is given credit for all of the actual time spent incarcerated awaiting trial of this case unless he was serving time fo another offense. |
| | The defendants application for probation is accepted and the Probatio Office is ordered to make an investigation and report its findings to the Court. |

Circuit Judge

133

Petitioner's Exhibit 3

| State of Alabama<br>Unified Judicial System<br>Form C-7 Rev. 2/79 | CASE ACTION SUMMARY<br>CONTINUATION | Case Number<br>CC 99 1278 |
|---|---|---|

Style:
STATE OF ALABAMA v. Bester Durrell          Page Number _____ of _____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 2/27/01 | The defendants desire to plead guilty having been made known to the Court, the Court addressed the defendant personally in the presence of his counsel in open court and ascertained that the defendant has a full understanding of what a guilty plea means and its consequences. A rights waiver form was executed by the Court, defendant and counsel for the defendant and is incorporated herein. The Court is satisfied that there is factual basis for the plea.

[✓] The defendant pleads guilty to Discharge Firearm Into Occupied Vehicle

[ ] The defendant pleads guilty as youthful offender, underlying charge of _____

Habitual offender hearing held, the Court finds _____ prior felony conviction

Sentencing Hearing [✓] held; [ ] waived. March 6th 4:00 p.m.
March 6th 4:00 P.M.

The Court asked the defendant if he/she had anything to say why the sentence of law should not be imposed against him/her and the defendant having had his/her say or had nothing to say, it is the judgment and sentence of the Court as fol

The Defendant is sentenced to the custody of _____
The Department of Corrections for a period of 10 year(s), _____ month( day(s).          split          to serve.

The following costs are assessed against the defendant:

[ ] Costs of Court                    [ ] Victim's Compensation $

[ ] Fine $                            [ ] Fair Trial Tax Fund $

[ ] Restitution to the victim(s) $

[ ] Drug Demand Reduction Act Assessment $

[ ] The payment of Court ordered monies shall be a condition of parole, early release, S.I.R. and work release.
[ ] The Clerk is authorized to accept part payments for all Court ordered monies. First payment due on _____          per mo.

[✓] The sentence is to be concurrent with the sentence imposed in Case number _____

[✓] The defendant is given credit for all of the actual time spent incarcerated awaiting trial of this case unless he was serving time for another offense.

[ ] The defendants application for probation is accepted and the Probation Office is ordered to make an investigation and report its findings to the Court. |

Circuit Judge

Petition's
Exhibit
4

128

| State of Alabama<br>Unified Judicial System<br><br>Form C-7 Rev. 2/79 | CASE ACTION SUMMARY<br>CONTINUATION | Case Number<br><br>CC 99- 970<br>ID  YR  Number |
|---|---|---|

Style:
STATE OF ALABAMA v. _Bester Durrell_                    Page Number ____ of ____ Pages

| DATE | ACTIONS, JUDGMENTS, CASE NOTES |
|---|---|
| 2/27/01 | The defendants desire to plead guilty having been made known to the Court, the Court addressed the defendant personally in the presence of his counsel in open court and ascertained that the defendant has a full understanding of what a guilty plea means and its consequences. A rights waiver form was executed by the Court, defendant and counsel for the defendant and is incorporated herein. The Court is satisfied that there is factual basis for the plea. |
| | [ ✓ ]  The defendant pleads guilty to _Discharge Firearm Into Occupied Vehicle_ |
| | [ ]  The defendant pleads guilty as youthful offender, underlying charge of |
| | |
| | Habitual offender hearing held, the Court finds _____ prior felony conviction |
| | Sentencing Hearing [ ] held; [ ] waived. _March 16th 4:00 p.m._ |
| | The Court asked the defendant if he/she had anything to say why the sentence of law should not be imposed against him/her and the defendant having had his/her say or had nothing to say, it is the judgment and sentence of the Court as fol |
| | The Defendant is sentenced to the custody of _10_ year(s); _____ month( The Department of Corrections for a period of _____ to serve. day(s). split |
| | The following costs are assessed against the defendant: |
| | [ ]  Costs of Court          [ ]  Victim's Compensation $ |
| | [ ]  Fine $          [ ]  Fair Trial Tax Fund $ |
| | [ ]  Restitution to the victim(s) $ |
| | [ ]  Drug Demand Reduction Act Assessment $ |
| | [ ✓ ]  The payment of Court ordered monies shall be a condition of parole, early release, S.I.R. and work release. |
| | [ ]  The Clerk is authorized to accept part payments for all Court ordered _____ per mo. monies. First payment due on _____ |
| | [ ✓ ]  The sentence is to be concurrent with the sentence imposed in Case number _____ |
| | [ ✓ ]  The defendant is given credit for all of the actual time spent incarcerated awaiting trial of this case unless he was serving time fo another offense. |
| | [ ]  The defendants application for probation is accepted and the Probatio Office is ordered to make an investigation and report its findings to the Court. |
| | _____<br>Circuit Judge |

**A**

| State of Alabama<br>Unified Judicial System<br>Form ARAP-26 (front)   8/91 | **COURT OF CRIMINAL APPEALS**<br>**DOCKETING STATEMENT** | Criminal Appeal Number<br>11 . 0207 |
|---|---|---|

## A. GENERAL INFORMATION:

☑ CIRCUIT COURT ☐ DISTRICT COURT ☐ JUVENILE COURT OF _____ JEFFERSON _____ COUNTY

_____ DURRELL BESTER _____, Appellant

v. ☑ STATE OF ALABAMA          ☐ MUNICIPALITY OF _____

| Case Number   CC 2008-3771.60 | Date of Complaint or Indictment | Date of Judgment/Sentence/Order<br>JUNE 17, 2011 |
|---|---|---|
| Number of Days of Trial/Hearing<br>_____ Days | Date of Notice of Appeal<br>Oral: | Written: JULY 13, 2011 |

Indigent Status Requested:  ☑ Yes  ☐ No          Indigent Status Granted:  ☑ Yes  ☐ No

## B. REPRESENTATION:

Is Attorney Appointed or Retained ? ☑ Appointed ☐ Retained          If no attorney, will appellant represent self? ☐ Yes ☑ No

| Appellant's Attorney (Appellant if pro se) Attach additional pages if necessary )<br>JOHN C. ROBBINS | Telephone Number<br>205-320-5270 |
|---|---|
| Address   2031 2nd Avenue North | City   Birmingham | State  AL | Zip Code  35203 |

## C. CODEFENDANTS: List each CODEFENDANT and the codefendant's case number:

FILED IN OFFICE

DEC 1 3 2011

JEFFERSON COUNTY CIRCUIT COURT
CRIMINAL
ANNE-MARIE ADAMS, CLERK

| Codefendant | Case Number |
|---|---|
| Codefendant | Case Number |
| Codefendant | Case Number |

## D. TYPE OF APPEAL : Please check the applicable block

1 ☐ State Conviction
2 ☑ Post-Conviction Remedy
3 ☐ Probation revocation
4 ☐ Pretrial Order
5 ☐ Contempt Adjudication
6 ☐ Municipal Conviction
7 ☐ Juvenile Transfer Order
8 ☐ Juvenile Delinquency
9 ☐ Habeas Corpus Petition
10 ☐ Other (Specify)
_____
_____
_____

## E. UNDERLYING CONVICTION/CHARGE: Regardless of the type of appeal checked in Section D, please check the box beside each offense category for which the appellant has been convicted or charged as it relates to this appeal.  Also include the applicable section of the Code of Alabama for State convictions.

1 ☐ Capital Offense - § _____
2 ☐ Homicide - § _____
3 ☐ Assault - § _____
4 ☐ Kidnapping /Unlawful Imprisonment § _____
5 ☐ Drug Possession- § _____
6 ☑ Trafficking in Drugs -§ 13A-12-231
7 ☐ Theft - § _____
8 ☐ Damage or Intrusion to Property - § _____
9 ☐ Escape -§ _____
10 ☐ Weapons/Firearms - § _____
11 ☐ Fraudulent Practices - § _____
12 ☐ Offense Against Family - § _____
13 ☐ Traffic – DUI - § _____
14 ☐ Traffic – Other - § _____
15 ☐ Miscellaneous (Specify) : _____ - § _____

## F. DEATH PENALTY:

Does this appeal involve a case where the death penalty has been imposed?   ☐ Yes  ☑ No

## G. TRANSCRIPT:

1. Will the record on appeal have a reporter's transcript? ☑ Yes ☐ No
2. If the answer to question "1" is "yes", state the date the Reporter's Transcript Order was filed. _____ 12-13-2011 _____
3. If the answer to question "1" is "no":
   (a) will a stipulation of facts be filed with the circuit clerk? ☐ Yes ☐ No
   (b) will the parties stipulate that only questions of law are involved and will the trial court certify the questions?   ☐ Yes ☐ No

NOTE: If the appeal is from the district or juvenile court and the answer to question "1" is "No", then a positive Response is required for question 3(a) or 3(b).

| From ARAP-26 (back) | 8/91 | COURT OF CRIMINAL APPEALS DOCKETING STATEMENT |

**H. POST-JUDGMENT MOTIONS:** List all post-judgment motions by date of filing, type, and date of disposition (whether by trial court order or by the provisions of Rule 20.3 and 24.4 9(ARCrP))

| DATE OF FILING | | | TYPE OF POST-JUDGMENT MOTION | DATE OF DISPOSITION | | |
|---|---|---|---|---|---|---|
| Month | Day | Year | | Month | Day | Year |
| 12 | 9 | 2010 | Rule 32 Petition challenging his sentence | 6 | 21 | 2011 |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**I. NATURE OF THE CASE:** Without argument, briefly summarize the facts of the case

The trial court sentenced the Defendant on a trafficking in cocaine case to life without the possibility of parole even though the Defendant did not have any prior Class A felony convictions.

**J. ISSUE(S) ON APPEAL:** Briefly state the anticipated issues that will be presented on appeal. (Attach additional pages if necessary)

Whether the trial court abused its discretion by sentencing the Defendant to life without the possibility of parole when the Defendant did not have any prior Class A felony convictions.

Whether the Defendant's sentence is cruel and unusual punishment under the facts of this case in violation of both the State and Federal Constitutions.

**K. SIGNATURE:**

12-13-2011

Date

Signature of Attorney/Party Filing this Form

| State of Alabama<br>Unified Judicial System<br><br>Form ARAP-1C       8/91 | REPORTER'S TRANSCRIPT ORDER – CRIMINAL<br>See Rules 10(c) and 11(b) of the<br>Alabama Rules of Appellate Procedure (A.R.App.P) | Criminal Appeal Number<br><br>11 - 0207 |
|---|---|---|

**TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.**

[✓] CIRCUIT COURT [ ] DISTRICT COURT [ ] JUVENILE COURT OF _____ **JEFFERSON** _____ COUNTY

**DURRELL BESTER** , Appellant

v. [✓] STATE OF ALABAMA  [ ] MUNICIPALITY OF _____

| Case Number        CC 2008-3771.60 | Date of Judgment/Sentence/Order        6/17/2011 |
|---|---|
| Date of Notice of Appeal<br>Oral:                    Written:        7/13/2011 | Indigent Status Granted:<br>[✓] Yes   [ ] No |

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY (1)THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR (2) THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE / DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-12-72, *CODE OF ALABAMA 1975*).

| _____ Signature | _____ Date | _____ Print or Type Name |
|---|---|---|

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R.App.P.)):

**MARK PROCEEDINGS REQUESTED:**

A. [ ] **TRIAL PROCEEDINGS** – Although this designation will include the judgment and sentence proceedings, a transcript of the organization of the jury and arguments of counsel must be designated separately.

B. [ ] **ORGANIZATION OF THE JURY** – This designation will include voir dire examination and challenges for cause. Note that in noncapital cases the voir dire of the jury will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)

C. [ ] **ARGUMENTS OF COUNSEL** – Note that in noncapital cases the arguments of counsel will not be recorded unless the trial judge so directs. (See Rule 19.4, ArCrP.)

FILED IN OFFICE

DEC 1 3 2011

JEFFERSON COUNTY CIRCUIT COURT
CRIMINAL
ANNE-MARIE ADAMS, CLERK

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY):

| | ADDITIONAL PROCEEDINGS REQUESTED | DATE | COURT REPORTER(S) |
|---|---|---|---|
| D. | Hearing on Rule 32 | 6/21/2011 | Alicia Martin |
| E. | Sentencing hearing | 4/8/2009 | Alicia Martin |
| F. | | | |
| G. | | | |

**IMPORT NOTICE :** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY (1) THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR (2) THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT STATUS HAS NOT BEEN REVOKED; OR, (3) THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS.

| _____ Signature | 12-13-2011 Date | John C Robbins _____ Print or Type Name |
|---|---|---|

DISTRIBUTION : Original filed with Clerk of Trial Court and copies mailed to: (1) Clerk of the Court of Criminal Appeals, (2) the District Attorney, (3) the Attorney General or the municipal prosecutor in lieu of the District Attorney and the Attorney General if the appeal is from a municipal conviction, and (4) to each Court Reporter who reported proceedings designated for inclusion in the reporter's transcript.

1                 STATE OF ALABAMA

2               IN THE CIRCUIT COURT

3          OF THE TENTH JUDICIAL CIRCUIT

4         FOR JEFFERSON COUNTY, ALABAMA

5             CRIMINAL DIVISION

6

7  DURRELL BESTER,         **ORIGINAL**

8

9    APPELLANT,

10

11  VS.           Case Numbers:  CC2008-3771.60

12                     &amp;

13                    CC2008-3772.60

14  STATE OF ALABAMA,

15             **FILED IN OFFICE**

16    APPELLEE.      **JAN 27 2012**

17         JEFFERSON COUNTY CIRCUIT COURT
                   CRIMINAL
            ANNE-MARIE ADAMS, CLERK

18  - - - - - - - - - - - - - - - - - - - - - - - - -

19      COURT REPORTER'S OFFICIAL TRANSCRIPT

20

21     The above-entitled case came on to be heard

22  before the Honorable Clyde E. Jones, Judge, on the

23  13th day of June, 2011 at or about 9:25 a.m.

24  before Alicia Martin, Official Court Reporter and

25  Commissioner.

```
 1                          APPEARANCES
 2

 3

 4          Representing the State of Alabama:

 5

 6

 7                  Mr. Michael Anderton,

 8              Deputy District Attorney

 9

10

11                  Mr. F. Brady Rigdon,

12              Deputy District Attorney

13

14

15

16

17

18          Representing Defendant Bester:

19

20

21                  Mr. John Robbins,

22                  Attorney at Law

23              Birmingham, Alabama

24

25
```

EXAMINATION INDEX

DEFENDANT'S WITNESSES:                                    PAGE #


DURRELL BESTER, DEFENDANT

    DIRECT BY MR. ROBBINS  .   .   .   .   .    26
    CROSS BY MR. RIGDON   .   .   .   .   .   .   37
    REDIRECT BY MR. ROBBINS   .   .   .   .    46
    RECROSS BY MR. RIGDON   .   .   .   .   .    49

1                    EXAMINATION INDEX

2

3    STATE'S WITNESSES:                                PAGE #

4

5

6    WILLIAM HOWARD BENSON, III, ESQ.

7          DIRECT BY MR. RIGDON   .   .   .   .   .      52

8          CROSS BY MR. ROBBINS   .   .   .   .   .      55

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

5

| 1 | EXHIBIT INDEX | | |
|---|---|---|---|
| 2 | | | |
| 3 | COURT'S EXHIBIT: | MAR / | ADM |
| 4 | | | |
| 5 | 1. Excerpt - Trial Record | 9 | 9 |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| 16 | | | |
| 17 | | | |
| 18 | | | |
| 19 | | | |
| 20 | | | |
| 21 | | | |
| 22 | | | |
| 23 | | | |
| 24 | | | |
| 25 | | | |

1                          EXHIBIT INDEX

2

3   DEFENDANT'S EXHIBITS:                           MAR / ADM

4

5   1.   CAS - Defendant's Prior              46      46

6   2.   CAS - Defendant's Prior              46      46

7   3.   CAS - Defendant's Prior              46      46

8   4.   CAS - Defendant's Prior              46      46

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                PROCEEDINGS

2             Birmingham, Alabama

3         June 13th, 2011 - 9:25 a.m.

4           (Whereupon, the following was

5             heard in open court with the

6             Defendant and all counsel

7             present.)

8      THE COURT:  This is State of Alabama

9  vs. Durrell Bester, Petitioner.  Case

10  number, CC08-3771.60 and 3772.60.

11      Anyone that's going to testify in this

12  Rule 32 hearing, would you please stand and

13  raise your right hand, at this time?

14           (Whereupon, those that are going

15             to testify raise their hand and

16             were duly sworn by the Court.)

17      THE COURT:  All right.  Call your first

18  witness.

19      MR. ROBBINS:  Your Honor, we would call

20  Mr. Bester to the witness stand.

21      THE COURT:  Come on up, Mr. Bester.

22           (The Defendant complies.)

23      THE COURT:  Go ahead, please, sir.

24      MR. ROBBINS:  Your Honor, can I make a

25  -- while -- he's on the witness stand, so he

can hear this. So the Court can follow
where I'm going with this.

The Defendant filed a pro se Rule 32
Petition. And in that he set out several
grounds while he -- that he believes that he
is entitled to relief on his Rule 32
Petition.

The first ground -- and I've had a
chance to review everything, and comb
through it. And I want to focus in on what
I believe to be his strongest issue on this
Rule 32. But I do want to, at least, put on
the record his issues and let the Court
understand my thoughts on them.

And the first one he put in, is a
failure to object to the oath not being
administered to the petit jury.

I believe the record is clear on that
issue. That the jurors were sworn. And I
think it's clear that if you do not object
to that, that issue was waived.

He also --

THE COURT: I would also like to offer
into the record a copy of the -- that
portion of the transcript in the case.

1          Which indicates that:   A jury venire

2   was brought in and sworn.   The indictment

3   was read.   The venire was qualified and

4   identified.   And then the case begun.

5      This can be marked as a Court's

6   Exhibit.

7      Neil, hand that to the court reporter,

8   please.

9      THE BAILIFF:   Yes, sir.

10     MR. ROBBINS:   And the record is very

11   clear on that issue.

12         (Whereupon, Court's Exhibit Number

13         1 was marked and received in to

14         evidence.)

15     MR. ROBBINS:   And the next issue he

16   raised is the failure to request a mistrial

17   when a juror disclosed to the Court that she

18   overheard spectators talking about this

19   particular case.

20      I looked at the record.   And it was

21   clear that there was an in chambers

22   discussion with the lawyers and a juror.

23   That she overheard, I believe, family

24   members of Mr. Bester talking about the

25   case.

1                    The juror came forward.   Disclosed

2       that.   And it was also determined that she

3       was an alternate.   So that juror never

4       actually set on the case.

5                    THE COURT:   All right.

6                    MR. ROBBINS:   His next issue is that he

7       asserts that the members of the jury were

8       being allowed to question witnesses.   At the

9       time, that was your practice to allow that.

10                    I think the case law is clear on that,

11       that is permissible for the Court to allow

12       jurors to -- And the jurors' questions were

13       limited to basically the police officers.

14                    Okay.

15                    The next two issues involve the

16       request -- or the assertion that Mr. Bester

17       says that he's -- that he was denied his

18       right to testify on his own behalf in this

19       case.   And that he -- did not receive.

20       Although he did not testify in this case.

21                    The Court did not give that requested

22       jury charge that if a defendant does not

23       testify they cannot take -- take any adverse

24       inference from that.

25                    And that -- that issue is -- And when

1    we take some testimony, I'm going to ask Mr.

2    Bester to get -- to address that briefly.

3         THE COURT:  Was there a request by

4    trial counsel for me to give that

5    instruction?

6         MR. ROBBINS:  There was not.  There was

7    not.  There was not.

8         And as I explained to Mr. Bester, and

9    Mr. Bester has -- has, you know, been

10   up-front with me about this.  That he had

11   discussions with his lawyer, Mr. Benson.

12        And Mr. Benson advised him that if he

13   testified, then, he was subject to

14   cross-examination.  Furthermore, he was

15   concerned --

16        THE COURT:  Concerning his four

17   felonies --

18        MR. ROBBINS:  -- he had four prior

19   felony convictions that would come in, as

20   far as impeachment would concern, so.

21        I mean, that certainly goes into

22   consideration of whether the Defendant

23   testified.

24        He also raised --

25        THE COURT:  Well, let me ask you this,

1   John.  I know that there was no request at

2   trial.  Was that issue raised on appeal,

3   also?

4          MR. ROBBINS:  Was that issue -- no.

5   No.  That issue was not raised on appeal.

6          There was three issues -- There was

7   three issues raised on appeal.  And the

8   issues raised on appeal was the first one

9   was sufficiency of the evidence argument.

10         The appellate courts went into great

11  length addressing that issue on appeal.  And

12  basically said, although this may have been

13  a circumstantial evidence case, and it was a

14  constructive possession case.  And that

15  there may have been some conflicting

16  testimony.  That was an issue for the jury

17  to decide.  And they upheld on a sufficiency

18  argument.

19         The next two issues that were raised on

20  appeal, the Court ruled were not preserved

21  for appellate review.

22         One -- one issue was, ineffective

23  assistance of trial counsel.  The Court is

24  clear that, that was kind of frowned upon

25  that being raised on direct appeal.

1           However, if there is -- you can raise

2      it on direct appeal if it is properly

3      presented to the trial court first and a

4      record is developed at that -- at that point

5      for the appellate courts to address the

6      issue.   That was not done in this case.

7           The Court of Criminal Appeals ruled

8      that issue wasn't preserved for appellate

9      review.

10          Furthermore, that the trial court ruled

11     that that issue was not properly presented

12     under the Rules of Appellate Procedure.

13     Where in order to designate an error, you

14     have an error that you say warrants relief.

15     That you have to point at that point,

16     specifically, to the record and offer some

17     authority.   Whether it's case law, whether

18     it's statutory law to support your argument.

19          That was not done in this case.   So

20     they ruled that issue was not properly

21     preserved.

22          The next issue that was raised on

23     appeal was the sentencing issue.   And --

24          THE COURT:   Well, let me say this.

25     According to the answer, and I'm going by

1     the State's response --

2          MR. ROBBINS:  Sure.

3          THE COURT:  B(1) says, the trial

4     Court's denial of Petitioner's request for

5     new trial[sic] which deprived him of his

6     right to counsel of his choice.

7          As I understand it, his objection is

8     that, during the course of the trial he

9     requested new counsel?

10          MR. ROBBINS:  He requested new counsel

11     prior to -- prior to the start of the trial.

12          And your ruling was, as you do in every

13     case that I've seen where that's come up.

14     That is not an issue that you -- that you

15     likely grant just, you know, just prior to

16     the picking of a jury.

17          THE COURT:  Okay.  All right.

18          MR. ROBBINS:  Okay.

19          So that issue was brought up prior to

20     the striking of the jury.

21          MR. RIGDON:  And Judge, just to add to

22     that.  I think his basis -- If you don't

23     mind?

24          MR. ROBBINS:  Sure.

25          MR. RIGDON:  For requesting new

1    trial[sic] was that he wasn't being

2    represented correctly.  He wasn't being

3    represented right.

4         I think Your Honor found that that

5    wasn't a sufficient basis to grant him a new

6    counsel.  Especially, I think, it was within

7    a few minutes before the trial began.

8         THE COURT:  Right.

9         Okay.

10        B(2) is, trial Court's denial of

11   Petitioner's Motion to Suppress.

12        What does he have to say on that?

13        MR. ROBBINS:  Well, Judge, that issue

14   wasn't taken up on appeal.  And I looked at

15   the record.

16        The issue, in this case, or the

17   evidence that resulted in his conviction of

18   the trafficking offense, was seized from his

19   mother's apartment.  Not his apartment.

20        THE COURT:  Uh-huh.

21        MR. ROBBINS:  Or not his house.

22        The deputies had a search warrant that

23   -- to search his house.  For which there was

24   no contraband seized in that, that was used

25   to -- in this trial.

1          The cocaine that resulted in the

2     trafficking case, was taken from his

3     mother's apartment of which she gave the

4     deputies a consent to search.  And she also

5     made some incriminating statements to her

6     son, Mr. Bester.

7          Now, she recanted some of that at

8     trial.  Hence, there became the conflict

9     which had to be resolved by the jury.

10         So the Motion to Suppress, even if you

11    entertained -- even if the Court entertained

12    the Motion to Suppress on his house, and

13    challenged the probable cause against the

14    search warrant, he had a standing issue on

15    the actual incriminating evidence.  And

16    furthermore, there was a consent -- a

17    written consent to search.

18        THE COURT:  All right.  And that issue

19    was raised on appeal, and he was denied

20    relief.

21        MR. ROBBINS:  Well, the appellate

22    courts did not address that issue.  Because

23    it was not --

24        THE COURT:  It was not raised.

25        MR. ROBBINS:  It was not raised on

1    appeal.

2        THE COURT:  Okay.

3        MR. ROBBINS:  That issue was not raised

4    on appeal.

5        THE COURT:  Okay.

6        All right.  Let's go to the next one

7    then.

8        The trial Court abused its discretion

9    in declaring Petitioner a violent offender

10   and sentencing him to life without parole.

11       MR. ROBBINS:  Now that is his -- in my

12   opinion, as a lawyer, is his best issue.

13       Because that's his best issue that has,

14   what I believe, some merit.

15       THE COURT:  All right.  Why is that?

16       MR. ROBBINS:  Okay.

17       And that's where I want to focus on, on

18   that issue.

19       He received a life sentence without

20   parole.  On the trafficking case.

21       Okay.  And the Court has based that on

22   the -- that he had four prior felony

23   convictions at the time he was convicted in

24   this case.

25       THE COURT:  He had one prior Class A

1    and he was convicted of a Class A --

2         MR. ROBBINS:  No.  No.  No --

3         THE COURT:  Did he not?

4         MR. ROBBINS:  He did not have any prior

5    Class A's.

6         He had two Class B felonies.  And two

7    Class C felonies.

8         THE COURT:  Okay.  The two Class B's

9    were:  Discharging into a --

10        MR. ROBBINS:  They were discharging

11   into an occupied --

12        THE COURT:  Dwelling.

13        MR. ROBBINS:  Vehicle.

14        THE COURT:  Vehicle.  Okay.

15        MR. ROBBINS:  Vehicle.

16        He pled guilty to those two offenses on

17   February 27th of 2001.

18        THE COURT:  Uh-huh.

19        MR. ROBBINS:  And as part of a packaged

20   deal, and I think the two marijuana cases

21   were -- were pled a couple months later in

22   May.

23        THE COURT:  Okay.  Hold on one second.

24        Rigdon, why do you say that he was

25   convicted of a Class A, which I know

1      trafficking is, but he had a prior

2      conviction for a Class A felony in your

3      answer?

4          MR. RIGDON:  Judge, is that --

5          THE COURT:  On the last page of your

6      response on page 7.

7          MR. RIGDON:  Okay.

8              (Whereupon, the Prosecutor is

9                reviewing documents.)

10     THE COURT:  And you say, life without

11    parole was mandated under 13A-5-9 --

12         MR. RIGDON:  On the last page --

13         THE COURT:  Uh-huh.  It's the first

14    paragraph.

15             (Whereupon, the Prosecutor is

16             reviewing documents.)

17         MR. RIGDON:  Judge, if he was not

18    convicted of a Class A, that would be an

19    error in that motion.

20         THE COURT:  All right.  Go ahead, John.

21         MR. ROBBINS:  Okay.

22         THE COURT:  You do have a list of his

23    prior felony convictions; do you not?

24         MR. ROBBINS:  Yeah.  I mean, I have

25    them.  I have them with me right now.

20

1          They are a part of the -- they are a

2     part of the trial court record.  Because

3     they were introduced as exhibits at

4     sentencing.

5          THE COURT:  Okay.

6          MR. ROBBINS:  Okay.

7          So they're a part of the record.

8          THE COURT:  And the other two are for

9     what, John?

10         I know two are for discharging.

11         MR. ROBBINS:  And two are for

12    possession of marijuana in the first-degree.

13         THE COURT:  Okay.

14         MR. ROBBINS:  And all four of them

15    were, basically, packaged into one kind of a

16    deal in which he received a ten year

17    sentence.

18         Okay.

19         And he did time for that ten.  He

20    served his ten year sentence.  And he EOSed

21    his sentence.

22         THE COURT:  Okay.

23         MR. ROBBINS:  Okay.

24         Now, so under the law, as it is

25    currently in effect is, the sentence -- On a

1   Class -- once you're convicted of a Class A

2   felony, and you have at least three prior

3   felony convictions without there being an A

4   conviction.  The Court has discretion to

5   sentence the Defendant either to life, or

6   life without.

7       It's a discretionary.  It's a

8   discretionary issue.  And this is tantamount

9   to a Kirby issue.

10      Okay.

11      Where the Court made the changes in the

12  Habitual Offender Law.  And made it

13  retroactive.  And courts can go back and

14  resentence defendants who either got a life

15  sentence or a life without sentence, if they

16  were sentenced prior to the amendment

17  changing the Habitual Offender Law.

18      And what the courts looked at, and if

19  you look at the whole case, Judge, the Court

20  looked at that, you know, life without, one

21  of those things is he's a violent offender?

22      Is he a violent offender?

23      THE COURT:  Well, there's no doubt in

24  my mind that he's a violent offender.

25      MR. ROBBINS:  But the courts --

1          THE COURT:  Looking at his record.

2          He has two discharging a firearm

3     convictions.

4          And I mean, this is a trafficking

5     conviction where, as I recall the testimony,

6     he was trafficking dope out of his mother's

7     house.

8          He could have gotten his mother killed.

9     And anybody else that was there.

10         So it's no doubt in my mind that this

11    Court views him as a dangerous offender.

12         MR. ROBBINS:  Well, and --

13         THE COURT:  A violent offender.

14         MR. ROBBINS:  And Judge, with all due

15    respect, is the courts have said just

16    labeling somebody a violent offender based

17    upon the name that -- charge is the courts

18    says you need to look further into -- into

19    his background.

20         Just because he has a violent offense,

21    doesn't mean the courts are going to

22    construe that -- him to be a violent

23    offender which would not entitle him to

24    relief.

25         And that's what I mean --

1    THE COURT: Well, I look at the facts

2 of the case that's listed in his presentence

3 report. Dealing with this incident

4 occurring out of his mother's house. And he

5 was dealing probably unbeknownst to his

6 mother.

7    He had a bag containing approximately

8 75 grams of crack and powder cocaine, and a

9 set of digital scales.

10   So there's no -- Plastic baggies.

11 Digital scales. Pyrex measuring cup with

12 cocaine residue.

13   And then, if you look at this -- his

14 history, his sentencing -- I'm sorry. His

15 arrest history.

16      (Whereupon, the Court is reviewing

17      documents.)

18   THE COURT: Not only do you have the

19 offenses that we've talked about, but you

20 have various other dangerous offenses.

21   Such as: Assault first, discharging a

22 gun in an occupied building, attempted

23 murder, shooting into an occupied building.

24 Another attempted murder.

25   All of those things.

1          MR. ROBBINS: Well, and Judge, but the

2     offenses that you just referred to resulted

3     in no convictions. And really no

4     prosecutions.

5          THE COURT: I agree.

6          MR. ROBBINS: They resulted in none of

7     that, okay.

8          But if you look at the -- the two

9     discharging a gun into an occupied vehicle.

10          Those charges date back to 1999.

11          THE COURT: Uh-huh.

12          MR. ROBBINS: They date back to 1999.

13          THE COURT: Okay.

14          MR. ROBBINS: And if you look at the

15     facts of that case, those cases, they're not

16     so egregious that anybody had the -- had a

17     chance of being hurt.

18          THE COURT: All right.

19          State, tell me something about these

20     two shooting into an occupied vehicle cases

21     that he was convicted of.

22          Tell me something about the facts.

23          MR. RIGDON: I don't have any

24     information on the facts of the two priors

25     which are in front of me, Judge.

```
 1          THE COURT:  Why?
 2          MR. RIGDON:  We just looked up what his
 3    priors were.  And what the current
 4    conviction was based on.
 5          But, Judge, we have not gone back and
 6    looked into the information on the actual
 7    priors.
 8          THE COURT:  All right.
 9          MR. RIGDON:  I know what charge they
10    were.
11          THE COURT:  All right.  You can
12    continue, John.
13          MR. ROBBINS:  Judge --
14          THE COURT:  All right.  So you want to
15    offer some testimony --
16          MR. ROBBINS:  Yeah.  I was gonna -- I
17    wanted to talk about that --
18          THE COURT:  All right.
19          Yeah, let's go to testimony.  Then hear
20    what arguments y'all have.
21          MR. ROBBINS:  Okay.
22                   DURRELL BESTER,
23          A witness on his own behalf,
24    Having already been duly sworn by the Court,
25                   Testified as follows:
```

1                    DIRECT EXAMINATION

2   BY MR. ROBBINS:

3   Q.    Would you state your name for the record?

4   A.    Durrell Bester.

5   Q.    All right.  Mr. Bester, how old are you?

6   A.    █.

7   Q.    Okay.  And you are currently serving a life

8   without sentence, correct?

9   A.    Yes.

10  Q.    Okay.  Now, going back to 19 -- 1999.

11       How old were you when you were arrested on

12  those two offenses where you pled guilty to

13  discharging a firearm into an occupied vehicle?

14  A.    I was █.

15  Q.    You were █ at the time.

16       Okay.  At that time, were you in school?

17  A.    Yes.

18  Q.    Okay.  What school were you attending?

19  A.    Jess Lenier.

20  Q.    Okay.  And what grade were you in?

21  A.    I was in the █.

22  Q.    Okay.  Were you in any special-ed classes?

23  A.    Yes.

24  Q.    Okay.  What type of special-ed classes were

25  you in?

1  A.    I can't really remember.  Too many of 'em.

2  Q.    Okay.  Were you -- were you, at that time,

3  diagnosed with a mental illness?

4  A.    Yes.

5  Q.    Okay.  What is that mental illness?

6  A.    Paranoid schizophrenic and depression, and a

7  couple more other things.

8  Q.    At that time, were you being treated for --

9  A.    Yes.

10  Q.    Okay.  Where were you being treated?

11  A.    Western Mental Health Center.

12  Q.    Okay.  How long -- Do you remember when you

13  were first diagnosed with these illnesses?

14  A.    I know I was a kid.

15  Q.    Okay.  And were you receiving any monthly

16  compensations -- disability compensation?

17  A.    Yes.

18  Q.    Okay.  How long have you been on disability?

19  A.    Since I was a kid.

20  Q.    Okay.  And the incident -- the first

21  incident involving discharging a firearm into an

22  occupied vehicle.  Can you tell the Court about

23  that incident?  What led up to that incident?

24  A.    A dude had jumped on my sister.

25  Q.    What's your sister's name?

```
 1   A.     Latasha Conwell.
 2   Q.     Okay.  And how old was she?
 3   A.     She was probably about ●.
 4   Q.     Okay.  And do you remember -- you say "the
 5   dude", but do you remember this person's name?
 6   A.     Uh-huh.
 7   Q.     Okay.
 8   A.     I remember his name.
 9   Q.     What is his name?
10   A.     Ronald Jackson.
11   Q.     Okay.  And what did you do as a result of
12   Ronald Jackson, when you say "jumping" on your
13   sister?
14   A.     I had seen his car.  It was.  I asked her
15   what kind of car it was, and I seen the car parked,
16   and I just shot the car.
17   Q.     Okay.  Why did you shoot the car?
18   A.     I was mad.
19   Q.     Okay.  Was anybody in the car, at the time?
20   A.     No.
21   Q.     Okay.  Did you attempt to tell your lawyer
22   then about that?
23   A.     Yes.
24   Q.     Okay.  Do you remember who your lawyer was?
25   A.     Jeff Hood.
```

29

1  Q.    Okay.  And you told Mr. Hood that you shot
2  the vehicle, but it was not occupied?
3  A.    Yes.
4  Q.    Okay.
5      Now, the other charge, shooting into an
6  occupied vehicle, that you pled guilty to on
7  February 27th, 2001.  Do you know any of the facts
8  of that case?
9  A.    Not really.  But I just know I was charged
10  with it.  And I just took the deal because my
11  lawyer told me it was the best deal for me to get.
12      Because he told me if I was found guilty on
13  one, I was going to be guilty on all of them.  So.
14  Q.    Okay.  So this second offense, are you
15  saying you did that?
16  A.    No, I ain't do that.
17  Q.    Okay.  But you pled guilty to it because it
18  was a packaged deal?
19  A.    Yes.
20  Q.    Okay.  That you were afraid of being
21  convicted?
22  A.    Uh-huh.
23  Q.    And getting more than ten years?
24  A.    Yes.
25  Q.    Okay.

```
 1          Now, once -- Did you do -- did you go to
 2   prison?  Did you actually go to prison on those
 3   cases --
 4   A.    Yes.  Yes, I did.
 5   Q.    You received what kind of sentence?
 6   A.    A ten year sentence.
 7   Q.    Okay.  Do you remember what prison you went
 8   to?
 9   A.    Bullock.
10         I stayed at Bullock for two and a half
11   years.  And I went to Elmore for eight months, and
12   went to work release.
13   Q.    Okay.
14             THE COURT:  Now, let me make sure I
15         understand something.
16             Both of the discharging cases occurred
17         relatively close in time, and he pled guilty
18         on both cases, and received a packaged deal
19         of ten years "cc" in each case?
20             MR. ROBBINS:  Yes.
21             THE COURT:  Is that correct?
22             MR. ROBBINS:  Okay --
23             THE COURT:  Both sides agree on that?
24             MR. ROBBINS:  One of the offenses --
25         They both go back to 1999, Judge.  And I
```

1    believe one alleges -- was February 12th of

2    1999.

3              (Whereupon, defense counsel is

4              reviewing documents.)

5         MR. ROBBINS:  And the other one, I

6    believe is --

7         THE COURT:  It says February 22nd[sic],

8    '01.

9         MR. ROBBINS:  That's when they pled

10   guilty.

11        THE COURT:  Okay.

12        MR. ROBBINS:  That's when he pled

13   guilty.  February 27th of '01.  He pled

14   guilty.

15        The date of the offense would be,

16   referring to the first one, it was February

17   of '99.  And the other one, I believe, is

18   May 16th of 1999.

19        THE COURT:  Okay.

20        MR. ROBBINS:  It's in close proximity

21   in months.  But they were resolved as a

22   packaged deal.

23        THE COURT:  Okay.

24        MR. ROBBINS:  In February of 2001, also

25   with those marijuana -- those marijuana

1    cases.

2         THE COURT:  Well, it bothers me that he

3    doesn't remember the case involving him

4    shooting into an occupied vehicle.

5         I mean, that's something that you don't

6    forget.  When you shoot into an occupied

7    vehicle.

8         MR. ROBBINS:  Well --

9         THE COURT:  And I'm just saying.  You

10   know, you don't have to address it at all.

11        I'm just telling you that.

12        MR. ROBBINS:  He remembers one.

13        THE COURT:  Well, I understand he

14   remembers the one where nobody's in the car.

15   But then he's telling me he doesn't remember

16   the one where somebody is in the car?

17        MR. ROBBINS:  Well, he remembers the

18   one that he did.

19        What he's saying is, the other one he

20   didn't do.  Has no memory of that.  But

21   accepted it because it was a package --

22        THE COURT:  Okay.

23        All right.  Move along.

24   BY MR. ROBBINS:

25   Q.   Okay.  And while you were -- You first went

1   to Bullock?

2   A.   Uh-huh.

3   Q.   Correct?

4   A.   Yes.

5   Q.   Okay.  Did you complete any programs --

6   A.   Yes.

7   Q.   -- while you were at Bullock?

8        Please tell the Court what programs you

9   completed.

10  A.   Anger management.  And SAP Program.

11  Q.   Okay.  Did you successfully complete them?

12  A.   Yes.

13  Q.   Okay.  Now, while you were at Bullock did

14  you receive any disciplinaries?

15  A.   No.

16  Q.   Okay.  So at Bullock you had a clean prison

17  record?

18  A.   Yes.

19  Q.   Okay.  You went from Bullock to where?

20  A.   Elmore.

21  Q.   Okay.  At Elmore did you complete any

22  programs?

23  A.   They ain't have no programs.  It's an honor

24  camp, a work camp.

25  Q.   It's an honor work camp?

1    A.    Uh-huh.

2    Q.    Okay.  While you were at Elmore, did you

3    receive any disciplinaries?

4    A.    No.

5    Q.    Okay.  Did you have any -- Did you have a

6    clean prison record there?

7    A.    Yes.

8    Q.    Okay.  After you -- you went from Elmore to

9    work release?

10   A.    Yes.

11   Q.    Where was the work release?

12   A.    Bullock.

13   Q.    Okay.  You went back to Bullock Work

14   Release?

15   A.    Yes.  There's a work release across from the

16   prison.

17   Q.    Okay.  And did you have a job?

18   A.    Yes.

19   Q.    Okay.  Where were you working?

20   A.    In Troy, Alabama.  HB&G.

21   Q.    Okay.  Doing what?

22   A.    Boxing columns.

23   Q.    Okay.  And how long did you have that job?

24   A.    About three months.

25   Q.    Okay.  And did you -- And that's working in

1  the free world?

2  A.    Yes.

3  Q.    Did you have any disciplinary while you were

4  on work release?

5  A.    Nope.

6  Q.    Get written up for anything while you were

7  on --

8  A.    No.

9  Q.    Okay.  And that sentence, were you paroled

10  or did you EOS your sentence --

11  A.    I EOSed.

12  Q.    Okay.  When you EOSed your sentence, where

13  did you go?

14  A.    I went home.

15  Q.    And where is home?

16  A.    Birmingham.  With my mom.

17  Q.    And when you got back -- you got back to

18  Birmingham in what year?

19  A.    2004.

20  Q.    When you got back to Birmingham, were you

21  able to get a job?

22  A.    No.  Not for real.  I tried.  I got one

23  little job with Sterilite for a minute.

24  Q.    Okay.  Doing what?

25  A.    Different little things.  Basically, just

1    working with plastic and stuff.

2    Q.    Okay.  And how long did you have that job?

3    A.    I had it for a couple weeks.

4    Q.    Okay.  And what happened to that job?

5    A.    I ended up losing it.

6    Q.    Okay.  Do you know why?

7    A.    I couldn't have a ride to take me to work

8    and, you know, got there properly.

9    Q.    Okay.  So you had transportation problems?

10   A.    Yes.

11   Q.    Did you have a driver's license?

12              THE COURT:  I don't care about all of

13         that --

14              MR. RIGDON:  Judge, I'm going to object

15         to relevance --

16              THE COURT:  -- Let's talk about

17         something important.

18              MR. RIGDON:  -- to this line of --

19              THE COURT:  Well, you should have been

20         objecting.

21              Let's get to something that's material

22         to the issue before me.

23              MR. ROBBINS:  Judge, I think this is

24         important, understanding his background.

25              Understanding his background.

1          THE COURT:   John, get to something
2      that's relevant to the issue before me.
3               (Brief pause.)
4  BY MR. ROBBINS:
5  Q.    From the time you were released from prison
6  until being arrested on this offense, had you been
7  charged with any felony offenses?
8  A.    No.
9  Q.    Okay.
10          THE COURT:   All right.  Anything else?
11               (Pause.)
12          MR. ROBBINS:   No, Judge, not on this
13      issue.
14          THE COURT:   All right.  Cross?
15               CROSS-EXAMINATION
16  BY MR. RIGDON:
17  Q.    Mr. Bester, I'm going to go back to this
18  first firing incident back in, you say 1999?
19  A.    Uh-huh.
20  Q.    Now, tell me what you recall about what
21  created that.  What caused that?
22  A.    What caused it?
23  Q.    Yeah.  What lead to that?
24  A.    Which one you talking about?
25  Q.    The first one.

38

1   A.   My sister had got jumped on.

2   Q.   Your sister had been jumped on?

3   A.   Uh-huh.

4   Q.   Do you know who jumped on her?

5   A.   Beat up?

6   Q.   Who did that?

7   A.   A dude named Ronald.

8   Q.   Okay.  Well, when did that happen?

9   A.   That was in '98.

10  Q.   Okay.  Do you know what day it was?

11  A.   I can't remember exactly what day it was.

12  Q.   Okay.  Now, what did you do after that?

13  A.   She described the car to me.  And I just seen

14  where the car was.  And I went over there and I

15  shot the car.

16  Q.   Did she call you up?

17  A.   Did she call me up?

18  Q.   Did she call you and tell you she had been

19  jumped on?

20  A.   No, I had seen her.

21  Q.   You were there, and you saw it?

22  A.   Naw.  I seen her.

23  Q.   You saw her?

24  A.   Yeah.

25  Q.   And she told you what the car looked like?

1  A.    Yep.

2  Q.    And then what did you do?

3  A.    I went over there where the car was.  And the

4  car was parked, and I shot at it.

5  Q.    With your gun?

6  A.    Yes.

7  Q.    How close in proximity in time between when

8  she told you and when you went over there did that

9  occur?

10  A.    It was probably like, for real, like about a

11  day or two later.

12  Q.    A day or two later, you walked -- you went

13  over to that person's house?

14  A.    Yeah.

15  Q.    And you just got your gun and fired into

16  that car?

17  A.    Yes.

18  Q.    And nobody was in the car, you're saying?

19  A.    Nobody was in the car.

20  Q.    And I'm guessing you were arrested

21  thereafter?

22  A.    Yes.

23  Q.    And charged with firing into an occupied

24  vehicle?

25  A.    Yes.

1    Q.    And you pled guilty to firing into an
2    occupied vehicle?
3    A.    Yes.
4    Q.    Although you're saying it was not occupied?
5    A.    Huh?
6    Q.    You're saying it was not occupied?
7    A.    The vehicle?
8          Naw, it wasn't occupied.
9    Q.    Okay.  And you were charged a second time
10   for an incident which occurred two years later?
11   A.    Uh-huh.
12   Q.    Okay.  What happened in that --
13         MR. ROBBINS:  Judge, we object, that
14         he's getting confused.  It wasn't two years
15         later.  It was a couple months later.
16         According to -- according to the court
17         record on that offense, it was a couple
18         months later.
19         MR. RIGDON:  I thought I --
20         THE COURT:  Well, I have one that's
21         2/12/99 and one that's 5/16/99.
22         MR. RIGDON:  Okay.
23         THE COURT:  Three months later --
24         MR. RIGDON:  I apologize.  I may have
25         misunderstood.

1    BY MR. RIGDON:

2    Q.    You were charged for an incident which

3    occurred several months following the first

4    incident?

5    A.    Yes.

6    Q.    Okay.  And what was that a result of?

7    A.    All I know was that I was charged with

8    shooting a occupied dwelling.

9    Q.    An occupied dwelling?

10   A.    Yes.

11   Q.    Not a vehicle, but a dwelling?

12   A.    Uh-huh.

13   Q.    And you have, as I understand it, you have

14   no recollection of why the charges were brought?

15   A.    No, I did not.

16   Q.    So you've never fired a gun into an occupied

17   dwelling?

18   A.    No.

19   Q.    Never done it?

20   A.    (No response.)

21   Q.    Yet you were charged?

22   A.    Yes.

23   Q.    And you agreed that you did it?

24   A.    (No response.)

25   Q.    You pled guilty?

1  A.     Yeah, I did the first one.  But I don't know
2  where the second one come from.
3  Q.     Did you ever ask anybody that arrested you,
4  why have I been arrested for shooting into a
5  house?
6  A.     Yes.
7  Q.     What'd they tell you?
8  A.     They was telling me a girl had said I shot in
9  her house or something.
10 Q.     You said a girl had shot into your house?
11 A.     Naw.  Said I shot into her house.
12 Q.     Okay.  A girl -- Do you know what girl?
13 A.     Shanta.  I don't even know her name.  Shanta
14 or something.
15 Q.     Had said that you shot into her house?
16 A.     Uh-huh.
17 Q.     Okay.  And so you pled guilty to shooting a
18 firearm into an occupied dwelling?
19 A.     Uh-huh.
20         MR. ROBBINS:  Judge, we object to that.
21     That's not what he pled guilty to.
22         THE COURT:  Well, John you can offer
23     the --
24         MR. ROBBINS:  Well, it's part of the
25     record --

```
 1              THE COURT:  -- record.
 2              MR. ROBBINS:  I mean, it's part of the
 3         record on page --
 4              THE COURT:  It's not.
 5              It hadn't been admitted into evidence
 6         in this hearing.
 7              MR. ROBBINS:  Sure.
 8              THE COURT:  So if you wish to offer it
 9         after Prosecutor --
10              MR. ROBBINS:  Sure.  And I don't mean
11         to interrupt.
12              THE COURT:  -- finishes, you can.
13                   (Brief pause.)
14    BY MR. RIGDON:
15    Q.    So let me make sure I'm clear on this.
16         This happened a few months after the firing
17    incident into a vehicle; is that correct?
18    A.    Yes.
19    Q.    And you're arrested -- What you were told by
20    an officer, is that you were arrested for firing a
21    gun into a house?
22    A.    Yeah.
23    Q.    An occupied house?
24    A.    Uh-huh.
25    Q.    And what was that girl's name?
```

```
 1   A.   Shanta.
 2   Q.   Okay.  And you have no recollection of that?
 3   A.   No.
 4   Q.   Okay.
 5              (Brief pause.)
 6            THE COURT:  Did you stand in front of a
 7        judge and admit to shooting into this
 8        Shanta's house?
 9            THE DEFENDANT:  No.
10            THE COURT:  Didn't you plead guilty to
11        the incident?
12            THE DEFENDANT:  Yes.  I plead guilty to
13        the time that they gave me.  They told me
14        they was going to run everything.
15            THE COURT:  Well, we don't just give
16        folks time.
17            You have to stand in front of the
18        judge, and the prosecutor have to tell the
19        judge what the facts would be in the case.
20            And then the judge asks you, is that
21        what you did.
22            And if you -- you must say "yes, sir"
23        for him to continue with taking your plea.
24            If you say "no, sir", the judge won't
25        take your plea.
```

1        And so I'm asking you, did you stand in
2    front of a judge and admit to shooting into
3    that lady's house; the Shanta lady.
4        THE DEFENDANT: No, I did not.
5        THE COURT: All right. Go ahead.
6        MR. RIGDON: Okay.
7            (Pause.)
8        MR. RIGDON: Judge, as far as the
9    original line of questioning, pertaining
10   mainly to his work history, his prison
11   history and his sentencing.
12       He hasn't gone into any other issues.
13   So as far as my cross-examination, I'm going
14   to stop here unless --
15       THE COURT: All right.
16       MR. RIGDON: -- he intends to go into
17   other issues.
18       THE COURT: All right. That'll be
19   fine.
20       All right. You got any other issues
21   you want to present something on?
22       MR. ROBBINS: Judge, I want to --
23       THE COURT: You want to offer those two
24   priors?
25       MR. ROBBINS: These are the two

```
 1          priors --
 2               THE COURT:  Okay.  Offer them as --
 3               MR. ROBBINS:  Or actually --
 4               THE COURT:  -- Petitioner's Exhibits.
 5               MR. ROBBINS:  I'm going to admit all
 6          four.  These are in the trial record.
 7               THE COURT:  All right.
 8               We'll mark those as Petitioner's
 9          Exhibits 1, 2, 3, and 4.
10                    (Whereupon, Petitioner's Exhibit
11                    Numbers 1, 2, 3 and 4 were marked
12                    for identification.)
13               THE COURT:  And they are admitted in
14          this hearing.
15                    (Whereupon, Petitioner's Exhibit
16                    Numbers 1, 2, 3 and 4 were
17                    received into evidence.)
18                    REDIRECT EXAMINATION
19     BY MR. ROBBINS:
20     Q.    Durrell --
21               MR. ROBBINS:  And Your Honor, if you
22          can just give me a little leeway just so we
23          can get just develop a brief record on his
24          one issue that he raised, that was not even
25          taken up on direct appeal.
```

1  Q.    You put in your Petition, that you were

2  denied the right to testify; is that true?

3  A.    Yes.

4  Q.    Okay.  Did you have a discussion with your

5  lawyer about that?

6  A.    Yes.

7  Q.    Okay.  Do you recall what was -- what the

8  discussions were?

9  A.    I was asking him about why he was letting me

10  know at the last minute that he waived for the

11  search warrant or something.

12       He ain't let me know that.  That they going

13  to trial.  And all this time I had been asking him.

14  Q.    Okay.  Now, is -- you put in your --

15  Durrell, you put in your Petition that you wanted

16  to testify?

17  A.    Yes.

18  Q.    Okay.  And that you weren't -- yet you

19  weren't called as a witness?

20  A.    Yes.

21  Q.    Okay.  Did you have a discussion with your

22  lawyer about you testifying at trial?

23  A.    Yes.

24  Q.    Okay.  Could you tell us about that

25  discussion?

1  A.    I was asking him about me testifying.  And he

2  told me, it wouldn't be a good idea or something.

3        He was like, everybody will know of your

4  prior convictions and things like that.  So.

5  Q.    Did you understand what he meant by that?

6  A.    Yes.

7  Q.    Okay.  Tell me what your understanding was.

8  A.    I guess he was saying like they gonna bring

9  up my history or something.  If I get on the stand,

10  Q.    Okay.  And after you had that discussion,

11  okay -- Excuse me, before we go on.

12        Your history, was that made clear to you,

13  talking about your felony, prior felony

14  convictions?

15  A.    Yes.

16  Q.    Okay.

17        Did your lawyer tell you that if you

18  testified that the prosecution could bring out the

19  fact that you've been previously convicted four

20  times of a felony conviction?

21  A.    Yes.

22  Q.    Okay.  So after you had that discussion, did

23  you -- did you request to testify?

24  A.    Yes.

25  Q.    You still wanted to testify?

```
 1   A.    Yes.  I did.
 2   Q.    Okay.  And did you tell your lawyer that?
 3   A.    Yes.
 4   Q.    Okay.  And what was your lawyer's response?
 5   A.    The same thing.
 6         He told me that it wouldn't be a good idea.
 7                    (Brief pause.)
 8   Q.    Okay.  Did you attempt to bring it to the
 9   Court's attention that you wanted to testify?
10   A.    Whatcha mean like?
11   Q.    Well, did you tell the Judge?
12   A.    No --
13   Q.    That you wanted to testify?
14   A.    No, I didn't.
15                    (Brief pause.)
16         MR. ROBBINS:  I don't have anything
17         else, Your Honor.
18             THE COURT:  State?
19                 RECROSS-EXAMINATION
20   BY MR. RIGDON:
21   Q.    Mr. Bester, is it fair to say that your
22   attorney advised you that you have the right to
23   testify on your own behalf?
24   A.    No.
25   Q.    He never told you, you had the right?
```

 1  A.    Nope.

 2  Q.    Did you ever ask him if you could testify?

 3  A.    I just asked him that, you know.  Yeah --

 4  Q.    And his response was, that it would not be

 5  in your best interest --

 6  A.    Yes.

 7  Q.    -- is that correct?

 8  A.    Yes.

 9  Q.    Do you believe he was looking after your

10  best interest?

11  A.    Yes.  That what I felt like.

12  Q.    Okay.  And he told you, as I understand what

13  you've said, that if you were to testify, then

14  your four prior convictions come into evidence?

15  A.    Yes.

16  Q.    And the jury hears about those?

17  A.    Yes.

18  Q.    And that wouldn't look good, would it?

19  A.    Yes.

20  Q.    Okay.  So he was looking after your best

21  interest?

22  A.    That's what I thought he was doing.

23  Q.    Okay.  And y'all had that conversation?

24  A.    Yes.

25  Q.    Okay.  And just as I understand it, you

```
 1   never told the Court, or advised the Court, that
 2   you wanted to testify and you were not being
 3   allowed to do so; is that correct?
 4   A.    No, I ain't never say nothing to the Judge or
 5   nothing like that.  I just said it to him.
 6   Q.    Okay.
 7   A.    You know, because I'm thinking he's my best
 8   interest, you know.
 9   Q.    Okay.
10         MR. RIGDON:  I have no additional
11         questions, Judge.
12         MR. ROBBINS:  I have nothing further on
13         that issue.
14         THE COURT:  All right, Mr. Bester, you
15         can step down.
16              (Whereupon, the Defendant
17               complies.)
18         THE COURT:  All right.  You rest?
19         MR. ROBBINS:  Your Honor, yes.
20         THE COURT:  All right.  Call your
21         witness.
22         MR. RIGDON:  The State calls Billy
23         Benson.
24         THE COURT:  All right.  Attorney Billy
25         Benson.
```

```
 1                    (Whereupon, the witness was
 2                    brought to the witness stand.)
 3              THE COURT:  All right.  You're a Court
 4         Officer.
 5              You may proceed, Brady.
 6         WILLIAM HOWARD BENSON, III, Esq.
 7              A witness for the State,
 8       Having already been duly sworn by the Court,
 9                    Testified as follows:
10                    DIRECT EXAMINATION
11  BY MR. RIGDON:
12  Q.    Mr. Benson, would you please state your full
13  name for the record?
14  A.    It's William Howard Benson, III.
15  Q.    Are you currently licensed to practice law
16  in Alabama?
17  A.    I am.
18  Q.    Okay.  Do you recall representing Mr.
19  Durrell Bester?
20  A.    I do.
21  Q.    Okay.  Do you know when that occurred?
22  A.    It's been a couple of years.
23  Q.    Okay.  What kind of case was that?
24  A.    It was a trafficking cocaine.  I believe
25  there was a paraphernalia charge.
```

1    Q.    Were you appointed or were you hired by him
2    or his family?
3    A.    I was appointed.
4    Q.    Okay.  Now, there's been an issue in a Rule
5    32, I think you're aware of, that he's alleged
6    something to do with not being able or permitted
7    to testify on his own behalf at trial; do you
8    recall that?
9    A.    As that being the issue?
10   Q.    Right.
11   A.    Yes.
12   Q.    Do you recall him asking you if he can
13   testify at trial?
14   A.    Yes, I do.
15   Q.    Okay.  When did he ask you that?
16   A.    Well, I mean, we had discussions prior to
17   trial and during the trial.
18         And after his mother testified, we asked the
19   Court for a moment to discuss that option.
20   Q.    So this conversation occurred on numerous --
21   numerous times?
22   A.    Yes.
23   Q.    Okay.  Prior to trial?
24   A.    During trial and prior --
25   Q.    During trial, okay.

1      Did you advise him he had the right to
2  testify?
3  A.    Yes.
4  Q.    What was his response, during trial, when
5  y'all had that discussion?
6  A.    Well, initially, he stated that he wanted to
7  testify.  And I, again, pointed out to him, you
8  know, you have four prior felonies that the jury
9  will hear if you are to testify.
10 Q.    Okay.
11 A.    I would advise you, you know, strongly not to
12 do so.
13      But, as I do with any of my clients, it is
14 your trial, if that's what you want to do, the law
15 certainly permits you to do so.  But it would be
16 against my advice.
17 Q.    Do you recall his response?
18 A.    He thought about it for a moment, and then
19 said, okay I'll just, you know, you're my attorney
20 I'll do what you --
21 Q.    Okay.
22 A.    Now, that's not a quote.
23 Q.    Right.  But basically he took your advice?
24 A.    Correct.
25 Q.    Do you recall him ever bringing it to the

```
 1  Court's attention that he wanted to testify and
 2  you weren't letting him testify?
 3  A.    No.
 4  Q.    Okay.
 5              (Brief pause.)
 6          MR. RIGDON:  I have no additional
 7       questions, Judge.
 8          THE COURT:  All right, Brady.
 9       John?
10              CROSS-EXAMINATION
11  BY MR. ROBBINS:
12  Q.    Mr. Benson, were you aware that Durrell had
13  some mental issues?
14  A.    At this time, I don't.  It sounds vaguely
15  familiar.  But I don't have any direct recollection
16  of that.
17  Q.    You're -- with your interaction with him,
18  were -- is it your impression that he was a slow
19  learner --
20          MR. RIGDON:  Judge, I'm going to object
21       to the relevancy.
22          THE COURT:  Well, John, I don't know
23       how this proceeding could really --
24          MR. ROBBINS:  Judge, I'll --
25          THE COURT:  -- it appears to be outside
```

1      of the four corners of the Petition.

2             MR. ROBBINS:  I'll withdraw that

3      question.

4             THE COURT:  Sustain the objection.

5             MR. ROBBINS:  I have no further

6      questions on this issue.

7             THE COURT:  All right, Mr. Benson, you

8      can step down.

9             (Whereupon, the witness complies.)

10            THE COURT:  All right.  Anything else

11     for the State?

12            MR. RIGDON:  I have no further

13     witnesses, Judge --

14            THE COURT:  Anything else for the

15     Petitioner?

16            MR. ROBBINS:  No, Your Honor.

17            Except, I would -- I would request that

18     -- an opportunity to brief this issue to you

19     on the sentencing issue.  So the Court

20     understands the argument that I'm trying to

21     make.

22            Which I believe is Mr. Bester's best

23     issue is the serving the life without

24     sentence under the facts of this case.

25     Which is, I think that that sentence is

1    extreme.  And you know, a life sentence

2    would be more appropriate under the facts of

3    this case.

4        There's people who have killed other

5    people that have gotten less sentences.  I'm

6    not minimizing the seriousness of drug

7    trafficking.  I'm not.

8        But a life sentence is no cakewalk

9    either.  I mean, that's a serious -- it's a

10   serious sentence in which people do serious,

11   serious time.

12       He -- I know his record looks bad.

13   But, you know, the true facts of those other

14   cases really -- don't really come to the

15   level that he's just a violent offender that

16   needs to be taken off the streets forever.

17       Even a life sentence right now, Judge,

18   even a life sentence he'd served -- he's

19   going to serve 20, 25 years.  On a life

20   sentence.

21       And, you know, that is a substantial

22   sentence.  But at least gives him hope.  It

23   gives his family hope.  It gives his

24   children some hope that, you know, one day

25   he can return to society.  And you know,

1    live out what years he has left in a

2    productive manner.

3         And I'm just saying, there are

4    murderers that get less time.  And I'm not

5    minimizing anything that relates to drug

6    trafficking.  But a life without sentence is

7    really harsh under these facts.  And the

8    Court had an opportunity, and has an

9    opportunity, I believe, to change his

10   sentence simply to a life sentence.

11        He doesn't get out.  He doesn't get out

12   of prison.  He doesn't.  He goes to prison

13   for a long time.  But at least gives him

14   hope.

15        THE COURT:  State?

16        MR. RIGDON:  Judge, I think it just

17   goes back to the Court's discretion as far

18   as sentencing.  This issue was raised on

19   appeal.  And based on that alone, I think

20   this needs to be denied.

21        It was raised on appeal.  The issues of

22   ineffective assistance were raised on

23   appeal.  Based on a Rule 32.  They can't be

24   raised in a subsequent Rule 32 Petition.

25        And Judge, as far as the previous

1    incidences, these were Bessemer cases.  And

2    I apologize again for not having more

3    information.  But I just -- I wish I could

4    speak more eloquently on what those two

5    shootings involved.  We just didn't -- we

6    didn't go get those Bessemer cases.

7        But, as the Court says, he's a violent

8    offender and he pled guilty to two

9    incidences of shooting into an occupied

10   vehicle.  There was discussion of possibly

11   shooting into a residence.

12       So Judge, you know, based on those

13   prior incidences, I think the Rule 32 should

14   be denied.

15       MR. ROBBINS:  And Judge, if I may, just

16   briefly?

17       On the sentencing issue, the sentencing

18   issue was not properly presented to the

19   appellate courts.  That is why the appellate

20   courts did not address it -- it wasn't

21   properly presented to the appellate courts.

22       The issue was really, to make an

23   argument under a discretionary statute,

24   would also make any arguments in reference

25   to how the courts look at Kirby motions, in

1     an analogous way. By analogy, that is the

2     proper way to present it. And it was never

3     presented.

4           There was not even any case law cited

5     to the courts -- to the appellate courts on

6     why this sentence was -- would have been --

7     the argument would have been an abuse of

8     discretion.

9           There was no -- there was no case law.

10    There was no, you know, legal argument made.

11    It was simply, hey, we don't like -- you

12    know, this sentence is, you know, is

13    extreme. It should be overturned.

14         And the appellate courts just said,

15    look, that's not a proper way to put this

16    issue before the court.

17         THE COURT: Well, why is it before me

18    that way? This way, if this is an improper

19    way?

20         MR. ROBBINS: Well --

21         THE COURT: I mean, why am I not

22    looking at a Kirby Motion?

23         MR. ROBBINS: Well, because -- because,

24    well it --

25         THE COURT: I mean, you know that's the

1     proper way.

2           MR. ROBBINS:  Well, the Kirby Motion

3     said that if you're sentenced -- if you're

4     sentenced -- Kirby Motions are supposed to

5     apply, by case law, to all sentencing on a

6     retroactive aspect.  People who are

7     sentenced prior to the amendment that gave

8     rise to the Kirby issue.

9           But, by --

10          THE COURT:  So you're saying his came

11    afterward --

12          MR. ROBBINS:  He came afterwards.

13          So by analogy, is what I'm saying -- is

14    what I'm asking the Court is.

15          Well, we look at, you know, the courts

16    look at Kirby issues, to -- on this --

17    whether you're a violent offender, that when

18    you are put in a position that this Court is

19    -- when deciding between life and life

20    without, is to look at it as a Kirby -- like

21    a Kirby Motion.  And not just what the

22    offense is.  But, you know, can look at his

23    prison record.  You can look at other

24    factors.

25          THE COURT:  All right.

```
 1            Let me see the lawyers in chambers.
 2                    (Whereupon, an off the record
 3                    discussion was held in chambers.)
 4                    (Whereupon, the Court and all
 5                    counsel returned back to the
 6                    courtroom where the following was
 7                    heard in open court with the
 8                    Defendant and all counsel
 9                    present.)
10            THE COURT:  Okay.  Let's come back in a
11       week.
12            But I am concerned about the severity
13       of the punishment, on one hand in this case.
14       Where as, on the other hand, he may be
15       deserving of it.  Because I am not impressed
16       with his record in no way, shape, form or
17       fashion.
18            And I definitely have not made up my
19       mind as to what I should do.
20                    (Brief pause.)
21            THE COURT:  All right.  Let's continue
22       this until -- Today is the 13th?
23            Friday, Alex?
24            Do we got a docket Friday, Neil?
25            THE BAILIFF:  We do, Your Honor.
```

1          THE COURT:  All right.  That will be

2     June -- Is that enough time, guys?  Friday

3     --

4          MR. RIGDON:  I believe so, Judge.

5          THE COURT:  Or you want me to do it to

6     Monday?  Let's do it to Monday.

7          MR. RIGDON:  Okay.

8          THE COURT:  That will be June 20th --

9          MR. ROBBINS:  Judge, can we do it

10    Friday?

11         THE COURT:  That's better for you?

12         MR. ROBBINS:  Yeah --

13         THE COURT:  Okay.  We'll do it Friday.

14    June 17th.

15         Okay.  And are y'all gonna give me

16    something or were y'all just going to look

17    at the sentence hearing?

18         MR. RIGDON:  Whatever you want us to

19    do, Judge.

20         THE COURT:  Well, I'll say this.  You

21    can do whatever you deem appropriate.

22         MR. RIGDON:  Okay.

23         THE COURT:  So if you want to write a

24    memo, a memorandum, a short, like, two,

25    three page memorandum, that's fine.  If you

```
1    don't, that's fine.
2         MR. RIGDON:  Okay.
3         THE COURT:  Okay?
4         But, if you do, let me have it before
5    Friday.  So I'll have a chance to read it.
6         Okay?
7         MR. RIGDON:  Just to be clear, Judge,
8    we're going to write something or submit
9    something based on what his priors were?
10        THE COURT:  Exactly.
11        MR. RIGDON:  Okay.
12        THE COURT:  And what the proper
13   sentence should be as, life or life without
14   parole, in this case.
15        MR. RIGDON:  Okay.
16        THE COURT:  That's what I'm interested
17   in.  All of his other --
18        And this is on the record.
19        All of the Defendant's other grounds
20   the Court finds are without merit.
21        The failure to administer the oath to
22   the jury.  I find that the record is clear
23   that the Court instructed the jury as to the
24   oath when they appeared here in open court.
25        Additionally, in Jefferson County, the
```

1     Court Administrator gives the entire jury

2     pool the Oath of Office when they come in on

3     Monday mornings at 9 a.m.

4         The second issue regarding failure to

5     request a mistrial regarding the alternate

6     juror making some statements.

7         The Court finds that that issue is

8     without merit.  That there was no harm done.

9     Or the Defendant prejudiced in any manner.

10     Due to the fact that that juror did not

11     actually sit on the jury.

12         The third issue regarding a failure to

13     object to the Court allowing the jurors to

14     ask questions.

15         The Court finds that that issue is

16     without merit.  That issue has gone up to

17     the appellate courts in the State of Alabama

18     on several occasions.  And the appellate

19     courts have ruled that I do have the

20     authority to allow jurors to ask questions

21     in cases.  So that issue is without merit.

22         The next, fourth issue, regarding the

23     Defendant being denied the right to testify.

24         The Court heard the Defendant's

25     testimony that he requested his attorney,

1   Mr. Benson, to allow him to testify. That

2   they both agreed that there was some

3   discussion about it.

4       They both agreed that Mr. Benson

5   discussed the fact that if he testified on

6   the witness stand, that the State would

7   cross-examine him as to his four prior

8   convictions. Which would basically make him

9   look like a habitual criminal to the jury.

10  And after that discussion, Mr. Benson

11  stated, and I believe him, that the

12  Defendant said that, well, I'm going to take

13  your advice and not testify. So the Court

14  finds that that issue is without merit.

15      There is another similar issue raised,

16  the fifth issue, in that it is alleged that

17  trial counsel failed to request or object to

18  the Court not giving a jury instruction on

19  the Petitioner's failure to testify.

20      There was no request made to the Court

21  to give that instruction. And therefore,

22  the Court did not have an opportunity to

23  rule on that issue. And therefore, the

24  Court finds that that issue is without merit

25  also.

1       The second set of issues, that I call
2   "Issue B".

3       The first issue regarding ineffective
4   assistance of counsel alleges that on the
5   day of trial, as I understand it, the
6   Defendant indicated that he was desirous of
7   hiring other counsel.

8       This Court has never allowed defendants
9   to put off trials on the day of trial, based
10  upon that allegation alone.

11      Additionally, there was nothing
12  presented to the Court sufficient, in the
13  Court's mind, to continue the case to
14  another date.  And the Court felt that said
15  request was simply a dilatory action, and
16  designed to simply put off the trial of the
17  case.  Accordingly, that issue has no merit.

18      B(2), would be the trial Court's denial
19  of Petitioner's Motion to Suppress.

20      The Court notes that that issue was not
21  raised on appeal.  And the Court made its
22  decision at the time.

23      And I think there was probably a
24  pretrial motion to suppress that was made in
25  that case.

1           Does anyone know?  If it was made

2   during the trial or a pretrial?

3           MR. ANDERTON:  It probably was a

4   pretrial?

5           THE COURT:  Probably was pretrial, I

6   would think.

7           And the Court having reviewed the facts

8   of this trafficking case deems that the

9   Motion to Suppress -- the denial of the

10   Motion to Suppress was the proper decision

11   in that case, according to that issue.  And

12   relief is denied on that ground.

13           The remaining issue is the issue

14   regarding the proper sentence for this

15   Defendant.  And the Court is going to allow

16   the attorneys a couple of days, about five

17   days, to Friday at 9 o'clock.  That's June

18   17th, to look into that issue.

19           To look into, at the sentencing

20   hearing, and make any arguments that they

21   wish to as to what is the proper sentencing

22   in this case, i.e. life in prison or life

23   without parole.

24           Anything further for the State?

25           MR. RIGDON:  No, Your Honor.

1          THE COURT:   Anything further for the

2     defense?

3          MR. ROBBINS:   No, Your Honor.

4          THE COURT:   All right.   We'll be

5     adjourned as to this case.

6          Thank y'all very much.

7

8               (Whereupon, at 10:30 a.m. on June

9               13th, 2011 court was adjourned

10              until June 17th, 2011 at 9:00

11              a.m.)

12

13                    * * * * * *

14

15               Birmingham, Alabama

16          June 17th, 2011 -- 9:25 a.m.

17               (Whereupon, the following was

18               heard in open court with the

19               Defendant and all counsel

20               present.)

21          THE COURT:   This is State of Alabama

22     vs. Durrell Bester.   CC08-3771.

23          Mr. Bester is here and present with his

24     counsel of record, Attorney John Robbins.

25          The State is also represented by Deputy

1  DA Brady Rigdon.

2      We are here on a continuation from a

3  prior hearing.  Which was held on Monday,

4  June 13th, 2011.  Today's date is, of

5  course, June 17th, 2011.

6      If memory serves, you all were going to

7  look into the issue of the Defendant's

8  sentence of life without parole.  And

9  whether it was based on having a prior Class

10  A felony or was not.  Or just on the Court's

11  discretion when one has three[sic] prior

12  felony convictions in the sentence for Class

13  A felony.

14      MR. ROBBINS:  That's correct, Your

15  Honor.

16      He had, at the time of sentencing, he

17  had two Class B felonies.

18      THE COURT:  Uh-huh.

19      MR. ROBBINS:  They were both

20  discharging a firearm into an occupied

21  vehicle.

22      THE COURT:  Uh-huh.

23      MR. ROBBINS:  And two Class C felonies

24  of unlawful possession of marijuana in the

25  first-degree.

1      THE COURT:  Okay.

2          MR. ROBBINS:  And all four of those

3      cases were settled.  And they were all out

4      of Bessemer.  And they were all settled in a

5      package deal which he received a ten year

6      sentence, "cc" on the two Class B felonies.

7          And I'm not sure exactly what it was on

8      the Class C felonies -- But it was all where

9      he actually went to prison and served -- and

10     completed his sentence on the ten years.

11         THE COURT:  Okay.

12         MR. ROBBINS:  That was his priors.

13         Now, his -- obviously, his current case

14     in which he was sentenced to life without

15     on, is a trafficking case.  Which was a

16     Class A felony.

17         And the Court sentenced him under the

18     current state of the law which gives the

19     Court discretion to do either a life

20     sentence or a life without sentence.  And

21     this Court, at that time, sentenced him to

22     life without.

23         And we're asking the Court to revisit

24     -- revisit that because of its just extreme

25     nature of it.  And we're not asking for you

1    to set aside the conviction.  We're asking

2    to simply, is to resentence him to a life

3    sentence.

4         That is still a very harsh, very harsh

5    sentence.  He still is going to have to

6    serve many years in prison for his conduct

7    for this particular case.  But we're just

8    asking, you know, at some point he has the

9    hope of, you know, the parole board, you

10   know, making a decision to parole him,

11   eventually, at some point in his life.  And

12   that's where we left it.

13        The two -- the two unlawful -- the two

14   discharging a firearm into an occupied

15   vehicle in Bessemer, through my discussions

16   with the Deputy District Attorney.  He

17   followed up with the DA's Office in

18   Bessemer.  And I believe that those two

19   cases started as attempted murders.  But

20   were negotiated down to discharging a

21   firearm into an occupied vehicle.  And we're

22   simply asking the Court to resentence him to

23   life, within your discretion.

24        I think that that would be appropriate.

25   And it's certainly appropriate if we look at

1    all the other trafficking cases that we

2    unfortunately see through the courts; our

3    courts here, and through federal courts, and

4    through other state courts. That a life

5    without sentence is just extremely harsh.

6    And under the circumstances, I don't think

7    it was warranted in this case.

8         And I ask that the Court to reconsider

9    that.

10        THE COURT: Thank you, John.

11        Brady?

12        MR. RIGDON: Judge, it sounds to me

13   like, the issue before the Court is, the

14   Petitioner's attempt to basically file a

15   motion to reconsider the sentence. Which I

16   believe has to be done within 30 days of the

17   sentence being handed out. And we are well

18   past that. We are two years outside of the

19   sentence being given.

20        We are dealing with a Rule 32 Petition.

21   And the way it's been phrased in the Rule

22   32, with this issue, is whether this Court

23   abused its discretion. And the Rule 32

24   doesn't allow for an abuse of discretion

25   basis. That issue was raised on appeal, as

it should have been, and was denied.

So now, we're dealing with an abuse of discretion on a sentencing issue. Two years after the sentence was handed out.

And Judge, if you'll read the transcript, and we filed that as an Exhibit to our amended motion which was filed yesterday. The Court went through a lengthy hearing process. Five or six witnesses were put forth by the defense to speak on behalf of the Petitioner.

The Court expressly found that the Petitioner was a violent offender. In this incidence he was storing a large amount of cocaine at his mother's residence.

He hadn't been out of prison very long when this occurred. He had a ten year sentence back in 2001. This happened in 19 -- I'm sorry, I think of 2008. We're talking about seven years after the initial sentence was given.

And the two priors they were -- ended up being discharging a weapon. But they started out as attempted murder.

And the first one there was, in

1    essence, a drive-by shooting. A weapon was

2    fired into a vehicle. Which initially, it

3    contained several people. They got out

4    within seconds of the shots being fired.

5         Three months later, with the same

6    victim, the same type of incident. The guy

7    was actually shot. Shot in the leg. And

8    Mr. Bester was charged with again, attempted

9    murder, and pled down.

10        And the State would again argue that

11   the Court has already made its determination

12   that Mr. Bester is a violent, repeat

13   offender. Because this is his fifth felony.

14        Two of those were extremely violent.

15   Attempted murders. Those were the charges.

16        So again, Judge, we would just ask the

17   Court to deny the Petitioner.

18        MR. ROBBINS: Judge, just briefly.

19        The issue -- I mean, this case is

20   before you on a Rule 32. In which, Mr.

21   Bester did raise issues of -- and it was a

22   pro se petition. Did raise issues of

23   ineffective assistance of counsel, both at

24   the trial court level and on appeal.

25        And also raised the issue challenging

```
 1        his sentence as being extreme.  I guess, he

 2        didn't put it in the exact line it should

 3        have been.  Is that he can make a

 4        constitutional challenge to the harshness of

 5        his sentence under the 5th -- the 8th and

 6        14th Amendments of the United States

 7        Constitution.  And under the corresponding

 8        State Constitution challenging the harsh --

 9        the cruel and unusual argument.

10             This issue was never taken -- properly

11        taken up and preserved for appellate review.

12        The Court never addressed the sentencing

13        issue because both trial counsel and

14        appellate counsel failed to articulate the

15        issue correctly before this Court.  Or to

16        preserve it for appellate review.  So the

17        appellate court did not address that issue.

18             THE COURT:  Well, doesn't the rules say

19        that if it could have been raised at the

20        trial level or on appeal then it should be

21        deemed denied?

22             MR. ROBBINS:  Well, it was --

23             THE COURT:  I mean, isn't it like

24        ineffective waiver of raising that issue?

25             MR. ROBBINS:  Well, If you don't raise
```

1     the issue at the trial court level, it could

2     be deemed waived on appeal.  But --

3          THE COURT:  If it wasn't raised on

4     appeal, it could be deemed waived for

5     purposes of Rule 32.

6          MR. ROBBINS:  But they didn't address

7     -- they didn't address the issue.  And

8     that's part of a claim of ineffective

9     assistance of counsel.

10          If you did not properly put the issue

11     forward, that could be deemed ineffective by

12     an error in counsel failing to put the

13     proper issue before the Court.

14          And it's a proper sentencing issue of

15     challenging -- simply challenging the

16     Court's imposition of a sentence of life

17     without.

18          THE COURT:  Well, let's talk about the

19     sentence, John.

20          Isn't the sentence expressly provided

21     for by the Habitual Offender Act?

22          Isn't it on Exhibit A of the forms that

23     we use all the time here?

24          MR. ROBBINS:  But, Judge --

25          THE COURT:  I mean, I'm just saying.

```
 1          Doesn't the law --
 2                MR. ROBBINS:  There's no question --
 3                THE COURT:  Okay.
 4                MR. ROBBINS:  -- that the law says that
 5          you had two options.
 6                THE COURT:  Uh-huh.
 7                MR. ROBBINS:  You had a life or a life
 8          without.
 9                THE COURT:  So you're saying I abused
10          my discretion because it's such a, what?
11                MR. ROBBINS:  Judge, it's a -- Yes, I'm
12          saying in this particular instance, I'm
13          respectfully saying that you have abused
14          your discretion.
15                And if you were standing in my shoes,
16          where you have done for many years, you
17          would be making the same argument.  Because
18          you have seen -- both as a prosecutor, as a
19          lawyer and as a judge many, many, many
20          extreme cases.
21                THE COURT:  Okay.  Hold on one second,
22          John.
23                State, address that issue?
24                MR. RIGDON:  Issue of abusing
25          discretion --
```

1           THE COURT: Of that question?

2           No. I mean, this sentence, do you find

3 that it is, you know, disproportionate for

4 the offense committed, considering his

5 priors?

6           MR. RIGDON: Well, Judge, I don't know

7 that I've got an opinion on that. My

8 opinion is that we can't address that issue

9 at this point.

10           If there is no jurisdiction to come

11 back and address a disproportionate sentence

12 two years after a sentence has been handed

13 out.

14           I just don't know that's an issue that

15 can be raised during a Rule 32 Petition

16 based on the arguments raised in the actual

17 petition.

18           THE COURT: Well, assume that it can be

19 raised.

20           MR. RIGDON: Okay.

21           THE COURT: Is it fair to give this man

22 life without parole under the circumstances?

23           MR. RIGDON: Judge, I believe it is.

24 Based on his history.

25           We're talking about two attempted

1     murders.

2          Firing a weapon at a person, one person

3     was actually hit. I don't know how long he

4     served in prison. Five --

5          THE COURT: It was a ten year sentence.

6     I don't know how much of the ten years he

7     served, but. It was a ten year sentence.

8          MR. RIGDON: I think I read in the

9     transcript it was five or six years, maybe.

10     We're talking about serving through

11     about '07. Being out a year, and then

12     trafficking cocaine out of his mother's

13     house. With another weapon.

14          THE COURT: What about the people that

15     commit Capital Murders, and they're found

16     guilty of like felony murder and get a life

17     sentence? Or regular murder or

18     manslaughter, and they do things that are,

19     you know, probably much worse than, you

20     know, trafficking in some drugs?

21          I mean, because you've got somebody

22     that's hurt and dead.

23          MR. RIGDON: Well, Judge, I think the

24     sentence was based primarily on those two

25     attempted murder charges. Where he actually

1    tried to kill someone.

2         THE COURT:  Uh-huh.

3         MR. RIGDON:  And I don't know that you

4    can compare it to other cases, where a jury

5    may have found another set of facts.

6         But in this case, we know that he tried

7    to kill somebody.  Not once, but twice.  And

8    on that basis, I mean, the Court had a

9    lengthy hearing.  And took in a lot of

10   evidence.  And made the determination two

11   years ago, when the information was fresh.

12   That he wasn't -- and Judge, Your Honor

13   said, I find him to be a violent offender.

14   And these are the kinds of acts that are

15   ruining the community.  These kind of drug

16   related, violent acts.

17        And based on that, Your Honor sentenced

18   him to life without parole.  Based on

19   information two years ago.

20        And I just think it's -- it would be

21   wrong, at this point, to revisit that two

22   years later.

23        THE COURT:  All right.  Thank you,

24   Brady.

25             (Brief pause.)

1     THE COURT: I've heard enough.

2      (Brief pause.)

3     THE COURT: As previously stated, I

4 recall making comments when he was sentenced

5 in this case. That after hearing the

6 information offered by the State that I felt

7 that he was, and is, a violent offender.

8    And I cannot, one, say that I abused --

9 or the sentencing of him to life without

10 parole was an abuse of my discretion.

11    As a matter of fact, I think it was a

12 very wise use of my discretion. Because I

13 believe that that discretion is given to the

14 Court to allow the Court to protect the

15 public from people such as this Defendant,

16 that have a prior history of violent acts.

17 And then they commit another serious crime,

18 such as a Class A felony.

19    And then, when you look to the facts of

20 the Class A felony. The fact that he was

21 trafficking out of his mother's house. With

22 dangerous -- in a dangerous situation. I

23 think there was a gun found at the house.

24 And you know, I know there were scales and

25 that kind of thing. And baggies, all of

1       those paraphernalia articles found.

2           I think that it was well within the

3       Court's discretion to adjudge him to be a

4       violent offender, and to sentence him to

5       life without parole under the Habitual

6       Offender Act.

7           The Court did have some trepidation in

8       thinking about this sentence.  And comparing

9       it to other sentences that the Court has

10      seen over the last 30 years, 31 years.

11      Where there have, in my mind, been some

12      injustices where people who have committed

13      horrendous acts have unfortunately (pause)

14      gotten off, I guess, with lesser sentences

15      than what they actually deserved based upon

16      what I believe their behavior to be.

17          But, those are jury decisions.  And

18      they're not decisions left up to the Court.

19      So I have to respect those jury decisions.

20          Additionally, the Court does not

21      believe that at this late date it has

22      jurisdiction to amend his sentence from life

23      without parole to life.  Based upon the time

24      that has past since the original sentence.

25          Therefore, it's the judgment of the

```
 1          Court that this ground is denied.  And the
 2          Defendant is not entitled to relief pursuant
 3          to Rule 32.
 4               Thank y'all.
 5               MR. RIGDON:  Thank you, Judge.
 6                    (Whereupon, the following
 7                    proceedings were adjourned at 9:45
 8                    a.m. on June 17th, 2011.)
 9
10               *** END OF PROCEEDINGS ***
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1              CERTIFICATE OF COMPLETION OF
 2                 REPORTER'S TRANSCRIPT
 3
 4                        IN RE:
 5
 6          DURRELL BESTER VS. STATE OF ALABAMA
 7             CC2008-3771.60 & CC2008-3772.60
 8                  * * * * * * * * * * * * * *
 9
10          I, Alicia Martin, Official Reporter for the
11     Tenth Judicial Circuit of Alabama and Notary
12     Public, State of Alabama at Large, do hereby
13     certify there came before me the aforementioned
14     proceedings, including witnesses who were duly
15     sworn to testify to the truth concerning the
16     matters in this cause, said evidence being taken
17     down stenographically by me and transcribed by me
18     or under my supervision and control.
19          All the pages of the transcript are
20     numbered serially at the right-hand corner of each
21     page, prefaced by the reporter's index, followed
22     by the transcript, and ending with the numbers
23     appearing on this certificate.
24          I further certify that I am neither
25     attorney or counsel for, nor related to, or
```

1   employed by any of the parties to the action in

2   which this proceeding is taken; and furthermore,

3   that I am not a relative or employee of any

4   attorney or counsel employed by the parties hereto

5   or financially interested in the action.

6       IN WITNESS THEREOF, I have set my hand and

7   affixed my Notarial seal this the 27th day of

8   January, 2012.

9

10

11

12

13

14

15

16

17

18   S/ Alicia Martin

19   Alicia Martin, Official Court Reporter

20   ACCR# 215

21

22

23

24

25

CERTIFICATE OF COMPLETION

REPORTER'S TRANSCRIPT


Criminal Appeals Case Number: CR11-0207


DURRELL BESTER,

Appellant


Vs.                                    Trial Court Case No: CC2008-3771.60 &
                                                            CC2008-3772.60

STATE OF ALABAMA,

Appellee.


                                    Notice of Appeal Date:   July 13th, 2011

     I, Alicia Martin, certify that I have this date completed and filed
with the clerk of the trial court an original copy and an electronic file
of a true and correct transcript of all proceedings in the above
referenced case that were reported by me and were specifically designated
by the appellant for inclusion on the Reporter's Transcript Order.  The
transcript, which is numbered serially in the upper right-hand corner of
each page, begins with a copy of the Reporter's Transcript Order and an
index of both the exhibits and the testimony of the witnesses.  The
original transcript concludes with the original of this notice and the
electronic file of the transcript conclude with copies of this notice.
The page number appearing in the upper right-hand corner of this
certificate is the last page of my portion of the transcript in this case.
Done this 27th day of January, 2012.


S/Alicia Martin

Official Court Reporter

ACCR# 215

| State of Alabama<br>Unified Judicial System<br>From ARAP - 14  Rev. 11 / 91 | **CERTIFICATE OF COMPLETION AND**<br>**TRANSMITTAL OF RECORD ON**<br>**APPEAL BY TRIAL CLERK** | Appellate Case Number<br><br>CR-2011-0207 |
|---|---|---|

| TO: THE CLERK OF<br>THE COURT OF CRIMINAL APPEALS OF ALABAMA | DATE OF<br>NOTICE OF APPEAL: | 07/13/2011 |
|---|---|---|

APPELLANT                                    DURRELL BESTER

v. STATE OF ALABAMA

I certify that I have this date completed and transmitted herewith to the appellate court the record on appeal by assembling in ( a single volume of __175__ pages) (_____ volumes of 200 pages each and one volume of _____ pages) the clerk's record and the reporter's transcript and that one copy each of the record on appeal has been served on the defendant and the Attorney General of the State of Alabama for the preparation of brief.

I certify that a copy of this certificate has this date been served on counsel for each party to the appeal.

DATED this __14TH__ day of __FEBRUARY__ , __2012__ .


                                              s/ANNE-MARIE ADAMS
                        _____
                                    Circuit Clerk

# INDEX

APPEAL JACKET     1

CASE ACTION SUMMARY(CC-2008-3771.60)     2

NOTICE OF APPEAL(CC-2008-3771.60)     18

PETITION FOR RELIEF FROM CONVICTION OR SENTENCE     21

IN FORMA PAUPERIS DECLARATION     45

MOTION TO DISMISS RULE 32 PETITION     48

NOTICE OF APPEARANCE     74

AFFIDAVIT     75

INDEX OF EXHIBITS     77

COURT'S EXHIBIT 1-EXCERPT TRIAL RECORD     78

PETITIONER'S EXHIBIT 1-CAS/ DEFT'S PRIOR     80

PETITIONER'S EXHIBIT 2- CAS/DEFT'S PRIOR     81

PETITIONER'S EXHIBIT 3-CAS/DEFT'S PRIOR     82

PETITIONER'S EXHIBIT 4-CAS/DEFT'S PRIOR     83

DOCKETING STATEMENT     84

REPORTER'S TRANSCRIPT ORDER     86